This is not the official court record. Official records of court proceedings may only be obtained directly from the court maintaining a particular record.

## Kyle Reynolds, Indiana University Chapter of Turning Point USA v. Adam Wason, Beth H. Hollingsworth, Dana Henke et al

| | |
|---|---|
| Case Number | 53C01-2202-PL-000361 |
| Court | Monroe Circuit Court 1 |
| Type | PL - Civil Plenary |
| Filed | 02/23/2022 |
| Status | 02/23/2022 , Pending (active) |

## Parties to the Case

Defendant   Wason, Adam
  Address          401 North Morton Street
                   Suite 120
                   Bloomington, IN 47404
  Attorney         Liberty Lee Roberts
                   #2310749, Retained

                   CHURCH CHURCH HITTLE & ANTRIM
                   Two North Ninth St
                   Noblesville, IN 46060
                   317-773-2190(W)

Defendant   Hollingsworth, Beth H.
  Address          401 North Morton Street
                   Suite 120
                   Bloomington, IN 47404
  Attorney         Liberty Lee Roberts
                   #2310749, Retained

                   CHURCH CHURCH HITTLE & ANTRIM
                   Two North Ninth St
                   Noblesville, IN 46060
                   317-773-2190(W)

Defendant   Henke, Dana
  Address          401 North Morton Street
                   Suite 120
                   Bloomington, IN 47404
  Attorney         Liberty Lee Roberts
                   #2310749, Retained

                   CHURCH CHURCH HITTLE & ANTRIM
                   Two North Ninth St
                   Noblesville, IN 46060
                   317-773-2190(W)

Defendant   Cox Deckard, Kyla
  Address          401 North Morton Street
                   Suite 120
                   Bloomington, IN 47404
  Attorney         Liberty Lee Roberts
                   #2310749, Retained

                   CHURCH CHURCH HITTLE & ANTRIM
                   Two North Ninth St
                   Noblesville, IN 46060
                   317-773-2190(W)

Defendant   City of Bloomington, Indiana
  Address          201 North Morton Street
                   Suite 210
                   Bloomington, IN 47404
  Attorney         Liberty Lee Roberts
                   #2310749, Retained

                   CHURCH CHURCH HITTLE & ANTRIM
                   Two North Ninth St
                   Noblesville, IN 46060
                   317-773-2190(W)

Plaintiff      Reynolds, Kyle

| Attorney | William Bock III |
| | #1477749, Retained |
| | |
| | 111 Monument Circle |
| | Suite 900 |
| | Indianapolis, IN 46204-0000 |
| | 317-692-9000(W) |

| Plaintiff | Indiana University Chapter of Turning Point USA |
| Attorney | William Bock III |
| | #1477749, Retained |
| | |
| | 111 Monument Circle |
| | Suite 900 |
| | Indianapolis, IN 46204-0000 |
| | 317-692-9000(W) |

## Chronological Case Summary

| 02/23/2022 | **Case Opened as a New Filing** |

| 02/24/2022 | **Appearance Filed** |
| | Appearance Filed. AJA |

| | For Party: | Reynolds, Kyle |
| | For Party: | Indiana University Chapter of Turning Point USA |
| | File Stamp: | 02/23/2022 |

| 02/24/2022 | **Complaint/Equivalent Pleading Filed** |
| | Complaint/ Equivalent Pleading Filed. AJA |

| | Filed By: | Reynolds, Kyle |
| | Filed By: | Indiana University Chapter of Turning Point USA |
| | File Stamp: | 02/23/2022 |

| 02/24/2022 | **Complaint/Equivalent Pleading Filed** |
| | Plaintiffs' Appendix of Exhibits in Support of Plaintiffs' Complaint and Motion for Preliminary Injunction Filed. AJA |

| | Filed By: | Reynolds, Kyle |
| | Filed By: | Indiana University Chapter of Turning Point USA |
| | File Stamp: | 02/23/2022 |

| 02/24/2022 | **Motion Filed** |
| | Plaintiffs' Motion for Preliminary Injunction Filed. AJA |

| | Filed By: | Reynolds, Kyle |
| | Filed By: | Indiana University Chapter of Turning Point USA |
| | File Stamp: | 02/23/2022 |

| 02/24/2022 | **Document Filed** |
| | Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction Filed, AJA |

| | Filed By: | Reynolds, Kyle |
| | Filed By: | Indiana University Chapter of Turning Point USA |
| | File Stamp: | 02/23/2022 |

| 02/24/2022 | **Subpoena/Summons Filed** |
| | Summons Filed. Clerk notes a signed, dated, sealed Summons is forwarded to Plaintiff/Plaintiff's Counsel via e-notice for service upon parties of record. Plaintiff/Plaintiff's Counsel to perfect service and file proof of service with the Court. For Sheriff Service requests, applicable copies are to be supplied to the Sheriff's office directly by counsel. AJA |

| | Filed By: | Reynolds, Kyle |
| | Filed By: | Indiana University Chapter of Turning Point USA |
| | File Stamp: | 02/23/2022 |

| 02/24/2022 | **Subpoena/Summons Filed** |
| | Summons Filed. Clerk notes a signed, dated, sealed Summons is forwarded to Plaintiff/Plaintiff's Counsel via e-notice for service upon parties of record. Plaintiff/Plaintiff's Counsel to perfect service and file proof of service with the Court. For Sheriff Service requests, applicable copies are to be supplied to the Sheriff's office directly by counsel. AJA |

| | Filed By: | Reynolds, Kyle |
| | Filed By: | Indiana University Chapter of Turning Point USA |
| | File Stamp: | 02/23/2022 |

| 02/24/2022 | **Subpoena/Summons Filed** |
| | Summons Filed. Clerk notes a signed, dated, sealed Summons is forwarded to Plaintiff/Plaintiff's Counsel via e-notice for service upon parties of record. Plaintiff/Plaintiff's Counsel to perfect service and file proof of service with the Court. For Sheriff Service requests, applicable copies are to be supplied to the Sheriff's office directly by counsel. AJA |

| | Filed By: | Reynolds, Kyle |
| | Filed By: | Indiana University Chapter of Turning Point USA |
| | File Stamp: | 02/23/2022 |

| 02/24/2022 | **Subpoena/Summons Filed** | |
| | Summons Filed. Clerk notes a signed, dated, sealed Summons is forwarded to Plaintiff/Plaintiff's Counsel via e-notice for service upon parties of record. Plaintiff/Plaintiff's Counsel to perfect service and file proof of service with the Court. For Sheriff Service requests, applicable copies are to be supplied to the Sheriff's office directly by counsel. AJA | |
| | Filed By: | Reynolds, Kyle |
| | Filed By: | Indiana University Chapter of Turning Point USA |
| | File Stamp: | 02/23/2022 |
| 02/24/2022 | **Subpoena/Summons Filed** | |
| | Summons Filed. Clerk notes a signed, dated, sealed Summons is forwarded to Plaintiff/Plaintiff's Counsel via e-notice for service upon parties of record. Plaintiff/Plaintiff's Counsel to perfect service and file proof of service with the Court. For Sheriff Service requests, applicable copies are to be supplied to the Sheriff's office directly by counsel. AJA | |
| | Filed By: | Reynolds, Kyle |
| | Filed By: | Indiana University Chapter of Turning Point USA |
| | File Stamp: | 02/23/2022 |
| 02/24/2022 | **Case Filed Electronically** | |
| 02/24/2022 | **Order Issued** | |
| | Order of Disqualification issued to Counsel for Plaintiff by e-notification and to each Defendant by first class mail. kg | |
| | Judicial Officer: | Harvey, Holly M |
| | Order Signed: | 02/24/2022 |
| 02/25/2022 | **Automated Paper Notice Issued to Parties** | |
| | Order Issued ---- 2/24/2022 : Adam Wason;Beth H. Hollingsworth;Dana Henke;Kyla Cox Deckard;City of Bloomington, Indiana | |
| 02/25/2022 | **Automated ENotice Issued to Parties** | |
| | Order Issued ---- 2/24/2022 : William Bock | |
| 02/28/2022 | **Affidavit Filed** | |
| | Affidavit of Service of Summons, Complaint, etc. - City of Bloomington, IN filed. rm | |
| | Filed By: | Reynolds, Kyle |
| | Filed By: | Indiana University Chapter of Turning Point USA |
| | File Date: | 02/25/2022 |
| 02/28/2022 | **Affidavit Filed** | |
| | Affidavit of Service of Summons, Complaint, etc. - Adam Wason filed. rm | |
| | Filed By: | Reynolds, Kyle |
| | Filed By: | Indiana University Chapter of Turning Point USA |
| | File Date: | 02/25/2022 |
| 02/28/2022 | **Affidavit Filed** | |
| | Affidavit of Service of Summons, Complaint, etc. - Kyla Cox Deckard filed. rm | |
| | Filed By: | Reynolds, Kyle |
| | Filed By: | Indiana University Chapter of Turning Point USA |
| | File Date: | 02/25/2022 |
| 02/28/2022 | **Affidavit Filed** | |
| | Affidavit of Service of Summons, Complaint, etc. - Beth H. Hollingsworth filed. rm | |
| | Filed By: | Reynolds, Kyle |
| | Filed By: | Indiana University Chapter of Turning Point USA |
| | File Date: | 02/25/2022 |
| 02/28/2022 | **Affidavit Filed** | |
| | Affidavit of Service of Summons, Complaint, etc. - Dana Henke filed. rm | |
| | Filed By: | Reynolds, Kyle |
| | Filed By: | Indiana University Chapter of Turning Point USA |
| | File Date: | 02/25/2022 |
| 03/08/2022 | **Order Issued** | |
| | Order Transferring Case and Notice to Clerk issued to counsel for Plaintiff by e-notification and to Defendants by first class mail. kb | |
| | Order Signed: | 03/08/2022 |
| 03/08/2022 | **Transfer Case** | |
| | Order Signed: | 03/08/2022 |

| 03/08/2022 | **Appearance Filed** |
|---|---|
| | Appearance of Liberty L. Roberts |

| For Party: | Wason, Adam |
|---|---|
| For Party: | Hollingsworth, Beth H. |
| For Party: | Henke, Dana |
| For Party: | Cox Deckard, Kyla |
| For Party: | City of Bloomington, Indiana |
| File Stamp: | 03/08/2022 |

| 03/09/2022 | **Case Transferred In** |
|---|---|
| | Case 53C06 2202 PL 000361 transferred in. |

| 03/09/2022 | **Automated ENotice Issued to Parties** |
|---|---|
| | Order Issued ---- 3/8/2022 : Liberty Lee Roberts;William Bock |

## Financial Information

\* Financial Balances reflected are current representations of transactions processed by the Clerk's Office. Please note that any balance due does not reflect interest that has accrued – if applicable – since the last payment. For questions/concerns regarding balances shown, please contact the Clerk's Office.

**Reynolds, Kyle**
Plaintiff

Balance Due (as of 03/09/2022)

0.00

Charge Summary

| Description | Amount | Credit | Payment |
|---|---|---|---|
| Court Costs and Filing Fees | 157.00 | 0.00 | 157.00 |

Transaction Summary

| Date | Description | Amount |
|---|---|---|
| 02/24/2022 | Transaction Assessment | 157.00 |
| 02/24/2022 | Electronic Payment | (157.00) |

This is not the official court record. Official records of court proceedings may only be obtained directly from the court maintaining a particular record.

Filed: 2/23/2022 6:03 PM
Clerk
Monroe County, Indiana
Monroe Circuit Court 6

STATE OF INDIANA      )      IN THE MONROE COUNTY SUPERIOR COURT
                        )   SS:   CIVIL DIVISION, ROOM NO.
COUNTY OF MONROE     )      CAUSE NO. 53C06-2202-PL-000361

| | |
|---|---|
| INDIANA UNIVERSITY CHAPTER | ) |
| OF TURNING POINT USA, and | ) |
| | ) |
| KYLE REYNOLDS, | ) |
| | ) |
|            Plaintiffs, | ) |
| | ) |
|     vs. | ) |
| | ) |
| CITY OF BLOOMINGTON, INDIANA, | ) |
| ADAM WASON, in his official capacity as | ) |
| Director of Public Works for the City of | ) |
| Bloomington, and KYLA COX DECKARD, | ) |
| BETH H. HOLLINGSWORTH and DANA | ) |
| HENKE in their official capacities as members of | ) |
| the Board of Public Works of the City of | ) |
| Bloomington, Indiana, | ) |
| | ) |
|         Defendants. | ) |

## APPEARANCE BY ATTORNEYS IN CIVIL CASE

1. The party on whose behalf this form is being filed is:
   Initiating    X      Responding _\_   Intervening   ; and

   the undersigned attorney and all attorneys listed on this form now appear in this case for the following parties:

              **Plaintiffs:**    **Indiana University Chapter of the Turning Point USA, and Kyle Reynolds**

   Attorney information for service as required by Trial Rule 5(B)(2)

   Name:          **William Bock III**               Atty Number: **14777-49**
   Address:       **Kroger, Gardis & Regas, LLP**
                    **111 Monument Circle, Suite 900**
                    **Indianapolis, IN  46204**
   Phone:        **317-777-7412 (Direct Tel)**
                    **317-692-9000 (Office)**
   Fax:           **317-264-6832**
   Email:         **wbock@kgrlaw.com**

1

**IMPORTANT**:  Each attorney specified on this appearance:

    (a)    certifies that the contact information listed for him/her on the Indiana Supreme Court Roll of Attorneys is current and accurate as of the date of this Appearance;

    (b)    **acknowledges that all orders, opinions, and notices from the court in this matter that are served under Trial Rule 86(G) will be sent to the attorney at the email address(es) specified by the attorney on the Roll of Attorneys regardless of the contact information listed above for the attorney**; and

    (c)    understands that he/she is solely responsible for keeping his/her Roll of Attorneys contact information current and accurate, see Ind. Admis. Disc. R. 2(A).

Attorneys can review and update their Roll of Attorneys contact information on the Courts Portal at http://portal.courts.in.gov.

3. This is a **PL** case type as defined in administrative Rule 8(B)(3).

4. This case involves child support issues. Yes _____ No __X__ *(If yes, supply social security numbers for all family members on a separately attached document filed as confidential information on **light green paper**. Use Form TCM-TR3.1-4.)*

5. This case involves a protection from abuse order, a workplace violence restraining order, or a no – contact order.  Yes _____ No _X___ *(If Yes, the initiating party must provide an address for the purpose of legal service but that address should not be one that exposes the whereabouts of a petitioner.)*  The party shall use the following address for purposes of legal service:

    _____    Attorney's address

    _____    The Attorney General Confidentiality program address (contact the Attorney General at 1-800-321-1907 or e-mail address is **confidential@atg.in.gov**).

    _____    Another address (provide)

    _____

This case involves a petition for involuntary commitment.  Yes _____ No _X__

6. If Yes above, provide the following regarding the individual subject to the petition for involuntary commitment:

    a.  Name of the individual subject to the petition for involuntary commitment if it is not already provided in #1 above:

    _____

    b.  State of Residence of person subject to petition: _____

    c.  At least one of the following pieces of identifying information:

        (i)   Date of Birth _____

        (ii)  Driver's License Number _____

            State where issued _____ Expiration date _____

        (iii) State ID number _____

            State where issued _____ Expiration date _____

        (iv) FBI number _____

        (v)  Indiana Department of Corrections Number _____

      (vi)   Social Security Number is available and is being provided in an attached confidential document Yes _____ No _____

7.  There are related cases: Yes ___ No _X__

8.  Additional information required by local rule: N/A

9.  There are other party members: Yes _____ No _X__

10. This form has been served on all other parties with their respective Summons and Complaint.

                        */s/ William Bock III*_____
                        William Bock III, Atty Number: 14777-49
                        KROGER, GARDIS & REGAS, LLP
                        111 Monument Circle, Suite 900
                        Indianapolis, Indiana 46204-5125
                        Phone: (317) 692-9000
                        Fax: (317) 264-6832
                        wbock@kgrlaw.com

STATE OF INDIANA    )      IN THE MONROE COUNTY SUPERIOR COURT
                         )  SS:  CIVIL DIVISION, ROOM NO. ___
COUNTY OF MONROE  )      CAUSE NO. <u>53C06-2202-PL-000361</u>

INDIANA UNIVERSITY CHAPTER    )
OF TURNING POINT USA, and    )
                                  )
KYLE REYNOLDS,               )
                                  )
             Plaintiffs,      )
                                  )
        vs.                  )
                                  )
CITY OF BLOOMINGTON, INDIANA,    )
ADAM WASON, in his official capacity as    )
Director of Public Works for the City of    )
Bloomington, and KYLA COX DECKARD,    )
BETH H. HOLLINGSWORTH and DANA    )
HENKE in their official capacities as    )
members of the Board of Public Works of    )
the City of Bloomington, Indiana,    )
                                  )
          Defendants.      )
                                  )

## **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

The Plaintiffs, Indiana University Chapter of Turning Point USA, and Kyle

Reynolds, by counsel, allege:

### **INTRODUCTION**

1.    This case is an as-applied civil rights action brought pursuant to state

law and 42 U.S.C. §§ 1981 and 1983 challenging the legality under both the state

and federal constitutions of a denial by the City of Bloomington, Indiana

("Bloomington" or the "City") and the City's officials of Plaintiffs' application to

paint an "All Lives Matter" street mural on East Kirkwood Avenue in front of the

1

Von Lee building on the campus of Indiana University ("IU" or the "University") at Bloomington as approved by IU officials.

2.      IU is a publicly funded state university located within the City.

## THE PARTIES

3.      Plaintiff, Indiana University Chapter of Turning Point USA ("Turning Point USA" or "TPUSA") is a recognized, on-campus student organization at IU.

4.      Plaintiff, Kyle Reynolds ("Mr. Reynolds"), is an authorized agent of Turning Point USA and its campus coordinator, and a current resident of Bloomington, Indiana.

5.      Defendant City of Bloomington is an Indiana municipal corporation and is a corporate entity capable of suing and being sued.

6.      Defendant Adam Wason is the Director of Public Works of the City and in that capacity is a policymaking official. He is sued in his official capacity as the City's Director of Public Works.

7.      Defendant Kyla Cox Deckard is a member of the City's Board of Public Works and in that capacity is a policymaking official. She is sued in her official capacity as a member of the Board of Public Works.

8.      Defendant Beth H. Hollingsworth is a member of the City's Board of Public Works and in that capacity is a policymaking official. She is sued in her official capacity as a member of the Board of Public Works.

9.      Defendant Dana Henke is a member of the City's Board of Public Works and in that capacity is a policymaking official. She is sued in her official

2

capacity as a member of the Board of Public Works.

## JURISDICTION & VENUE

10.     This action arises under Article 1, Section 9 and Article 1, Section 23 of

the Indiana Constitution and under 42 U.S.C. §§ 1981 and 1983 and the First and

Fourteenth Amendments to the United States Constitution.

11.     Indiana "trial courts, as courts of general jurisdiction, have jurisdiction

concurrent with the federal courts in enforcing rights conferred by the Constitution

and laws of the United States." *Petition of Ackerman*, 409 N.E.2d 1211, 1222

(Ind. Ct. App. 1980).

12.     The Monroe Circuit and Superior Courts have original and concurrent

jurisdiction in all civil cases. IC 33-28-1-2 (Circuit Court); IC 33-29-1.5-2 (Superior

Court).

13.     The Monroe Circuit and Superior Courts have authority to issue

declaratory relief pursuant to IC 34-14-1-1 *et seq*.

14.     The Monroe Circuit and Superior Courts have authority to issue

injunctive relief pursuant to IC 34-26-1-3.

15.     This Court has authority to award costs, attorneys' fees and expert

witness fees under 42 U.S.C. § 1988(b) and (c).

16.     Preferred venue is present in Monroe County under Trial Rule 75

because it is the County where the defendant governmental organization to which

the claim relates is located.

3

## FACTUAL ALLEGATIONS

**A.      Maintenance of Public Streets in the City of Bloomington**

17.     Pursuant to the Bloomington Municipal Code the chief administrative body of Bloomington is the Board of Public Works (the "Board of Public Works" or the "Board"), which has control of the day-to-day operation of the City's Department of Public Works. *See* Bloomington Municipal Code, Chapter 2.09, § 2.09.030.

18.     The Board consists of three members appointed by the Mayor of Bloomington. *See* Bloomington Municipal Code, Chapter 2.09, § 2.09.010.

19.     The Department of Public Works is the general administrative department of the City with responsibility for street maintenance and the management of all physical facilities of the City, with the sole exception of property managed by the utility service board or the board of parks commissioners. *See* Bloomington Municipal Code, Chapter 2.10, § 2.10.000.

20.     The head of the Department of Public Works is the "Director of Public Works," who is appointed by the Mayor with approval of the Board and serves at the pleasure of the Mayor. *See* Bloomington Municipal Code, Chapter 2.10, § 2.10.010.

21.     Mr. Adam Wason ("Director Wason") has at all times relevant to this matter been the City's Director of Public Works.

22.     In this capacity Director Wason has full powers and duties of a City Department Head, "administrative responsibility for the divisions, boards, commissions, councils and physical facilities" falling under the purview of the Board

4

and the Department of Public Works, and "is subject to any rules promulgated by the Mayor and Board of Public Works which do not conflict with state law."

*See* Bloomington Municipal Code, Chapter 2.10, § 2.10.020.

**B.    Board of Public Works' Encroachment Policy**

23.    As explained below, The Board of Public Works has adopted a policy and practice of approving expressive activity which encroaches on public rights-of-ways.

24.    For instance, the Board of Public Works has approved at least three street murals painted on City streets. All three street murals in the City contain the phrase, "Black Lives Matter."

25.    While two of the street murals on City streets in Bloomington were erected by the City, as explained below, the Black Lives Matter Street Mural was erected on a public right-of-way on the IU campus by IU students and other volunteers.

26.    The Board (at the City' council's urging) approved these two murals as "encroachments" on the City's right of way.

*See* https://bloomington.in.gov/onboard/meetingFiles/download?meetingFile_id=8674 at 48; https://bloomington.in.gov/onboard/meetingFiles/download?meetingFile_id=7660 at 36.

27.    The Board of Public Works has approved other types of expressive activity encroaching on public rights-of-way, including an Indiana University homecoming parade and a student organization showcase.

28.     In September 2021, the Board of Public Works approved Middle Way House, an emergency shelter and advocacy group for survivors of sexual violence, to wrap handmade blankets around trees and lamp posts along public rights-of-way. The Board approved these encroachments in public rights-of way to be displayed for six months, until March 2022.

29.     These examples illustrate that the City through the Board has created a practice or policy of allowing encroachments which contain messages with which the City agrees.

30.     The Board of Public Works' Encroachment Policy contains no concrete standards which guide or confine the exercise of discretion in approving encroachments in public rights-of-way.

31.     Rather, as explained below, the Board of Public Works has employed its Encroachment Policy in standardless fashion permitting some expressive activity and denying other expressive activity encroaching on rights-of-way based upon the view point expressed or to be expressed in the encroachment.

32.     As explained below, the Board of Public Works' Encroachment Policy allows for encroachments through murals which express view points they like.

**C.     "Black Lives Matter" Street Mural Jointly Approved by Indiana University and The Board of Public Works**

33.     As explained below, a "Black Lives Matter" street mural (the "BLM Street Mural" or the "Black Lives Matter Street Mural" or the "BLM Mural") was painted on Bloomington's Jordan Avenue (now Eagleson Avenue) on the campus of IU during July 3 – 5, 2021, and officially announced by IU on July 8, 2021.

6

34.     There exist no written standards that were followed relating to the manner in which the BLM Street Mural, which was an encroachment on the City's public right-of-way, was approved.

35.     Prior to July 3, 2021, when erection of the BLM Street Mural commenced, the BLM Street Mural was verbally authorized by the City's Director of Public Works after the location and content of the street mural had received the approval of the IU Administration.

36.     As a result, those working to erect the BLM Street Mural were able to paint the mural on a City street without prior official approval by the Board of Public Works.

37.     Funding for the BLM Street Mural came primarily from the IU Funding Board and this funding was derived from student fees distributed to student organizations on the IU campus by the IU Funding Board.

38.     The BLM Street Mural was envisioned by IU students Joa'Quinn Griffin and Tiera Howleit, and officially sponsored by Black Collegians, an IU student group led by IU student Tiera Howleit.

39.     Tiera Howleit worked closely with Thomas Morrison, IU Capital Planning and Facilities Vice President, to identify a location for the mural and secure the University's support for locating the mural at one of the Black Collegians' favored sites.

40.     Tiera Howleit also communicated with the City administration, including Public Works Director Adam Wason, on the mural project.

41.     IU campus leadership approved the location of the BLM Street Mural and approval from the City was received from Public Works Director Wason.

42.     About a month after the street mural was painted, on August 3, 2021, the Board of Public Works ratified the earlier decision to approve the BLM Street Mural.

43.     The BLM Street Mural is located on a public right-of-way of the City which runs through the IU campus.

44.     This public right-of-way, like all public roads in the City, is under the control and supervision of the Department of Public Works, which is under the supervision of the Board of Public Works.

45.     Sometime on or before July 3, 2021, when work erecting the BLM Street Mural commenced, Director Wason approved the Black Collegians' plan for the BLM Street Mural, and he approved the location for that mural which he understood had been identified through a collaboration between IU student Tiera Howleit and IU Capital Planning and Facilities Vice President, Thomas Morrison.

46.     Director Wason did not obtain approval from the Board of Public Works before authorizing Tiera Howleit and the Black Collegians group to commence painting the BLM Street Mural on Jordan (now Eagleson) Avenue, a public right-of-way under the management and authority of the City.

47.     In reliance upon authorization from Director Wason, work commenced on the BLM Street Mural on or about July 3, 2021 and was completed on or about July 5, 2021.

8

48.     Here is a bird's eye photo of the BLM Street Mural on Eagleson

Avenue on the IU campus as it looked soon after the completion of the mural on or

about July 5, 2021:



49.    Painting the BLM Street Mural, which was accomplished largely

through the active involvement of student volunteers, required temporary closure of

Eagleson Avenue as depicted in the following photo:



50. The BLM Street Mural occupies a prominent location on the IU campus between the Neal Marshall Black Culture Center and the IU Groups Building, as depicted by this photo:



51. Completion of the BLM Street Mural was met by an approving tweet from the IU Provost on July 6, 2021, who commented, "[t]he Black Collegians finished the amazing Black Lives Matter mural on Jordan Ave. If you're on the @IUBloomington campus, check it out between @NMBCC_IU and @IU_Groups buildings!"

52. Similarly, on July 8, 2021, IU's official twitter feed said: "Black Lives Matter. Thank you to the Black Collegians group for bringing this mural to life on our campus."

11

D. **"All Lives Matter" Street Mural Approved by Indiana University but Rejected by the City of Bloomington**

53.     On July 20, 2021, Kyle Reynolds, in his capacity as a representative of multiple IU student organizations, including the IU Chapter of Turning Point, USA, wrote to IU's Provost and Vice President Morrison stating, in part:

> [W]e would like a space on campus to represent our views with an All Lives Matter mural. Ideally, this would be on a large street, such as the one utilized for the BLM mural, however, any large space with high visibility on campus should be adequate.
>
> Assuming we need a permit for such an undertaking, I would like to get that process started as soon as possible. If you, the recipients of this email, are not the correct parties to contact for this matter, would it be possible for you to direct me to the appropriate party?

54.     After a couple of follow-ups from Mr. Reynolds, a representative of IU's Student Involvement and Leadership organization responded:

> We believe Vice President Morrison will be following up soon on the logistics for painting a street on campus. Similarly to the Black Lives Matter mural, you as leader and member of a student organization can request funding from the IU Funding Board for this project.

55.     The following morning (July 27, 2021) IU Vice President Morrison reached out to Kyle:

> Good morning Mr. Reynolds. Apologies for not responding sooner but I am just returning from a vacation. I will address the facility related questions posed in your email. Please realize that the Black Lives Matter street mural was not placed on Indiana University property nor the Campus. The BLM mural was created on a street owned by the City of Bloomington. Thus, the City was entity that ultimately approved the mural.
>
> As information, the students who proposed this mural did request of IU to place the mural a several proposed locations on the IU Campus. Each of those proposed locations was not approved. IU

12

does not permit mural type art on the Bloomington Campus. The students did propose the location ultimately chosen and were directed to the City for approval.

Please know that we did offer the students advice on facility related logistics (types of paint, colors, temperatures, surface preparation, sizing, etc.). We would provide that expertise to you or any student or group who inquired. We did not pass any judgement on the art itself.

Should you desire to propose a street mural, I would direct you to the City of Bloomington. Thank you for the inquiry.

56.    The same day, Mr. Reynolds responded to Mr. Morrison, saying:

Thank you so much for getting back to me. I suspected that the permit would have to be issued by the city, but I figured I'd contact university leadership first to see what level of control, if any, IU has over the streets on campus. If you wouldn't mind, I would greatly appreciate any advice you have on facility related logistics such as paint type or surface preparation.

Additionally, if you could direct me to the appropriate city official, I would be extremely grateful.

57.    Mr. Morrison then directed Kyle as follows:

Kyle, my recommendation would be to begin with the Board of Public Works at the City. I believe they have a published process and staff who can assist. If your project advances, please do feel free to reach out to me and we will be glad to provide logistical advice.

58.    As recommended by V.P. Morrison, that same day, July 27, 2021,

Mr. Reynolds reached out to the City's Public Works Department, stating:

I represent two student organizations at IU . . . we would like a road on campus to represent our views with an All Lives Matter mural. Ideally, this would be on a large and highly visible street, although we are relatively open with regard to the mural's location. With the Fall semester starting in less than a month, we would like to get this process started as soon as possible.

59.     On August 2, 2021, Director Wason, responded to Kyle and explained the City's practice and policy, illustrated through working with the Black Collegians group (*i.e.*, the "other group" referred to in Wason's email), of the City deferring to IU for approval of street murals "for placement" on City streets located within the IU campus. Director Wason instructed Kyle as follows:

> Kyle,
>
> You'll need to work with the IUB President's Office, *as did the other group*, in order to get the concept for any murals approved for placement on any streets on campus.[1]

60.     Having been directed back to IU by the City to "get the concept for [his] mural[] approved for placement on any streets on campus," on the afternoon of August 2, 2021, Mr. Reynolds emailed Karen Adams, Chief of Staff to IU President Pamela Whitten, copying President Whitten and Mr. Morrison. Mr. Reynolds wrote:

> Dear Ms. Adams,
>
> I was informed by Adam Wason, the director of the Bloomington Public Works Department, that I'll "need to work with the IUB President's Office, as did the other group, in order to get the concept for any murals approved for placement on any streets on campus." Supposedly, nothing else can be done until I receive approval from the president's office.

61.     V.P. Morrison responded to Kyle's email two hours later, saying:

> Good afternoon Mr. Reynolds. Sounds like you have made proper contact with the City and have been routed back to me. In the City sending you the to the IU Presidents office, your request actually is then delegated to me, *as it was with the BLM group*. It is the City's ultimate approval. However, they do consult with us as an adjacent property owner, as they probably would with any owner. IU did not object to the BLM location on Jordan. Please let me (or the City) know your proposed location, size, design, etc. I am glad to review.

---

[1] Italics added.

*As with BLM, I cannot promise that IU will approve of your initial requested location, but we are open to exploring options.* Thanks.

Tom[2]

62.     Shortly thereafter, Kyle Reynolds responded to V.P. Morrison:

Well it's good to know that I am finally in contact with the right person. I will start by listing a few possible locations. Potential locations, in order of preference, are E 7th St in front of the Union, E 10th St in front of Hodge Hall, E Kirkwood Ave in front of Von Lee, or Indiana Ave in front of Franklin Hall. The size of the mural will be approximately 15' x 145'. I have attached the mural design below. As you can see, in addition to simply stating "All Lives Matter," the mural will also offer support to first responders with a variation of the traditional thin blue line and thin red line iconography.

Thank you for your help thus far, and I look forward to hearing your response.

63.     Kyle Reynolds attached to his August 2, 2021, email to Mr. Morrison the following full color representation of the All Lives Matter ("ALM") Street Mural design proposed by Kyle and the Turning Point USA student organization:



64.     The next day Mr. Morrison responded:

Kyle, thank you for the proposed graphic, sizing, and potential locations. *The graphic and sizing look good on my end.* On the locations, allow me to provide the following feedback:
E7th north of the IMU – IU would not permit any public street art at this location as this portion of 7th Street is University owned property. In fact, the students who worked on the BLM mural

---

[2] Italics added.

requested the same location and it was not approved for the same reasons.

E-10th Street at Hodge Hall – IU would not be in favor of this location due to the separation in the street by the traffic safety islands and the need to keep the dedicated turn lanes marked and prominent.

East Kirkwood in front of the Von Lee - IU would not have any objection to this location.

Indiana Avenue in front of Franklin Hall – IU would not be in favor of this location due to its proximity to the Sample Gates. For similar reasons to the E 7th location, we object to any permanent displays at this location.

Thanks for the proposal. *You can relay to the City that IU is ok with the East Kirkwood location.* Please reach out with any further questions.[3]

65.     Having received IU's approval of both the "graphic and sizing" of the proposed ALM Street Mural and of "the East Kirkwood location" for the ALM Street Mural, Kyle Reynolds wrote DPW Director Wason on August 3:

Our concept for a 15' x 145' "All Lives Matter" mural was approved by the IUB President's Office, specifically by IU Vice President for Capital Planning and Facilities Thomas Morrison, for placement on E Kirkwood Ave in front of the Von Lee building. I have attached the design for the mural below.

66.     A copy of the above graphic design of the ALM Street Mural was attached to Kyle Reynolds' August 3, 2021, email to Mr. Wason.

67.     Kyle Reynolds' request for approval of the ALM Street Mural was sent to Director Wason on the very day that Director Wason submitted a staff report to

_____

[3] Italics added.

the Board recommending ratification of the earlier decision to approve the design,
content, location, and placement of the BLM Street Mural on the IU campus.

68.    Director Wason's staff report was placed on the "consent agenda" of the
Board for its August 3, 2021, meeting. His report stated:

> The City of Bloomington Economic & Sustainable Development
> Department, Office of the Mayor, Community Family Resources
> Department, and the Public Works Department endorse the
> painting of a Black Lives Matter mural on Jordan Avenue adjacent
> to the IU Neil Marshall Black Cultural Center *in partnership with
> the IU Provost's Office and the Black Collegians student group*. This
> community project is requesting the Board of Public Works to
> permit this use of a public right of way and *join in this public
> display of support for our Black and Brown residents* who have been
> fighting for justice. This request is coming to the Board of Public
> Works after the project was completed due to an oversight by staff
> as City personnel transitioned out of the organization. Intentions
> were always to work with IU and this student group, and have this
> before the Board in early June. Due to the oversight, we are
> requesting after the fact approval.[4]

69.    Director Wason's proposal for the Board to ratify the BLM Street
Mural and the Department of Public Works' "partnership with the IU Provost's
Office and the Black Collegians student group" was approved by the Board at its
August 3, 2021, meeting, just seven (7) days *after* Kyle Reynolds had first reached
out to Director Wason asking the City to approve Turning Point USA's All Lives
Matter Mural and on the very day that the IU Administration approved the All
Lives Matter Mural.

70.    Nevertheless, it would take Director Wason another week and multiple
prompts from Kyle Reynolds to respond to Kyle's follow up request.

---

[4] Italics added.

71.     After three follow up inquiries from Kyle Reynolds, Director Wason

finally responded on August 10, 2021. At that time, Director Wason passed Kyle

Reynolds off to the City Attorney, writing:

> Mr. Reynolds,
>
> City Legal is who you can speak with. Mr. Morrison's office is also
> not in agreement with your take on IU "giving permission".
>
> Take care and be well,
>
> Adam

72.     Kyle Reynolds dutifully reached out that same day, August 10, 2021, to

the Bloomington City Attorney, Mike Rouker. Mr. Reynolds' email to City Attorney

Rouker explained:

> I represent . . . two student organizations at Indiana University. . . .
> [W]e would like a road on campus to represent our views with an
> All Lives Matter mural.
>
> After speaking with the director of the public works department,
> Adam Wason, we were informed that we would first need
> permission from the IU President's Office before such a project
> could proceed. The president's office then delegated the project to
> Thomas Morrison, the vice president for capital planning and
> facilities at IU. After submitting our proposed design, sizing, and
> locations to Mr. Morrison, we were told that graphic and sizing
> "look good" and that the university would "not have any objection
> to" a 15' x 145' mural on E Kirkwood in front of the Von Lee
> building. We were then told by Mr. Morrison to "relay to the City
> that IU is ok with the East Kirkwood location."
>
> After again contacting Mr. Wason and informing him of IU's
> approval, we were told that we would have to contact the city's legal
> department. I have CC'd everyone that appears to be involved in
> the decision making process on this email in the hope of moving
> this project forward.

18

73.     Kyle Reynolds waited another week on City Attorney Rouker to respond before again initiating follow up requests. Mr. Reynolds sent Mr. Rouker follow-up emails on August 17, August 18, and August 19, 2021, but still received no response.

74.     Finally, on August 23, 2021, City Attorney Rouker wrote to Kyle Reynolds' as follows:

> Mr. Reynolds:
>
> The City of Bloomington's Board of Public Works approves the placement of art in the public right of way. The City does not take recommendations for art in its right of way from individuals, and, at this time, the City is not considering adding additional art within its right of way.

75.     By referring Kyle Reynolds to Mr. Rouker for the above communication, the Board of Public Works, through its Director Mr. Wason, denied Mr. Reynolds and TPUSA's request to place an All Lives Matter mural in the City's public right-of-way.

76.     Despite the response by Mr. Roukers on behalf of the Board and Mr. Wason, the City had recently taken recommendations for art encroaching in its right-of-way from individuals associated with the Black Collegians group and from the IU administration and had officially ratified taking such recommendations within the precise time frame in which Turning Point USA's request to the City was made, including the Board's official action to ratify the erection of the BLM Street Mural taken *after* Turning Point USA's request was received by the City.

77.     In response, Kyle Reynolds immediately wrote City Attorney Rouker, noting Mr. Reynold's concern that the Board of Public Works was engaging in viewpoint discrimination through approving the "Black Lives Matter" message while rejecting the "All Lives Matter" message. Kyle said:

> Dear Mr. Rouker,
>
> I would like to point out that the city approved a BLM piece of art only a few months ago, and I and the organizations I represent will be pursuing legal action against the city if this mural doesn't receive approval. As an attorney, I'm sure I don't need to inform you that governmental entities cannot discriminate in the viewpoints they allow to be expressed.

78.     At the time, Kyle Reynolds was unaware that the Board had only officially approved the BLM Street Mural for the first time on August 3, 2021, just hours after Kyle's follow up request to Director Wason had been made.

79.     Neither City Attorney Rouker, nor anyone else from the Board has responded to Kyle Reynolds' August 23, 2021, communication stating that the City was engaging in viewpoint discrimination.

**E.   The IU Chapter of Turning Point USA and Kyle Reynolds Have Been Injured by the City's Viewpoint Discrimination and Are Entitled to a Declaratory Judgment and Nominal Damages**

80.     Plaintiffs have been injured by the City's approval and preference for the BLM Street Mural because a message with which they disagree has been preferred over their message, they have been prevented from communicating their message through the proposed ALM Street Mural, they are unable to bring as much attention to their message because they have lost the highly effective communication vehicle of placing a street mural bearing their message on the IU

Campus, and they have incurred the time, inconvenience, costs and expense of this litigation.

81.     Plaintiffs are entitled to injunctive relief to address the discriminatory actions of the Board of Public Works and Director Wason.

82.     Plaintiffs are entitled to a declaratory judgment declaring that the Board of Public Works and Director Wason have violated their legal rights as further described below.

83.     Plaintiffs are entitled to nominal damages for the violation of their rights.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF

**Violation of the Free Speech Clause of the First Amendment
to the United States Constitution – Viewpoint Discrimination**

84.     The foregoing allegations in paragraphs 1 through 83 above are incorporated herein by reference into this First Claim for relief as if fully set forth.

85.     The First Amendment to the United States Constitution provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

86.     The Free Speech Clause of the First Amendment applies to the City through the Due Process Clause of the Fourteenth Amendment. *Near v. Minnesota*, 283 U.S. 697, 628 (1931).

87.     The First Amendment protects free speech in part by shielding citizens

from discriminatory government regulation. *Rosenberger v. Rector & Visitors of*

*Univ. of Va.*, 515 U.S. 819, 828–29, (1995).

88.     The public ways where Plaintiffs and others attempted to

communicate their message are traditional public fora. Traditional public fora such

as streets and sidewalks "have immemorially been held in trust for the use of the

public and, time out of mind, have been used for purposes of assembly,

communicating thoughts between citizens, and discussing public questions."

*Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 152 (1969) (internal citations

omitted).

89.     Plaintiffs' speech and expressive activity is protected by the First

Amendment. "Commenting on matters of public concern" is a classic form of speech

lying at the heart of the First Amendment. *Schenck v. Pro-Choice Network of*

*Western New York*, 519 U.S. 357, 377 (1997).

90.     The First Amendment emphatically prohibits the government from

discriminating against ideas based on the content or viewpoint of protected speech.

The government, "including a municipal government vested with state authority,

has no power to restrict expression because of its message, its ideas, its subject

matter, or its content." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015)

(cleaned up).

91.     Content-based laws, including the application of otherwise

constitutional laws in a content-based manner, "are presumptively unconstitutional

and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163 (cleaned up).

92.     Policies, practices or the actions of municipal officials that discriminates on the basis of viewpoint are presumed unconstitutional.

93.     Plaintiffs and others were impermissibly prohibited from communicating their message when Defendants prohibited Plaintiffs from painting their message on the public streets but permitted similar messages by others to be painted on the public streets or to otherwise encroach on public right-of-ways. The Board's enforcement of its Encroachment Policy to censor the message of Plaintiffs is impermissibly content and viewpoint based. The application of the Board's Encroachment Policy to Plaintiffs therefore unconstitutionally discriminates against Plaintiffs' speech based on its content and Plaintiffs' viewpoint.

94.     By prohibiting Plaintiffs from communicating their message in their desired way, the Defendants' actions also constitute an impermissible prior restraint.

95.     There are no guidelines governing the unbridled discretion of City officials and prohibiting them from discriminating against viewpoints when enforcing the Encroachment Policy.

96.     The application of the Encroachment Policy to Plaintiffs serves no legitimate, or compelling, government interest, and Defendants lack any evidence or sufficient evidence to demonstrate the existence of such an interest.

97.     The application of the Encroachment Policy to Plaintiffs is not narrowly tailored to further any government interest, and is not the least restrictive means of achieving any alleged government interest.

98.     The application of the Encroachment Policy to Plaintiffs suppresses substantially more speech than is necessary to further any alleged government interest.

99.     Plaintiffs do not have any, much less ample, alternative channels to communicate their desired message.

100.    City officials acted under color of state law when enforcing the Encroachment Policy against the Plaintiffs.

101.    The City and its Board of Public Works have a policy and practice of enforcing the Encroachment Policy against speech it disagrees with and not enforcing it against speech it prefers.

102.    The Encroachment Policy is unconstitutional as applied to Plaintiffs' speech under any applicable standard of scrutiny.

103.    Accordingly, Defendant's enforcement of the Encroachment Policy against Plaintiffs violates the First Amendment of the United States Constitution.

104.    Therefore, Defendants' enforcement of the Encroachment Policy against Plaintiffs' speech unconstitutionally infringes on Plaintiffs' rights, thereby entitling Plaintiffs to the belief requested below under 42 U.S.C. § 1983.

105.    WHEREFORE, Plaintiffs respectfully request that the Court grant the relief set forth hereinafter in the prayer for relief.

24

## SECOND CLAIM FOR RELIEF

**Violation of Article 1, Section 9 of the Indiana Constitution – Freedom of Thought, Opinion, Speech, Writing, and Printing on Any Subject**

106.    The foregoing allegations in paragraphs 1 through 105 above are incorporated herein by reference into this Second Claim for relief as if fully set forth.

107.    Article 1, Section 9 of the Indiana Constitution provides:

> No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible.

108.    Like the Free Speech Clause of the U.S. Constitution, Article 1, Section 9, applies not only to legislative activity but to the activities of all branches and levels of Indiana government. *Cantrell v. Morris*, 849 N.E.2d 488, 492-93 (Ind. 2006). Accordingly, Article 1, Section 9 applies to the City and the actions of its Board of Public Works and Director of Public Works.

109.    Article 1, Section 9 sets forth free speech protections that are in some respects broader than the free speech clause of the First Amendment to the U.S. Constitution. *See, e.g., Journal-Gazette Co., Inc. v. Bandido's, Inc.*, 712 N.E.2d 446, 471 (1999) ("Article I, section 9, is even more emphatic than the First Amendment in prohibiting any law 'restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever'") (Boehm, J., concurring); *Price v. State*, 622 N.E.2d 954, 958 (Ind. 1993) (Indiana's

disorderly conduct statute was not unconstitutional under federal constitution but conviction under it could not be supported under Indiana Const. Art. 1, Sec. 9).

110.    As Section 9 "extends to 'any subject whatever' . . . it is difficult to imagine a topic it does not cover." *Whittington v. State*, 669 N.E.2d 1363, 1368 (Ind. 1996). And, Section 9 "reaches every conceivable mode of expression." *Id*.

111.    Unlike the First Amendment, Indiana's "right to speak clause articulates a liberty interest, not an equality interest. It protects against *restriction* of expressive activity, not *discrimination* because of content or viewpoint." *Whittington*, 669 N.E.2d at 1368 (emphasis original).

112.    "The right to speak clause focuses on the restrictive impact of state action on an individual's expressive activity. At a minimum, the clause is implicated when the state imposes a direct and significant burden on a person's opportunity to speak his or her mind, in whatever manner the speaker deems most appropriate." *Whittington*, 669 N.E.2d at 1368.

113.    "The right to speak is qualified . . . by § 9's responsibility clause, which provides that 'for the abuse of that right, every person shall be responsible[;]' . . . [t]he responsibility clause expressly recognizes the state's prerogative to punish expressive activity that constitutes an 'abuse' of the right to speak." *Whittington*, 669 N.E.2d at 1368.

114.    "[I]f a claimant demonstrates that the right to speak clause is implicated, he or she retains the burden of proving that the State could not

reasonably conclude that the restricted expression was an 'abuse.'" *Whittington*, 669 N.E.2d at 1369.

115.   "One way a claimant can try to meet this burden is to show that his or her expressive activity was political. If a claimant succeeds in that attempt, the State must demonstrate that its action has not materially burdened the claimant's opportunity to engage in political expression." *Whittington*, 669 N.E.2d at 1369.

116.   "This approach reflects [Indiana's] recognition that political expression is often beyond the scope of the delegated police power." *Whittington*, 669 N.E.2d at 1369.

117.   Article 1, "§ 9 enshrines pure political speech as a core value." *Price*, 622 N.E.2d at 963.

118.   Therefore, Article 1, Section 9 forbids the City from "impos[ing] a material burden upon the free exercise of political speech." *Price,* 622 N.E.2d at 963.

119.   However, Article 1, Section 9 is not limited to speech characterized as political as it extends to "any subject whatever" and "reaches every conceivable mode of expression." *Whittington*, 669 N.E.2d at 1368.

120.   Importantly, a municipal government is without authority to burden its residents' speech merely because some may be offended by it.

121.   Applying Article 1, Section 9, the Indiana Supreme Court has observed:

> Whenever the state dictates the means by which political opinion may be voiced . . . it teeters on the edge of its authority. The machinery of democracy produces a sonorous cacophony, not a drone. . . 'you cannot limit free speech to polite criticism, because

27

> the greater a grievance the more likely men are to get excited about it.' . . . the efficacy of political speech often depends upon its ability to jar and galvanize.

*Price*, 622 N.E.2d at 963 (citations omitted).

122.  The All Lives Matter Street Mural to be erected on East Kirkwood Avenue in front of the Von Lee Building as approved by the IU administration was Plaintiffs' chosen mode of expression.

123.  By interfering with Plaintiffs' chosen method of expression and restricting them from erecting the street mural approved by the IU administration the City imposed a material burden upon Plaintiffs' expression and by imposing a permitting requirement on Plaintiffs the City engaged in prior restraint.

124.  The City is unable to demonstrate that its actions have not materially burdened the Plaintiffs' opportunity to engage in political expression.

125.  Further, regardless of whether the Plaintiffs' street mural is considered political expression, the City is unable to demonstrate that Plaintiffs' expression constituted an "abuse" or that the steps taken by the City to prevent Plaintiffs' from erecting the street mural was a legitimate exercise of the City's police power because the City did not reject, but approved, the street mural proposed by other similarly situated individuals.

126.  Accordingly, the City's signage rules, as applied to Plaintiffs, place an intolerable material burden on Plaintiffs' free speech rights in violation of Article 1, Section 9 of the Indiana Constitution.

127.    WHEREFORE, Plaintiffs respectfully request that the Court grant the

relief set forth hereinafter in the prayer for relief.

## THIRD CLAIM FOR RELIEF

### Violation of Article 1, Section 23 of the Indiana Constitution – Equal Privileges and Immunities

128.    The foregoing allegations in paragraphs 1 through 127 above are

incorporated herein by reference into this Third Claim for relief as if fully set forth.

129.    Article 1, Section 23 of the Indiana Constitution provides:

> The General Assembly shall not grant to any citizen, or class of
> citizens, privileges or immunities, which, upon the same terms,
> shall not equally belong to all citizens.

130.    "The requirements of Article 1, Section 23 'govern not only state

statutes, but also the enactments and actions of county, municipal, and other

governmental agencies and their equivalents.'" *Paul Stieler Enterprises, Inc. v. City*

*of Evansville*, 2 N.E.3d 1269 (Ind. 2014) (citation omitted); *see also Whistle Stop Inn,*

*Inc. v. City of Indianapolis*, 51 N.E.3d 195, 199 (2016) (Section 23 "applies to

municipal ordinances as well as state statutes").

131.    For instance, an early application of Section 23 was to invalidate a City

of Rushville municipal ordinance which attempted to "grant privileges to the

citizens of Rushville, which are not equally and upon the same terms open to all

citizens." *Graffty v. City of Rushville*, 8 N.E. 609, 612 (Ind. 1886).

132.    More recently, the Indiana Supreme Court relied upon Section 23 to

invalidate "an Evansville ordinance expanding the city's smoking ban to bars and

restaurants but exempting its only riverboat casino." *Stieler*, 2 N.E. 3d at 1271.

29

133.    Therefore, Article 1, Section 23 applies to the City and to the actions of the City, the Board and the Director of Public Works.

134.    Article 1, Section 23 of the Indiana Constitution has been given robust application to ensure that *equal* privileges and immunities be extended to Indiana citizens in a long line of Indiana cases, and Indiana's assurance of equal privileges and immunities has in many cases extended far beyond the due process and equal protection guarantees in the federal constitution.

135.    "There are striking textual differences between [Article 1, Section 23 of the Indiana Constitution and the Fourteenth Amendment to the U.S. Constitution]. The Fourteenth Amendment prohibits laws which "abridge" privileges or immunities, whereas Section 23 prohibits laws which "grant" unequal privileges or immunities." *Collins v. Day*, 644 N.E.2d 72, 74 (Ind. 1994).

136.    The Indiana Supreme Court has therefore concluded that "Section 23 should be given independent interpretation and application" from the Fourteenth Amendment. *Collins*, 644 N.E.2d at 75.

137.    Indiana's "independent state privileges and immunities jurisprudence . . . extend[s] protection to all Indiana citizens in addition to that provided by the federal Fourteenth Amendment." *Collins* 644 N.E.2d at 81.

138.    In *Collins v. Day* the Indiana Supreme Court recognized at least three independent lines of cases arising from Article 1, Section 23, to include:

(1)    "cases which have applied federal equal protection methodology to state Section 23 issues,"

30

(2)    cases "focus[ing] upon the nature of the classifications of citizens upon which the legislature is basing its disparate treatment" and requiring "that the basis of such classification must 'inhere in the subject matter'" and

(3)    cases focusing upon "the need for uniformity and equal availability of the preferential treatment for all persons similarly situated." *Collins*, 644 N.E.2d at 78-79.

139.    Unlike under the Fourteenth Amendment, "[t]he resolution of Section 23 claims does not require an analytical framework applying varying degrees of scrutiny for different protected interests." *Collins*, 644 N.E.2d at 80.

140.    Instead, "[t]he protections assured by Section 23 apply fully, equally, and without diminution to prohibit any and all improper grants of unequal privileges or immunities, including not only those grants involving suspect classes or impinging upon fundamental rights but other such grants as well." *Collins*, 644 N.E.2d at 80.

### Disparate treatment resulting from a classification must be reasonably related to inherent characteristics which distinguish the unequally treated classes

141.    Under Section 23, where the government "singles out one person or class of persons to receive a privilege or immunity not equally provided to others, such classification must be based upon distinctive, inherent characteristics which rationally distinguish the unequally treated class, and the disparate treatment accorded by the legislation must be reasonably related to such distinguishing

31

characteristics." *Collins*, 644 N.E.2d at 78-79; *accord Myers v. Crouse-Hinds Div. of Cooper Industries, Inc.*, 53 N.E.3d 1160, 1165 (2016); *Paul Stieler Enterprises, Inc. v. City of Evansville*, 2 N.E.3d 1269, 12775 (Ind. 2014).

142.    The City allowed Joa'Quinn Griffin, Tiera Howleit, the Black Collegians, and others associated with them (the "BLM Street Mural Group") to paint a street mural on a public right-of-way of the City on the IU campus.

143.    However, the City refused to permit Kyle Reynolds and the IU chapter of Turning Point USA and others associated with them (the "ALM Street Mural Group") to paint a street mural on a public right-of-way of the City on the IU campus.

144.    There exist no permissible distinctive, inherent characteristics which rationally distinguish the BLM Street Mural Group from the ALM Street Mural Group or which justify the BLM Street Mural Group having the privilege of painting a street mural and the ALM Street Mural Group being denied that privilege.

### Preferential treatment must be uniformly applicable and equally available to all persons similarly situated

145.    A separate and independent requirement of Section 23 is that, "any privileged classification must be open to any and all persons who share the inherent characteristics which distinguish and justify the classification, with the special treatment accorded to any particular classification extended equally to all such persons." *Collins*, 644 N.E.2d at 79.

146.   The City created a privileged classification of students and/or a student group or groups from IU who were permitted to paint a street mural on a public right-of-way on the IU campus upon approval of the planned mural by the IU administration.

147.   Turning Point USA and Kyle Reynolds lacked no relevant and inherent characteristics which distinguished and justified the special treatment given the BLM Street Mural Group.

148.   However, Defendants refused to allow Plaintiffs Turning Point USA and Kyle Reynolds to paint a street mural on a public right-of-way on the IU campus after approval of the planned mural by the IU administration.

149.   The City is unable to demonstrate a sufficiently compelling reason to reject the street mural proposed by similarly situated individuals of other races.

150.   Accordingly, for the foregoing reasons the City's actions violated Article 1, Section 23 of the Indiana Constitution.

151.   WHEREFORE, Plaintiffs respectfully request that the Court grant the relief set forth hereinafter in the prayer for relief.

## IRREPARABLE INJURY ALLEGATIONS

152.   "The loss of First Amendment freedoms ... unquestionably constitutes irreparable injury." *New Hope Family Servs, Inc. v. Poole*, 966 F.3d 145, 181 (2d Cir. 2020) (internal quotation marks omitted).

153.   Likewise, the loss of other freedoms and liberties guaranteed by the state and federal constitutions constitutes irreparable injury.

154.   As a result of Defendants' policies, practices, procedures, deliberate actions, failures and omissions, Turning Point USA and Kyle Reynolds have suffered and will continue to suffer immediate and irreparable injury in the form of deprivation of their constitutional rights.

155.   Turning Point USA and Kyle Reynolds have no plain, adequate, and complete remedy at law to redress the wrongs described herein.

156.   Monetary damages are not sufficient to compensate for continuing violation of their Constitutional rights, restriction of their speech and denial of the equal protection of the law.

157.   Turning Point USA and Kyle Reynolds will continue to suffer irreparable injury unless the Court promptly grants the injunctive relief requested.

## **PRAYER FOR RELIEF**

For the foregoing reasons, Plaintiff requests that the Court grant the following relief:

1.   Declaring that Defendants Encroachment Policy violates the free speech protections of the state and federal constitutions;

2.   Declaring that the Defendants' Encroachment Policy constitutes a prior restraint forbidden under the state and federal constitutions;

3.   Declaring Defendant violated the First and Fourteenth Amendments to the U.S. Constitution by failing to permit Plaintiffs to paint a street mural depicting "All Lives Matter" in Bloomington, Indiana, on East Kirkwood Avenue in front of the Von Lee building on the Indiana University campus as approved by Indiana University officials;

4.   Declaring Defendant violated Article I, Section 9 and Article 1, Section 23 of the Indiana Constitution by failing to permit Plaintiffs to paint a street mural depicting "All Lives Matter" in Bloomington, Indiana, on

East Kirkwood Avenue in front of the Von Lee building on the Indiana University campus as approved by Indiana University officials;

5.    Issuing Preliminary and Permanent Injunctions requiring Defendant to permit Plaintiffs to paint a street mural depicting "All Lives Matter" in Bloomington, Indiana, on East Kirkwood Avenue in front of the Von Lee building on the Indiana University campus as approved by Indiana University officials;

6.    Issuing Preliminary and Permanent Injunctions enjoining Defendants from enforcing their Encroachment Policy in a content- and viewpoint-discriminatory manner;

7.    Awarding Plaintiffs nominal and/or punitive damages for the violations of their constitutional rights;

8.    Awarding the Plaintiffs their costs, expert witness fees, and attorneys' fees pursuant to 42 U.S.C. § 1988 and any other applicable authority; and

9.    Awarding all other just and proper relief.

Dated: February 23, 2022

Respectfully submitted,

**KROGER, GARDIS & REGAS, LLP**

/s/ William Bock, III
William Bock, III, Atty. No. 14777-49

ATTORNEY FOR PLAINTIFFS

KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Phone: (317) 692-9000

Filed: 2/28/2022 6:03 PM
Clerk
Monroe County, Indiana
Monroe Circuit Court 6

STATE OF INDIANA    )      IN THE MONROE COUNTY SUPERIOR COURT
                     )  SS:  CIVIL DIVISION, ROOM NO. ___
COUNTY OF MONROE  )      CAUSE NO. 53C06-2202-PL-000361

INDIANA UNIVERSITY CHAPTER    )
OF TURNING POINT USA, and       )
                               )
KYLE REYNOLDS,                )
                               )
           Plaintiffs,     )
                               )
      vs.                 )
                               )
CITY OF BLOOMINGTON, INDIANA,    )
ADAM WASON, in his official capacity as  )
Director of Public Works for the City of   )
Bloomington, and KYLA COX DECKARD, )
BETH H. HOLLINGSWORTH and DANA  )
HENKE in their official capacities as    )
members of the Board of Public Works of  )
the City of Bloomington, Indiana,      )
                               )
          Defendants.     )
                               )

## PLAINTIFFS' APPENDIX OF EXHIBITS
## IN SUPPORT OF PLAINTIFFS' COMPLAINT AND MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs, by counsel, submit this Appendix of Exhibits in Support of

Plaintiffs' Complaint and Motion for Preliminary Injunction.

| 1A | Email communications between Kyle Reynolds and IU representatives, Aug. 2, 2021 |
|----|--------------------------------------------------------------------------------|
| 1B | Email communications between Kyle Reynolds and Tom Morrison and other IU representatives, July 20, 2021 – Aug 3, 2021 |

1

| 1C | Email communications between Kyle Reynolds and Public Works Department of the City of Bloomington, July 29, 2021 – Aug 1, 2021 |
|----|----|
| 1D | Email communications between Kyle Reynolds and Adam Wason, Directors of Public Works Department of the City of Bloomington, Aug 2, 2021 through Aug 10, 2021 |
| 1E | Email communications between Kyle Reynolds and Michael Rouker and other City and IU representatives, Aug 10, 2021 – Aug 23, 2021 |
| 1F | Final Proof of All Lives Matter mural |
| 2A | Excerpts from the Board of Public Works Meeting, Sept 29, 2020 Packet |
| 2B | Excerpts from the Board of Public Works Meeting, April 13, 2021 Packet |
| 2C | Excerpts from the Board of Public Works Meeting, August 3, 2021 Packet |
| 2D | Board of Public Works Minutes, August 3, 2021 |
| 2E | Excerpts from the Board of Public Works Meeting, September 14, 2021 Packet |
| 3A | Article:  Black Voices: Black Lives Matter Mural: Inclusivity Matters, By Tiera Howleit, published Jul 26, 2021 |
| 3B | Article:  Black Voices: Black Lives Matter mural brings Bloomington community together during its reveal, By Tiera Howleit, published Aug 31, 2021 |
| 3C | B Square Bulletin, New Bloomington mural, planned renaming of street both send same message: Black Lives Matter, by Dave Askins, Aug 1, 2021 |
| 3D | Article: All-inclusive Black Lives Matter mural debuts, by Inside IU Bloomington, July 13, 2021 |
| 3E | Black Collegians Facebook Post, July 2, 2021 |
| 3F | IU tweet, July 8, 2021 |

| 3G | IU Provost Tweet, July 6, 2021 |
|----|---------------------------------|
| 4A | B Square Bulletin:  Activist on "BLACK LIVES MATTER" mural overlay: "It's something we can all dance to.", by Dave Askins, June 27, 2020 |
| 4B | Middle Way House 2021 – 2022 Wrapped in Love Public Art Display, Oct 1, 2021 – March 1, 2022 |
| 4C | beINvolved Wrapped in Love Events |
| 4D | IU Alumni Association Parade Guide, Homecoming Parade Guide, 2021 |
| 5 | Constitution of Turning Point USA at Indiana University |
| 6 | Declaration of Kyle Reynolds |
| 7 | Declaration of Mary E. Myers |

Dated: February 23, 2022

Respectfully submitted,

**KROGER, GARDIS & REGAS, LLP**

/s/ William Bock, III
William Bock III, Attorney No. 14777-49

ATTORNEYS FOR PLAINTIFFS

KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Phone: (317) 692-9000

3



Kyle Reynolds <kyhreyno@iu.edu>

**All Lives Matter Mural on Campus**
3 messages

**Kyle Reynolds** <kyhreyno@iu.edu> Mon, Aug 2, 2021 at 9:30 AM
To: iupres@iu.edu, kadams@iu.edu, bfsanta@iu.edu

To whom it may concern,

Given the recent unveiling of the Black Lives Matter mural on campus, which was funded using student fees, I, and the student organizations I represent, would like to create an All Lives Matter mural on campus.

I'm the campus ambassador for Turning Point USA at IU and the president of *The Crimson Post*, two self-governed student organizations on campus. We feel that the BLM moniker is highly divisive and not representative of all the groups on campus.

As such, we would like a space on campus to represent our views with an All Lives Matter mural painted on a street with similar visibility to Jordan Ave.

After contacting both the IU Facilities Department and the Bloomington Board of Public Works, we were informed that we need approval from the Office of the President before the project can proceed.

--
Sincerely,
Kyle Reynolds
Student | Kelley School of Business
President | The Crimson Post
kyhreyno@iu.edu
The Crimson Post

**Adams, Karen Hoeve** <kadams@iu.edu> Mon, Aug 2, 2021 at 11:05 AM
To: "Reynolds, Kyle Haworth" <kyhreyno@iu.edu>
Cc: President Pamela Whitten <iupres@iu.edu>, "Santa, Brittany Fay" <bfsanta@iu.edu>, "Morrison, Thomas" <morrisot@iu.edu>

Kyle,

As I believe VP Tom Morrison has notified you, these sorts of requests are solely based on City of Bloomington Approvals but we are always glad when people alert our VP for Capital Planning and Facilities Office of such requests that are going forward to the City.

I understand that you may be in the process of proposing a location to the City of Bloomington, and once that is done, VP Tom Morrison can confer with you on next steps.

Thank you,

Karen Adams

Karen H. Adams

Chief of Staff

812-856-5596

kadams@iu.edu

INDIANA UNIVERSITY

**From:** Kyle Reynolds <kyhreyno@iu.edu>
**Date:** Monday, August 2, 2021 at 9:30 AM
**To:** President Pamela Whitten <iupres@iu.edu>, Karen Adams <kadams@iu.edu>, Brittany Santa <bfsanta@iu.edu>
**Subject:** All Lives Matter Mural on Campus

To whom it may concern,

Given the recent unveiling of the Black Lives Matter mural on campus, which was funded using student fees, I, and the student organizations I represent, would like to create an All Lives Matter mural on campus.

I'm the campus ambassador for Turning Point USA at IU and the president of *The Crimson Post*, two self-governed student organizations on campus. We feel that the BLM moniker is highly divisive and not representative of all the groups on campus.

As such, we would like a space on campus to represent our views with an All Lives Matter mural painted on a street with similar visibility to Jordan Ave.

After contacting both the IU Facilities Department and the Bloomington Board of Public Works, we were informed that we need approval from the Office of the President before the project can proceed.

--

Sincerely,

Kyle Reynolds

Student | Kelley School of Business

President | The Crimson Post

kyhreyno@iu.edu

Image removed by sender.

**Kyle Reynolds** <kyhreyno@iu.edu> Mon, Aug 2, 2021 at 11:14 AM
To: "Adams, Karen Hoeve" <kadams@iu.edu>
Cc: President Pamela Whitten <iupres@iu.edu>, "Santa, Brittany Fay" <bfsanta@iu.edu>, "Morrison, Thomas" <morrisot@iu.edu>

Dear Ms. Adams,

I was informed by Adam Wason, the director of the Bloomington Public Works Department, that I'll "need to work with the IUB President's Office, as did the other group, in order to get the concept for any murals approved for placement on any streets on campus." Supposedly, nothing else can be done until I receive approval from the president's office.

--
Sincerely,
Kyle Reynolds
Student | Kelley School of Business
President | The Crimson Post
kyhreyno@iu.edu
The Crimson Post

Exhibit 1A



Kyle Reynolds <kyhreyno@iu.edu>

**All Lives Matter Mural on Campus**
11 messages

**Kyle Reynolds** <kyhreyno@iu.edu>                                                                 Tue, Jul 20, 2021 at 3:22 PM
To: morrisot@iu.edu, vpcpfoff@indiana.edu, sil@indiana.edu

To whom it may concern,

Given the recent unveiling of the Black Lives Matter mural on campus, which was funded using student fees, I, and the student organizations I represent, would like to create an All Lives Matter mural on campus.

I'm the campus ambassador for Turning Point USA at IU and the president of *The Crimson Post*, two self-governed student organizations on campus. We feel that the BLM moniker is highly divisive and not representative of all the groups on campus.

As such, we would like a space on campus to represent our views with an All Lives Matter mural. Ideally, this would be on a large street, such as the one utilized for the BLM mural, however, any large space with high visibility on campus should be adequate.

Assuming we need a permit for such an undertaking, I would like to get that process started as soon as possible. If you, the recipients of this email, are not the correct parties to contact for this matter, would it be possible for you to direct me to the appropriate party?

--
Sincerely,
Kyle Reynolds
Student | Kelley School of Business
President | The Crimson Post
kyhreyno@iu.edu



**Kyle Reynolds** <kyhreyno@iu.edu>                                                                 Wed, Jul 21, 2021 at 10:40 AM
To: Addison Cowling <ACowling@leadershipinstitute.org>

[Quoted text hidden]

**Kyle Reynolds** <kyhreyno@iu.edu>                                                                 Mon, Jul 26, 2021 at 11:14 AM
To: morrisot@iu.edu, sil@indiana.edu, vpcpfoff@indiana.edu

I would like to follow up on this inquiry.
[Quoted text hidden]

**Student Involvement and Leadership** <sil@indiana.edu>                                           Mon, Jul 26, 2021 at 4:55 PM
To: "Reynolds, Kyle Haworth" <kyhreyno@iu.edu>

Hi Kyle

Exhibit 1B

Reynolds,

We believe Vice President Morrison will be following up soon on the logistics for painting a street on campus. Similarly to the Black Lives Matter mural, you as leader and member of a student organization can request funding from the IU Funding Board for this project.

IU Funding Board does not review or approve funding requests over the summer. They will be accepting funding requests at the beginning of the fall semester. If you haven't requested funds from Funding Board before, here's a link their website and information on how to apply for funding.

If you have any additional questions about the funding board process, please let us know.

Student Involvement and Leadership

IMU Suite 270

(812) 855-4682

sil@indiana.edu

**From:** Kyle Reynolds <kyhreyno@iu.edu>
**Sent:** Tuesday, July 20, 2021 3:22 PM
**To:** Morrison, Thomas <morrisot@iu.edu>; VPCPF Office <vpcpfoff@indiana.edu>; Student Involvement and Leadership <sil@indiana.edu>
**Subject:** All Lives Matter Mural on Campus

To whom it may concern,

[Quoted text hidden]

---

**Morrison, Thomas** <morrisot@iu.edu>                                                                                                Tue, Jul 27, 2021 at 9:52 AM
To: "Reynolds, Kyle Haworth" <kyhreyno@iu.edu>, VPCPF Office <vpcpfoff@indiana.edu>, Student Involvement and Leadership <sil@indiana.edu>

Good morning Mr. Reynolds.  Apologies for not responding sooner but I am just returning from a vacation.  I will address the facility related questions posed in your email.  Please realize that the Black Lives Matter street mural was not placed on Indiana University property nor the Campus.  The BLM mural was created on a street owned by the City of Bloomington.  Thus, the City was entity that ultimately approved the mural.

As information, the students who proposed this mural did request of IU to place the mural a several proposed locations on the IU Campus.  Each of those proposed locations was not approved.  IU does not permit mural street art on the Bloomington Campus.  The students did propose the location ultimately chosen and were directed to the City for approval.  Please know that we did offer the students advice on facility related logistics (types of paint, colors, temperatures, surface preparation, sizing, etc.).  We would provide that expertise to you or any student or group who inquired.  We did not pass any judgement on the art itself.

Should you desire to propose a street mural, I would direct you to the City of Bloomington.  Thank you for the inquiry.

Tom Morrison

Thomas A. Morrison, Ed.D

Vice President for Capital Planning and Facilities

Indiana University

Bryan Hall 205

Bloomington, IN  47405

812-855-6992

morrisot@iu.edu

**From:** Kyle Reynolds <kyhreyno@iu.edu>
**Sent:** Tuesday, July 20, 2021 3:22 PM
**To:** Morrison, Thomas <morrisot@iu.edu>; VPCPF Office <vpcpfoff@indiana.edu>; Student Involvement and Leadership <sil@indiana.edu>
**Subject:** All Lives Matter Mural on Campus

To whom it may concern,

[Quoted text hidden]

---

**Kyle Reynolds** <kyhreyno@iu.edu>                                                                 Tue, Jul 27, 2021 at 10:58 AM
To: "Morrison, Thomas" <morrisot@iu.edu>
Cc: VPCPF Office <vpcpfoff@indiana.edu>, Student Involvement and Leadership <sil@indiana.edu>

Dear Mr. Morrison,

Thank you so much for getting back to me. I suspected that the permit would have to be issued by the city, but I figured I'd contact university leadership first to see what level of control, if any, IU has over the streets on campus. If you wouldn't mind, I would greatly appreciate any advice you have on facility related logistics such as paint type or surface preparation.

Additionally, if you could direct me to the appropriate city official, I would be extremely grateful.

[Quoted text hidden]

---

**Morrison, Thomas** <morrisot@iu.edu>                                                            Wed, Jul 28, 2021 at 10:44 AM
To: "Reynolds, Kyle Haworth" <kyhreyno@iu.edu>
Cc: VPCPF Office <vpcpfoff@indiana.edu>, Student Involvement and Leadership <sil@indiana.edu>

Kyle, my recommendation would be to begin with the Board of Public Works at the City.  I believe they have a published process and staff who can assist.  If your project advances, please do feel free to reach out to me and we will be glad to provide logistical advice.

Thanks,

Tom

[Quoted text hidden]

---

**Morrison, Thomas** <morrisot@iu.edu>                                                              Mon, Aug 2, 2021 at 1:14 PM
To: "Reynolds, Kyle Haworth" <kyhreyno@iu.edu>

Good afternoon Mr. Reynolds.  Sounds like you have made proper contact with the City and have been routed back to me.  In the City sending you the to the IU Presidents office, your request actually is then delegated to me, as it was with the BLM group.  It is the City's ultimate approval.  However, they do consult with us as an adjacent property owner, as they probably would with any owner.  IU did not object to the BLM location on Jordan.  Please let me (or the City) know your proposed location, size, design, etc.  I am glad to review.  As with BLM, I cannot promise that IU will approve of your initial requested location, but we are open to exploring options.  Thanks.

Tom

Thomas A. Morrison, Ed.D

Vice President for Capital Planning and Facilities

Indiana University

Bryan Hall 205

Bloomington, IN  47405

812-855-6992

morrisot@iu.edu


**From:** Kyle Reynolds <kyhreyno@iu.edu>
**Sent:** Tuesday, July 27, 2021 10:59 AM
**To:** Morrison, Thomas <morrisot@iu.edu>

[Quoted text hidden]

[Quoted text hidden]

---

**Kyle Reynolds** <kyhreyno@iu.edu>
To: "Morrison, Thomas" <morrisot@iu.edu>

Mon, Aug 2, 2021 at 3:52 PM

Tom,

Well it's good to know that I am finally in contact with the right person. I will start by listing a few possible locations. Potential locations, in order of preference, are E 7th St in front of the Union, E 10th St in front of Hodge Hall, E Kirkwood Ave in front of Von Lee, or Indiana Ave in front of Franklin Hall. The size of the mural will be approximately 15' x 145'. I have attached the mural design below. As you can see, in addition to simply stating "All Lives Matter," the mural will also offer support to first responders with a variation of the traditional thin blue line and thin red line iconography.

Thank you for your help thus far, and I look forward to hearing your response.
[Quoted text hidden]

 **All Lives Matter Final Proof.pdf**
81K

---

**Morrison, Thomas** <morrisot@iu.edu>
To: "Reynolds, Kyle Haworth" <kyhreyno@iu.edu>

Tue, Aug 3, 2021 at 2:16 PM

Kyle, thank you for the proposed graphic, sizing, and potential locations.  The graphic and sizing look good on my end.  On the locations, allow me to provide the following feedback:

E7th north of the IMU – IU would not permit any public street art at this location as this portion of 7th Street is University owned property.  In fact, the students who worked on the BLM mural requested the same location and it was not approved for the same reasons.

E-10th Street at Hodge Hall – IU would not be in favor of this location due to the separation in the street by the traffic safety islands and the need to keep the dedicated turn lanes marked and prominent.

East Kirkwood in front of the Von Lee -  IU would not have any objection to this location.

Indiana Avenue in front of Franklin Hall – IU would not be in favor of this location due to its proximity to the Sample Gates.  For similar reasons to the E 7th location, we object to any permanent displays at this location.

Thanks for the proposal.  You can relay to the City that iU is ok with the East Kirkwood location.  Please reach out with any further questions.

Tom

Thomas A. Morrison, Ed.D

Vice President for Capital Planning and Facilities

Indiana University

Bryan Hall 205

Bloomington, IN  47405

812-855-6992

morrisot@iu.edu

**From:** Kyle Reynolds <kyhreyno@iu.edu>
**Sent:** Monday, August 2, 2021 3:53 PM
**To:** Morrison, Thomas <morrisot@iu.edu>
**Subject:** Re: All Lives Matter Mural on Campus

Tom,

[Quoted text Hidden]

**Kyle Reynolds** <kyhreyno@iu.edu>                                                                                     Tue, Aug 3, 2021 at 3:20 PM
To: "Morrison, Thomas" <morrisot@iu.edu>

Tom,

Fantastic, thank you for the help.

[Quoted text Hidden]

Filed: 2/23/2022 6:03 PM
Clerk
Monroe County, Indiana
Monroe Circuit Court 6



Kyle Reynolds <kyhreyno@iu.edu>

**Permit for an All Lives Matter Mural on IU's Campus**

2 messages

**Kyle Reynolds** <kyhreyno@iu.edu>
To: public.works@bloomington.in.gov

Thu, Jul 29, 2021 at 3:00 PM

To whom it may concern,

I represent two student organizations at IU, Turning Point USA and *The Crimson Post*. We're aware that the Bloomington Department of Public Works issued a permit for a Black Lives Matter mural to be painted on IU's campus.

We feel that the BLM moniker is highly divisive and not representative of all the groups on campus. As such, we would like a road on campus to represent our views with an All Lives Matter mural. Ideally, this would be on a large and highly visible street, although we are relatively open with regard to the mural's location.

With the Fall semester starting in less than a month, we would like to get this process started as soon as possible.

--
Sincerely,
Kyle Reynolds
Student | Kelley School of Business
President | The Crimson Post
kyhreyno@iu.edu



**Kyle Reynolds** <kyhreyno@iu.edu>
To: public.works@bloomington.in.gov

Sun, Aug 1, 2021 at 9:52 PM

I would like to follow up regarding this. Given our close proximity to the start of the fall semester, I, and the organizations I represent, are anxious to get this process underway.

[Quoted text hidden]



Kyle Reynolds <kyhreyno@iu.edu>

**Permit for an All Lives Matter Mural on IU's Campus**
2 messages

**Kyle Reynolds** <kyhreyno@iu.edu>                                          Thu, Jul 29, 2021 at 3:00 PM
To: public.works@bloomington.in.gov

  To whom it may concern,

  I represent two student organizations at IU, Turning Point USA and *The Crimson Post*. We're aware that the Bloomington Department of Public Works issued a permit for a Black Lives Matter mural to be painted on IU's campus.

  We feel that the BLM moniker is highly divisive and not representative of all the groups on campus. As such, we would like a road on campus to represent our views with an All Lives Matter mural. Ideally, this would be on a large and highly visible street, although we are relatively open with regard to the mural's location.

  With the Fall semester starting in less than a month, we would like to get this process started as soon as possible.

  --
  Sincerely,
  Kyle Reynolds
  Student | Kelley School of Business
  President | The Crimson Post
  kyhreyno@iu.edu

  

**Kyle Reynolds** <kyhreyno@iu.edu>                                          Sun, Aug 1, 2021 at 9:52 PM
To: public.works@bloomington.in.gov

  I would like to follow up regarding this. Given our close proximity to the start of the fall semester, I, and the organizations I represent, are anxious to get this process underway.
  [Quoted text hidden]



Kyle Reynolds <kyhreyno@iu.edu>

## [External] Campus Mural
5 messages

**Adam Wason** <wasona@bloomington.in.gov>                    Mon, Aug 2, 2021 at 9:15 AM
To: kyhreyno@iu.edu

> This message was sent from a non-IU address. Please exercise caution when clicking links or opening attachments from external sources.

Kyle,

You'll need to work with the IUB President's Office, as did the other group, in order to get the concept for any murals approved for placement on any streets on campus.

**Adam Wason**

Director, Public Works Department
City of Bloomington, IN
wasona@bloomington.in.gov
812 349.3516
bloomington.in.gov

**Kyle Reynolds** <kyhreyno@iu.edu>                    Tue, Aug 3, 2021 at 3:26 PM
To: Adam Wason <wasona@bloomington.in.gov>

Dear Mr. Wason,

Our concept for a 15' x 145' "All Lives Matter" mural was approved by the IUB President's Office, specifically by IU Vice President for Capital Planning and Facilities Thomas Morrison, for placement on E Kirkwood Ave in front of the Von Lee building. I have attached the design for the mural below.

Sincerely,
Kyle Reynolds
Student | Kelley School of Business
President | The Crimson Post
kyhreyno@iu.edu

 The Crimson Post

📄 **All Lives Matter Final Proof.pdf**
81K

**Kyle Reynolds** <kyhreyno@iu.edu>                    Thu, Aug 5, 2021 at 3:25 PM
To: Adam Wason <wasona@bloomington.in.gov>

I just wanted to follow up on this as I have yet to hear back from you.
[Quoted text hidden]

**Kyle Reynolds** <kyhreyno@iu.edu>                    Tue, Aug 10, 2021 at 2:32 PM
To: Adam Wason <wasona@bloomington.in.gov>

Dear Mr. Wason,

I'm again contacting you in regards to my proposed mural as I have received permission from IU and would like to move forward with the project as quickly as possible.
[Quoted text hidden]

**Adam Wason** <wasona@bloomington.in.gov>                    Tue, Aug 10, 2021 at 2:44 PM
To: Kyle Reynolds <kyhreyno@iu.edu>

Mr. Reynolds,

City Legal is who you can speak with. Mr. Morrison's office is also not in agreement with your take on IU "giving permission".

Take care and be well,
Adam

**Adam Wason**

Director, Public Works Department
City of Bloomington, IN
wasona@bloomington.in.gov
812.349.3516
bloomington.in.gov

[Quoted text hidden]

Exhibit 1D



Kyle Reynolds <kyhreyno@iu.edu>

**All Lives Matter Mural on Indiana University's Campus**
6 messages

**Kyle Reynolds** <kyhreyno@iu.edu>                                                  Tue, Aug 10, 2021 at 5:01 PM
To: roukerm@bloomington.in.gov, Adam Wason <wasona@bloomington.in.gov>
Cc: "Morrison, Thomas" <morrisot@iu.edu>

Dear Mr. Rouker,

I represent *The Crimson Post* and Turning Point USA at IU, two student organizations at Indiana University. We're aware that the city permitted a "Black Lives Matter" mural to be painted on Jordan Ave this Summer.

We feel that the BLM moniker is highly divisive and not representative of all the groups on campus. As such, we would like a road on campus to represent our views with an All Lives Matter mural.

After speaking with the director of the public works department, Adam Wason, we were informed that we would first need permission from the IU President's Office before such a project could proceed. The president's office then delegated the project to Thomas Morrison, the vice president for capital planning and facilities at IU. After submitting our proposed design, sizing, and locations to Mr. Morrison, we were told that graphic and sizing "look good" and that the university would "not have any objection to" a 15' x 145' mural on E Kirkwood in front of the Von Lee building. We were then told by Mr. Morrison to "relay to the City that IU is ok with the East Kirkwood location."

After again contacting Mr. Wason and informing him of IU's approval, we were told that we would have to contact the city's legal department. I have CC'd everyone that appears to be involved in the decision making process on this email in the hope of moving this project forward.

--
Sincerely,
Kyle Reynolds
Student | Kelley School of Business
President | The Crimson Post
kyhreyno@iu.edu

 The Crimson Post

**Kyle Reynolds** <kyhreyno@iu.edu>                                                  Tue, Aug 17, 2021 at 5:05 PM
To: Adam Wason <wasona@bloomington.in.gov>, roukerm@bloomington.in.gov
Cc: "Morrison, Thomas" <morrisot@iu.edu>

Dear Mr. Rouker,

I would again like to follow up with you on this matter as I have not yet received a response.

[Quoted text hidden]

**Kyle Reynolds** <kyhreyno@iu.edu>                                                  Wed, Aug 18, 2021 at 5:15 PM
To: Adam Wason <wasona@bloomington.in.gov>, roukerm@bloomington.in.gov
Cc: "Morrison, Thomas" <morrisot@iu.edu>

Dear Mr. Rouker,

I am again following up with you on this matter.
[Quoted text hidden]

**Kyle Reynolds** <kyhreyno@iu.edu>                                                  Thu, Aug 19, 2021 at 8:41 PM
To: Adam Wason <wasona@bloomington.in.gov>, roukerm@bloomington.in.gov
Cc: "Morrison, Thomas" <morrisot@iu.edu>

Dear Mr. Rouker,

As I have yet to receive a reply, I am once again following up on this matter with you. My next step will be to call your office and to get the national TPUSA organization involved, as I have now been attempting to get a permit to create this mural for a month.

[Quoted text hidden]

**Mike Rouker** <roukerm@bloomington.in.gov>                                         Mon, Aug 23, 2021 at 1:47 PM
To: Kyle Reynolds <kyhreyno@iu.edu>
Cc: Adam Wason <wasona@bloomington.in.gov>, "Morrison, Thomas" <morrisot@iu.edu>, Philippa Guthrie <guthriep@bloomington,in.gov>

This message was sent from a non-IU address. Please exercise caution when clicking links or opening attachments from external sources.

Mr. Reynolds:

The City of Bloomington's Board of Public Works approves the placement of art in the public right of way. The City does not take recommendations for art in its right of way from individuals, and, at this time, the City is not considering adding additional art within its right of way.

[Quoted text hidden]

Michael Rouker
City Attorney
City of Bloomington
(812) 349-3556

CONFIDENTIALITY NOTICE

This transmission (including any attachments) may contain information which is confidential, attorney work product and/or subject to the attorney-client privilege, and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 349-3426, delete the transmission from all forms of electronic or other storage, and destroy all hard copies. Do NOT forward this transmission. Thank you.

**Kyle Reynolds** <kyhreyno@iu.edu>                                                  Mon, Aug 23, 2021 at 2:08 PM
To: Mike Rouker <roukerm@bloomington.in.gov>
Cc: Adam Wason <wasona@bloomington.in.gov>, "Morrison, Thomas" <morrisot@iu.edu>, Philippa Guthrie <guthriep@bloomington.in.gov>

Dear Mr. Rouker,

I would like to point out that the city approved a BLM piece of art only a few months ago, and I and the organizations I represent will be pursuing legal action against the city if this mural doesn't receive approval. As an attorney, I'm sure I don't need to inform you that governmental entities cannot discriminate in the viewpoints they allow to be expressed.
[Quoted text hidden]

Exhibit 1E

53C06-2202-PL-000369

Filed: 2/13/2022 6:03 PM
Clerk
Monroe County, Indiana
Monroe Circuit Court 6



Exhibit 1F

# Board of Public Works Meeting

## September 29, 2020



Exhibit 2A

Topic: Board Of Public Works

Time: Sep 29, 2020 05:30 PM Eastern Time (US and Canada)

Join Zoom Meeting

https://bloomington.zoom.us/j/93517604728?pwd=bDRjRlBYYlBNSUhJTEVKaWxDdkd0dz09

Meeting ID: 935 1760 4728

Passcode: 966548

Dial by your location

+1 929 205 6099 US (New York)

+1 301 715 8592 US (Germantown)

+1 312 626 6799 US (Chicago)

+1 669 900 6833 US (San Jose)

+1 253 215 8782 US (Tacoma)

+1 346 248 7799 US (Houston)

Meeting ID: 935 1760 4728

Passcode: 966548

Find your local number: https://bloomington.zoom.us/u/auC4zG55B

**AGENDA**
**BOARD OF PUBLIC WORKS**
September 29, 2020

A Regular Meeting of the Board of Public Works will be held through Virtual Meeting on Tuesday, September 29, 2020 at 5:30 p.m.

The City will offer virtual options, including <u>CATS</u> public access television (live and tape- delayed), Facebook Live (facebook.com/citybloomington), Zoom or otherwise.  Public comments and questions will be encouraged via <u>bloomington.in.gov</u> rather than in person.

I.     <u>MESSAGES FROM BOARD MEMBERS</u>

II.    <u>PETITIONS & REMONSTRANCES</u>

III.   <u>TITLE VI ENFORCEMENT</u>

IV.   <u>CONSENT AGENDA</u>
1. Approval of Minutes – September 15, 2020
2. Resolution 2020-51: Approve Renewal of  Mobile Vendor in Public Right-of-Way (Sober Joe)
3. Approve Quarterly Staff Report Pursuant to Amended Resolution 2016-02: Staff Level Approval of Standard Development Encroachment Requirements
4. Approve Request for Extension of Temporary One-Lane Closure on Walnut St. and W. 4th Street from Wilhelm Construction ( October 01, 2020- December 12, 2021)
5. Approval of Payroll

V.    <u>NEW BUSINESS</u>
1. Resolution 2020-50: Approve Right-of-Way Encroachment for Banneker Center, Black Lives Matter Street Mural
2. Resolution 2020-48: Approve Order to Vacate Structure at 231 N. Adams
3. Resolution 2020-49: Approve Order to Seal Structure at 231 N. Adams
4. Approve Addendum #2 to Agreement for Consulting Services for the 7th Street Bike Lane Improvements Project with American Structurepoint, Inc.
5. Approve Change Order # 3 for the Winslow-Henderson Path Project
6. Approve Change Orders # 3 and #4 for the 2nd-Bloomfield Multimodal Safety Project
7. Approve Request for Temporary Road Closure on W. 10th Street/Trades District Garage from Garmong Construction ( October 26, 2020 – November 20, 2020)
8. Award Contract for Recover Forward Sidewalk Project

VI.   <u>STAFF REPORTS & OTHER BUSINESS</u>
1. Planning & Transportation Title 12 Updates

VII.   <u>APPROVAL OF CLAIMS</u>

VIII. <u>ADJOURNMENT</u>

Auxiliary aids for people with disabilities are available upon request with adequate notice.
Please call 812-349-3410 or  email public.works@bloomington.in.gov.

The Board of Public Works meeting was held on Tuesday, September 15th, 2020, at 5:30 pm virtually through Zoom with Kyla Cox Deckard presiding.

**REGULAR MEETING OF THE BOARD OF PUBLIC WORKS**

Present:    Kyla Cox Deckard
               Dana Palazzo
               Beth H. Hollingsworth

**ROLL CALL**

City Staff:  Adam Wason – Public Works
           April Rosenberger – Public Works
           Mike Arnold – Housing and Neighborhood Dev.
           Chris Wheeler – City Legal
           Daniel Dixon – City Legal
           Jacqueline Moore – City Legal

None

**MESSAGES FROM BOARD MEMBERS**

None

**PETITIONS & REMONSTRANCES**

1

1. **Approval of Minutes – September 01, 2020**
2. **Approve 2020 Blanket Noise Permit for Parks and Recreation**
3. **Approve Service Agreement between City of Bloomington Street Division and Precision Concrete for Repairing Sidewalks**
4. **Approval of Payroll**

Hollingsworth made a motion to approve the items on the consent agenda. Palazzo seconded the motion. Motion is passed.

Mike Arnold, HAND, presented Resolution 2020-47: Approve Order to Vacate Structure at 1306 W. Kirkwood
See meeting packet for details.

**Board Comments:**
Mike Arnold reminded the Board that there was an Order to Seal on this property previously.  There is an ongoing issue with homeless and vagrants using the structure, so they want to be sure the property is vacant before sealing the property.  Cox Deckard asked about the structure and the safety concerns.  Arnold commented that he understood that there is a lawsuit pending with the property owner.  Daniel Dixon explained legal actions related to the property.  First legal action is that the property is in foreclosure.  Second is that the original property owner is deceased and the current property owner deeded the property to himself fraudently.  Dixon explained that foreclosure has been stalled because of the criminal charges.
Hollingsworth made a motion to approve Resolution 2020-47: Approve Order to Vacate Structure at 1306 W. Kirkwood.
Palazzo confirmed that motion is not to remove the structure. Arnold confirmed that the order is just to seal at this time.  Palazzo seconded the motion. Motion is passed

**NEW BUSINESS**
**Resolution 2020-47: Approve Order to Vacate Structure at 1306 W. Kirkwood**

Adam Wason, Public Works, presented Renewal #1 to Agreement with Republic Services for Municipal Solid Waste Disposal and Single Source Recycling.  Wason reminded the Board that this was brought to them in June as a staff report.  Agreement will lock us in with a rate of no more $27.19 for single source recycling processing for 2022 and 2023.  It's coming to the Board because there is an expected rate increase of 3% for our current rate that will go into effect in 2022. Adam noted that this agreement doesn't preclude us from using other sources if they were to come available.
Palazzo asked about the original contract showing the renewal date through 2024.  Wason commented that we try not extend

**Approve Renewal #1 to Agreement with Republic Services for Municipal Solid Waste Disposal and Single Source Recycling**

2

contracts though election cycles. Additionally, Wason spoke of addressing communication with the community regarding recycling. A lot of communication is through social media, but did point out that there is in-person communication with problem areas. Also, notes are left on containers explaining why recycling is not collected. Cox Deckard commented that it's very costly to the City to have contaminated waste. We all want to recycle as much as we can, but it's important to pay attention to what can and can't be recycled. Wason agreed that clean, dry recycling is ideal. Styrofoam and plastic bags are no longer recyclable, hence part of the reason for the change in the graphic on the carts. Cox Deckard commented that this is not just a local problem, it is a national issue. Hollingsworth asked since implementation of the new bins, is there a reduction of injuries. Wason commented that there is less injury in connection to lifting the bins. There is discussion about the weight limit for the carts.

Emily Ernsberger, HT, asked if we are seeing an increase in solid waste collection since more people are at home, if that is even possible to measure. Wason commented that yes, there were significant increases of about 30% to 40% over last year's numbers, in March, April and May. June and July steadied off a little bit more.

**Board Comments:**
Hollingsworth made a motion to approve Renewal #1 to Agreement with Republic Services for Municipal Solid Waste Disposal and Single Source Recycling. Palazzo seconded. Motion is passed.

**STAFF REPORTS & OTHER BUSINESS**

Wason commented that there are no major staff reports; have major projects going on currently. Mentioned sidewalk work and alleys projects that should kick off in the next several weeks. Wason again thanked all the staff of Public Works for all they do. Hollingsworth asked if there was positive sales for the restaurants on Kirkwood. Wason commented that he didn't know the sales, but that the restaurant owners are very appreciative of what has been done. Wason encouraged visting the local restaurants.

**APPROVAL OF CLAIMS**

Hollingsworth made a motion to approve claims in the amount of $1,384,436.31. Palazzo seconded. Claims are approved.

**ADJOURNMENT**

Cox Deckard called for adjournment. Meeting adjourned at 5:52 pm

3

9/15/2020

Accepted By:


_____
Kyla Cox Deckard, President


_____
Beth H. Hollingsworth, Vice-president


_____
Dana Palazzo, Secretary


Date:                    Attest to:

4



# Board of Public Works
## Staff Report

---

**Project/Event:**  Black Lives Matter Mural - Elm Street - Encroachment

**Petitioner/Representative:**  ESD, Parks Dept, Banneker Community Center Advisory
Council, & Bloomington Arts Commission.

**Staff Representative:**  Sean Starowitz

**Meeting Date:**  September 29, 2020

**Event Date:**  October 17th (Rain date October 24th) 2020

---

**Report:**  The City of Bloomington Economic & Sustainable Development Department, Board of Park Commissioners, Banneker Community Center & Advisory Council, Bloomington Arts Commission, Office of the Mayor, Community Family Resources Department and Bloomington Common Council endorse the painting of a Black Lives Matter mural on Elm Street between W. 7th St. and W 8th St. on October 17th (Rain Date 10/24/2020) from **8**  AM to 8 PM. We are also planning an additional mural somewhere downtown, pending public engagement. This interdepartmental project is requesting the Board of Public Works to permit this use of a public right of way and join in this public display of support for our Black and Brown residents who have been fighting for justice and equality for far too long.

---

**Recommend    X Approval  by** Sean Starowitz

**CITY OF BLOOMINGTON**
**BOARD OF PUBLIC WORKS**
**RESOLUTION 2020-50**

**Encroachment Agreement Regarding the Installation of Public Art**
**on Elm St. between 7th Street and 8th Street**

WHEREAS, the Board of Public Works is empowered by Indiana Code § 36-9-6-2 to supervise city streets; and

WHEREAS, pursuant to IC § 36-9-6-3, the Board of Public Works has custody of and may maintain all real and personal property of the city;

WHEREAS, the City neither desires nor intends to vacate this right of way; and

WHEREAS, the City condemns systemic racism, racial animus, racial bias and all forms of racial inequity; and

WHEREAS, the members of the Banneker Community Center Advisory Council proposed a street mural which would include the painting of the words "Black Lives Matter" on W. 7th Street in front of the Banneker Community Center; and

WHEREAS, the street mural will not prohibit or inhibit pedestrian or vehicular traffic along the right of way; and

WHEREAS, the Bloomington Common Council passed its Resolution 20-16 in support of this proposed street mural on September 23, 2020; and

WHEREAS, the City wishes to authorize the installation of public art which vividly portrays the City's condemnation of racism and inequality that has for far too long acutely affected the City's Black and Brown residents;

NOW, THEREFORE, BE IT RESOLVED THAT:

1. The City approves this effort to demonstrate its animosity to all forms of racism and hereby agrees to allow an encroachment of this public art street mural upon the public right of way at Elm Street between W. 7th Street and 8th Street.

2. No further encroachments may be made onto the right of way without first obtaining the Board of Public Works' approval for any additional encroachment.

3. If at any time it is determined that the right of way should be improved to better serve the public or other public improvements need to be made in the right of way, and the encroaching street mural interferes with the planned public improvements, the City shall provide notice regarding the necessary removal of the encroaching street mural.

ADOPTED THIS _____DAY OF _____, 2020.

BOARD OF PUBLIC WORKS

_____
Kyla Cox Deckard, President

_____
Beth H. Hollingsworth, Vice President

_____
Dana Palazzo, Secretary

53C06-2202-PL-000361
Filed: 2/23/2022 6:03 PM
Clerk
Monroe County, Indiana

Monroe Circuit Court 6

# Board of Public Works Meeting
## April 13, 2021



Exhibit 2B

Topic: Board of Public Works

Time: Apr 13, 2021 05:30 PM Eastern Time (US and Canada)

Join Zoom Meeting

https://bloomington.zoom.us/j/94037482758?pwd=R2EvN2g3amV1U3hLdi9JS3l2UnU3dz09

Meeting ID: 940 3748 2758

Passcode: 589799

Dial by your location

    +1 301 715 8592 US (Washington DC)

    +1 312 626 6799 US (Chicago)

    +1 929 205 6099 US (New York)

    +1 253 215 8782 US (Tacoma)

    +1 346 248 7799 US (Houston)

    +1 669 900 6833 US (San Jose)

Meeting ID: 940 3748 2758

Passcode: 589799

Find your local number: https://bloomington.zoom.us/u/aG057iHfC

**AGENDA**
**BOARD OF PUBLIC WORKS**
**April 13, 2021**

A Regular Meeting of the Board of Public Works will be held through Virtual Meeting on Tuesday, April 13, 2021 at 5:30 p.m.

The City will offer virtual options, including <u>CATS</u> public access television (live and tape- delayed) and Zoom. Public comments and questions will be encouraged via <u>bloomington.in.gov</u> rather than in person.

**I.    <u>MESSAGES FROM BOARD MEMBERS</u>**

**II.    <u>PETITIONS & REMONSTRANCES</u>**

**III.    <u>CONSENT AGENDA</u>**
1.  Approval of Minutes – March 30, 2021
2.  Resolution 2021-07: Mobile Vendor Renewal (Push-Cart) in Public Right-of-Way ( Rasta Pops)
3.  Resolution 2021-08: Mobile Vendor Renewal (Push-Cart) in Public Right-of-Way (Chocolate Moose)
4.  Resolution 2021-10:  6th Street Encroachment- Black Lives Matter Mural
5.  Policy on Conflicts of Interest Related to Deputy Mayor
6.  Approval of Payroll

**IV.    <u>NEW BUSINESS</u>**
1.  Change Order #1 for the Curve Warning Signs Project with Ragle, Inc.
2.  Lane Closures on N Walnut St and Alley Closure request from Goodman Construction
3.  Consulting Services Agreement with Martin Riley, Inc. for Building Design and Site Surveys for New Fire Station
4.  Provider of De-icing Salt, Cargill, Inc.
5.  Provider of Concrete Services, Irving Materials, Inc.

**V.    <u>STAFF REPORTS & OTHER BUSINESS</u>**

**VI.    <u>APPROVAL OF CLAIMS</u>**

**VII.    <u>ADJOURNMENT</u>**

Auxiliary aids for people with disabilities are available upon request with adequate notice.
Please call 812-349-3410 or email public.works@bloomington.in.gov.

The Board of Public Works meeting was held on Tuesday, March 30, 2021, at 5:30 pm virtually through Zoom.   Dana Palazzo presiding.

**REGULAR MEETING OF THE BOARD OF PUBLIC WORKS**

Present:    Dana Palazzo
            Beth H. Hollingsworth
            Kyla Cox Deckard

**ROLL CALL**

City Staff:   Adam Wason – Public Works
             April Rosenberger – Public Works
             Daniel Dixon – City Legal
             Elijah Britton—Bloomington Police Department
             Roy Aten – Engineering
             Michael Stewart-- Engineering
             Jane Kupersmith – Economic and Sustainable Dev.

Beth H. Hollingsworth thanked everyone for keeping the city beautiful and getting all of the potholes filled.  Adam commented the count so far is 2,506 potholes filled from the beginning of the year.

**MESSAGES FROM BOARD MEMBERS**

Daniel Dixon, City Legal, deferred to appellant for state his appeal.

**PETITIONS AND REMONSTRANCES**

**Public Comment**: Anuj Garg stated his case. Officer Elijah Britton explained the sequence of responding to noise complaints and the tickets are rolled-over, meaning they accumulate in cost each time.

**Appeal Noise Citation # 38006 for  524 N. College Ave., Apt 403**

**Board Comments**:  Hollingsworth asked Officer Britton about the noise and how far away he could hear it.  Officer Britton confirmed that he could hear the music from at least 40 feet away. Hollingsworth addressed Mr. Garg regarding his definition of a party.  She stated that his description was more like that of a party instead of just a small gathering.  Cox Deckard commented that it wasn't so much the number of people in one place, but the noise and that is why the City has noise ordinances.

Hollingsworth made a motion to deny the Appeal Noise Citation #

3/30/2021

38006 for 524 N. College Ave., Apt 403. Cox Deckard seconded.
Motion is passed.

Michael Stewart, Engineering, deferred to appellant to state his
case.

**Public Comments**: Caylan Evans, appellant, explained his
appeal. Michael Stewart agreed with the time-line that the
appellant mentioned. He commented on the communications with
appellant up to the issuance of the fine.
Adam Wason, Public Works, asked the appellant if he had ever
reached out to Public Works staff after he received the letter about
sidewalk repair. Mr. Evans responded that he did not. See
meeting packet for details. Wason commented on the efforts of
the City on Title XII, which regulates the use of the right-of-way.
He explained that there are several reasons behind those changes.
Wason explained that staff have put a lot of time and effort into
this item and recommended the fine be upheld.

**Board Comments**: Cox Deckard commented that she appreciated
all the documentation between the appellant and City staff. She
echoed Wason's comments, that right-of-way use and closure is
something the Board hears nearly every meeting. It's not that the
appellant is the first person to violate the ordinance. Typically
when there is a violation, it is brought back into compliance fairly
quickly. She stated that as a board, they consider these types of
issues seriously, coordinating with City staff and City Council to
ensure that sidewalks are pedestrian friendly and accessible to the
community as a whole.

Cox Deckard made a motion to deny the Chapter 12.08 appeal on
right-of-way use for 1205 N. Madison Street. Hollingsworth
seconded. Motion is passed.

**Appeal of Notice of Violation
for Right-of-Way use 1205 N.
Madison (Bloom Design and
Build, LLC.)**

**CONSENT AGENDA**

1. Approval of Minutes – March 16, 2021
2. Quarterly Staff Report Pursuant to Amended Resolution 2016-02:
Staff Level Approval of Standard Development Encroachment
Requirements
3. Right of Entry and License Agreement with City Flats on Walnut
4. Approval of Payroll
Hollingsworth made a motion to approve the consent agenda. Cox
Deckard seconded. Motion is passed.

3/30/2021

Jane Kupersmith, Economic & Sustainable Development presented Resolution 2021-06: Push Cart in Public Right-of-Way (Seedlings). See meeting packet for details.

**Board Comments:** None

Hollingsworth made a motion to approve Resolution 2021-06: Push Cart in Public Right-of-Way (Seedlings). Cox Deckard seconded. Motion is passed.

**NEW BUSINESS**
**Resolution 2021-06:**
**Push Cart in Public Right-of-Way (Seedlings)**

Roy Aten, Engineering, presented Noise Waiver and Night-time work for College Mall Road Repaving Project. See meeting packet for details.

**Board Comments:** Hollingsworth wanted to be certain that the residents had been notified. Wason confirmed coordination with residences and businesses. Cox Deckard commented that generally when crews are working during the day and night, the noisiest work is avoided during the night.

Cox Deckard made a motion to approve Noise Waiver and Night-time work for College Mall Road Repaving Project. Hollingsworth seconded. Motion is passed.

**Noise Waiver and Night-time work for College Mall Road Repaving Project**

Adam Wason, Public Works, presented Wall Construction at BPD on behalf of J.D. Boruff. See meeting packet for details.

**Board Comments:** None

Hollingsworth made a motion to award construction contract to Strauser Construction for Wall Construction at BPD. Cox Deckard seconded. Motion is passed.

**Wall Construction at BPD**

Adam Wason, Public Works, sent condolences to the family of Deputy Driver, with the Monroe County Sheriff's Department, who was killed in the line of duty the previous night.
Wason mentioned the College Mall Road project will piggy-back on the completion of the Moore's Pike and Sare Road projects.

**STAFF REPORTS AND OTHER BUSINESS**

Hollingsworth questioned if the Brian Thunberg ACL repair listed under Animal Shelter was for the person or the dog? Wason confirmed that it was indeed for an animal. Also added that

**CLAIMS**

3/30/2021

Thunberg came to the Shelter to perform the surgeries on site.

Cox Deckard made a motion to approve claims in the amount of
$ 1,157,530.80. Hollingsworth seconded.  Motion is passed.

Palazzo called for adjournment at 6:18 p.m.                    **ADJOURNMENT**

Accepted By:

_____
Dana Palazzo, President


_____
Beth H. Hollingsworth, Vice-President


_____
Kyla Cox Deckard, Secretary

     Date:            Attest to:

3/30/2021



# Board of Public Works
## Staff Report

| | |
|---|---|
| **Project/Event:** | Black Lives Matter Mural - 6th Street - Encroachment |
| **Petitioner/Representative:** | ESD, Parks Dept, Banneker Community Center Advisory Council, & Bloomington Arts Commission. |
| **Staff Representative:** | Sean Starowitz |
| **Meeting Date:** | April 13, 2021 |
| **Event Date:** | April 17, 2021 (Rain date May 1, 2021) |

**Report:**  The City of Bloomington Economic & Sustainable Development Department, Board of Park Commissioners, Banneker Community Center & Advisory Council, Bloomington Arts Commission, Office of the Mayor, Community Family Resources Department and Bloomington Common Council endorse the painting of a Black Lives Matter mural on 6th Street between N. College Ave and N. Walnut Streets on April 17, 2021(Rain Date 5/1/2021) from 6 AM to 8 PM. This interdepartmental project is requesting the Board of Public Works to permit this use of a public right of way and join in this public display of support for our Black and Brown residents who have been fighting for justice and equality for far too long.

This certificate is issued to Eric Pearson as an exemption for Monroe County, IN gathering size limits.

This certificate is valid on 4/17/2021
to allow for a maximum of <u>70</u> people

*Black Lives Matter Mural.

Issued 3/31/2021 by Monroe County Health Department.

Issued by: <u>kh</u>



  

Dear Resident/Business Owner,

The Banneker Community Center Advisory Council along with the City of Bloomington will host the installation of a street mural on April 17th or May 1st (weather permitting) on 6th street between College and Walnut between the hours of 6:00 a.m. and 8:00 p.m. The road closure will begin at 6:00 am and will end at approximately 8:30 pm. As this event may affect your business we wanted to give you time to plan accordingly The sidewalks will remain open, but the street and parking will be unavailable. Approximately 80 participants will be involved throughout the course of the day.

The Board of Public Works will hear this event at the April 13th meeting beginning at 5:30 p.m. via Zoom. You are invited to share your support or concerns at this meeting or prior in writing to the Board of Public Works at public.works@bloomington.in.gov

Plans for this art installation include painting the words "Black Lives Matter" throughout the road in green, red, yellow, and black paint. The City will be working with local Black artists who designed the Elm Street mural to help implement this installation. Differing from Elm Street, this piece will be in plain block letters. Volunteers will be sought to take part in the painting of the mural throughout the day in 45-minute shifts. All participants must wear masks throughout the day and will be screened for COVID-19 symptoms prior to taking part. Paint brushes and other items will be sanitized after each shift and participants will be assigned spaces to work to ensure proper distancing.

Proposed by the Banneker Community Center Advisory Council (BCCAC), the first Black Lives Matter street mural was painted on Elm Street between 7th and 8th streets on October 24th, 2020. Each word features a unique design and volunteers participated in installing the piece during the day. In the original proposal developed throughout the Fall of 2020, the BCCAC sought to create two murals with the second taking place in a downtown location. The Bloomington Common Council passed its Resolution 20-16 in support of this proposed street mural on September 23, 2020.

Any interested volunteers can sign up online at the City of Bloomington,IN-Banneker Community Center website with links also on the Banneker Community Center Facebook page. **If you or your business would like to contribute or table at this event, please contact Erik Pearson at pearsone@bloomington.in.gov.**



**CITY OF BLOOMINGTON**
**BOARD OF PUBLIC WORKS**
**RESOLUTION 2021-10**

**Encroachment Agreement Regarding the Installation of Public Art**
**on 6th St. between N. Walnut Street and N. College Ave**

WHEREAS, the Board of Public Works is empowered by Indiana Code § 36-9-6-2 to supervise city streets; and

WHEREAS, pursuant to IC § 36-9-6-3, the Board of Public Works has custody of and may maintain all real and personal property of the city;

WHEREAS, the City neither desires nor intends to vacate this right of way; and

WHEREAS, the City condemns systemic racism, racial animus, racial bias and all forms of racial inequity; and

WHEREAS, the members of the Banneker Community Center Advisory Council proposed a street mural which would include the painting of the words "Black Lives Matter" on W. 6th Street between N. Walnut Street and N. College Ave; and

WHEREAS, the street mural will not prohibit or inhibit pedestrian or vehicular traffic along the right of way; and

WHEREAS, the Bloomington Common Council passed its Resolution 20-16 in support of this proposed street mural on September 23, 2020; and

WHEREAS, the City wishes to authorize the installation of public art which vividly portrays the City's condemnation of racism and inequality that has for far too long acutely affected the City's Black and Brown residents;

NOW, THEREFORE, BE IT RESOLVED THAT:

1. The City approves this effort to demonstrate its animosity to all forms of racism and hereby agrees to allow an encroachment of this public art street mural upon the public right of way at W 6th Street between N. College Street and N. Walnut Street.

2. No further encroachments may be made onto the right of way without first obtaining the Board of Public Works' approval for any additional encroachment.

3. If at any time it is determined that the right of way should be improved to better serve the public or other public improvements need to be made in the right of way, and the encroaching street mural interferes with the planned public improvements, the City shall provide notice regarding the necessary removal of the encroaching street mural.

ADOPTED THIS _____ DAY OF _____, 2021.

BOARD OF PUBLIC WORKS

_____
Dana Palazzo, President

_____
Beth H. Hollingsworth, Vice President

_____
Kyla Cox Deckard, Secretary

Resolution 2021-10

Filed: 2/23/2022 6:03 PM
Clerk
Monroe County, Indiana
Monroe Circuit Court 6

# Board of Public Works Meeting

# August 03, 2021



The City will offer virtual options, including CATS public access television (live and tape -delayed) and
Zoom by using the following link: https://bloomington.zoom.us/j/91593984181?pwd=SndHUkxHVUdUcUNCc285NWpySjFadz09

Public comments and questions will be encouraged via Zoom or   bloomington.in.gov rather than in person

Exhibit 2C

Topic: Board of Public Works

Time: Aug 3, 2021 05:30 PM Eastern Time (US and Canada)

Join Zoom Meeting

https://bloomington.zoom.us/j/91593984181?pwd=SndHUkxHVUdUcUNCc285NWpySjFadz09

Meeting ID: 915 9398 4181

Passcode: 786539

Dial by your location

    +1 929 205 6099 US (New York)

    +1 301 715 8592 US (Washington DC)

    +1 312 626 6799 US (Chicago)

    +1 669 900 6833 US (San Jose)

    +1 253 215 8782 US (Tacoma)

    +1 346 248 7799 US (Houston)

Meeting ID: 915 9398 4181

Passcode: 786539

Find your local number: https://bloomington.zoom.us/u/acm8FD9MDu

**AGENDA**
**BOARD OF PUBLIC WORKS**
**August 03, 2021**

A Meeting of the Board of Public Work will be held Virtually, Tuesday, August 03, 2020 at 5:30 p.m. via <u>Zoom</u> by using the following
link: <u>https://bloomington.zoom.us/j/91593984181?pwd=SndHUkxHVUdUcUNCc285NWpySjFadz09</u>

The City offers virtual options, including <u>CATS</u> public access television (live and tape- delayed) and <u>Zoom.</u>  Comments and questions will be encouraged via <u>Zoom</u> or <u>bloomington.in.gov</u>

I.   <u>MESSAGES FROM BOARD MEMBERS</u>

II.   <u>PETITIONS & REMONSTRANCES</u>

III.   <u>CONSENT AGENDA</u>
   1.   **Approval of Minutes – July 20, 2021**
   2.   **Resolution 2021-32: Use of Public Right-of-Way for PRIDEfest**
   3.   **Resolution 2021-37: Middle Way House Annual Wrapped in Love Public Art Display**
   4.   **Resolution 2021-38: Indiana University Student Involvement Fair**
   5.   **Resolution 2021-39: Renewal of Mobile Vendor in Public Right-of-Way; Uno Mas Taco Truck**
   6.   **Resolution 2021-40: New Mobile Vendor in Public Right-of-Way; Kona Ice of Brown County**
   7.   **Black Lives Matter Mural – Jordan Avenue Encroachment**
   8.   **Approval of Payroll**

IV.   <u>NEW BUSINESS</u>
   1.   **Change Order #10 for the West 17th Street Reconstruction Project with Reed & Sons**
   2.   **Request from CRG Residential for Dumpster and POD Placement in Right-of-Way at 316. N. Washington (August 03, 2021- August 16,2021)**
   3.   **Agreement with Discount Blinds & Verticals for Replacement of Blinds at Fire Station #2**
   4.   **Agreement with Carpets Plus ColorTile for Replacement of Flooring at Fire Station #2**

V.   <u>STAFF REPORTS & OTHER BUSINESS</u>

VI.   <u>APPROVAL OF CLAIMS</u>

VII.   <u>ADJOURNMENT</u>


Auxiliary aids for people with disabilities are available upon request with adequate notice.
Please call 812-349-3410 or email <u>public.works@bloomington.in.gov</u>.

The Board of Public Works meeting was held on Wednesday, July 20, 2021, at 5:30 pm virtually through Zoom.   Dana Henke presiding.

**REGULAR MEETING OF THE BOARD OF PUBLIC WORKS**

Present:     Dana Henke
             Kyla Cox Deckard

**ROLL CALL**

City Staff:  Adam Wason – Public Works
             Chastina Chipman – Housing & Neighborhood Dev.
             Karina Pazos– Engineering
             Emily Herr -- Engineering
             Russell White – Engineering

**MESSAGES FROM BOARD MEMBERS**

Chastina Chipman, Housing and Neighborhood Development presented Abatement at W. 11th Street.  See meeting packet for details.

**TITLE VI ENFORCEMENT**
**Abatement at W. 11th Street**

**Board Comments**:  None

Cox Deckard made a motion to approve Abatement at W. 11th Street.  Henke seconded.  Henke took a roll call vote.  Cox Deckard voted yes, Henke voted yes.  Motion is passed.

1. Approval of Minutes – July 07, 2021
2. Resolution 2021-28: Use of Public Right-of-Way for 10th Birthday Celebration of New Hope for Families Shelter
3. Resolution 2021-34: Use of Public Right-of-Way for Blue Ridge Neighborhood Picnic
4. Resolution 2021-35: Renewal of Mobile Vendor in Public Right-of-Way; Big Cheeze
5. Resolution 2021-36: Renewal of Mobile Vendor in Public Right-of-Way; Doner Kebab
6. Addendum #1 to Contract with CE Solutions

**CONSENT AGENDA**

07/20/2021

7. Addendum #1 to Contract with New Group
8. Approval of Payroll

**Board Comments:** Adam Wason, Public Works, mentioned the removal of Pridefest from the agenda because of seating issues. Wason said staff from the City are in discussion with Kirkwood businesses and the organizers of Pridefest to provide a solution and Pridefest will be presented at the next meeting.

Cox Deckard made a motion to approve Consent Agenda. Henke seconded. Henke took a roll call vote. Cox Deckard voted yes, Henke voted yes. Motion is passed.

Karina Pazos, Engineering, presented Lane and Sidewalk Closure Requests for the North Lane of Atwater Ave. from Browning Chapman (August 09, 2021 – August 22, 2021).
See meeting packet for details.

**NEW BUSINESS**
**Lane and Sidewalk Closure Requests for the North Lane of Atwater Ave. from Browning Chapman August 09, 2021 – August 22, 2021**

**Board Comments:** Cox Deckard asked to clarify the dates because the dates in the staff report and documents are different. Boston Fields, Browning Chapman, replied that because there were some delays the date was moved to August, but they could certainly start as soon as the board approves the closure.

Cox Deckard made a motion to approve Lane and Sidewalk Closure Requests for the North Lane of Atwater Ave. from Browning Chapman (August 09, 2021 – August 22, 2021). Henke seconded. Henke took a roll call vote. Cox Deckard voted yes, Henke voted yes. Motion is passed.

Emily Herr, Engineering, presented Dedication of Right-of-Way at 1600 W. Fountain. See meeting packet for details.

**Dedication of Right-of-Way at 1600 W. Fountain**

**Board Comments:** None

Cox Deckard made a motion to approve Dedication of Right-of-Way at 1600 W. Fountain. Henke seconded. Henke took a roll call vote. Cox Deckard voted yes, Henke voted yes. Motion is passed.

Russell White, Engineering, Change Orders #1 & #2 for the 14th Street Sidewalk Project. See meeting packet for details.

**Change Orders #1 & #2 for the 14th Street Sidewalk Project**

**Board Comments:** None

07/20/2021

Cox Deckard made a motion to approve Change Orders #1 & #2 for the 14th Street Sidewalk Project. Henke seconded. Henke took a roll call vote. Cox Deckard voted yes, Henke voted yes. Motion is passed.

Adam Wason, Public Works, on behalf of Michael Large, presented Change Order #1 to the Recover Forward 6th Street Sidewalk Project with Rivertown Construction. See meeting packet for details.

**Change Order #1 to the Recover Forward 6th Street Sidewalk Project with Rivertown Construction**

**Board Comments:** None

Cox Deckard made a motion to approve Change Order #1 to the Recover Forward 6th Street Sidewalk Project with Rivertown Construction. Henke seconded. Henke took a roll call vote. Cox Deckard voted yes, Henke voted yes. Motion is passed.

Wason again mentioned the removal of Pridefest from the agenda. Followed up to say the expectation of Pridefest to remove all of the outdoor seating on Kirkwood was not realized. City staff is working with Pridefest, Kirkwood restaurants, and the Kirkwood Community Association to come up with a solution.

**STAFF REPORTS AND OTHER BUSINESS**

Cox Deckard made a motion to approve claims in the amount of $1,685,956.99. Henke seconded. Henke took a roll call vote. Cox Deckard voted yes, Henke voted yes. Motion is passed.

**CLAIMS**

Henke called for adjournment at 5:50 p.m.

**ADJOURNMENT**

Accepted By:

_____
Dana Henke, President

_____
Beth H. Hollingsworth, Vice-President

_____
Kyla Cox Deckard, Secretary

Date: _____     Attest to: _____

07/20/2021



**Board of Public Works**
**Staff Report**

---

**Project/Event:**      Wrapped in Love

**Petitioner/Representative:** Middle Way House

**Staff Representative:**   April Rosenberger

**Meeting Date:** August 03, 2021

---

Middle Way House is once again requesting to utilize downtown trees and lamp posts for their "Wrapped in Love" event. Lamp posts around the square and Trees in the downtown will be wrapped in knitted textiles. Businesses and individuals have been asked to sponsor a tree, and sponsorship funds will be used towards the cost of materials with the proceeds going to the Middle Way cause.

The event would begin on September 25, 2021 and end on March 01, 2022.



**CITY OF BLOOMINGTON**

## SPECIAL EVENT APPLICATION

**City of Bloomington**
**Department of Economic and Sustainable Development**
**401 N. Morton Street, Suite 150**
**Bloomington, Indiana 47404**
**812-349-3418**
**Department of Public Works**
**812-349-3410**

### 1. Applicant Information

| | |
|---|---|
| Contact Name: | Madeline Plant |
| Contact Phone: | (812)333-7404     Mobile Phone: (812) 244-3556 |
| Title/Position: | Director of Development |
| Organization: | Middle Way House, Inc. |
| Address: | 338 S. Washington St. |
| City, State, Zip: | Bloomington, IN 47401 |
| Contact E-Mail Address: | development@middlewayhouse.org |
| Organization E-Mail and URL: | www.middlewayhouse.org |
| Org Phone No: | (812)333-7404     Fax No: (812)323-9063 |

### 2. Any Key Partners Involved (including Food Vendors if applicable)

| | |
|---|---|
| Organization Name: | n/a |
| Address: | |
| City, State, Zip: | |
| Contact E-Mail Address: | |
| Phone Number: | Mobile Phone: |

| | |
|---|---|
| Organization Name: | |
| Address: | |
| City, State, Zip: | |
| E-Mail Address: | |
| Phone Number: | Mobile Phone: |

| | |
|---|---|
| Organization Name: | |
| Address: | |
| City, State, Zip: | |
| E-Mail Address: | |
| Phone Number: | Mobile Phone: |

## 3. Event Information

Type of Event
☐Metered Parking Space(s) ☐Run/Walk ☐ Festival ☐ Block Party
☐ Parade ☑ Other (Explain below in Description of Event)

Date(s) of Event:
Middle Way House's annual Wrapped in Love public art display will begin Oct. 1st, 2021 and end March 1, 2022.

Time of Event:
Date: 9/25/21   Start: 10 AM   Date: 9/25/21 End: 10 AM

Setup/Teardown time Needed
Date: 3/1/22   Start: 9 AM   Date: 3/1/22 End: 2 PM

Calendar Day of Week:
Yarn wrapping day: Saturday

Description of Event:
2021-2022 Wrapped in Love:

We will be wrapping trees in downtown Bloomington with tree sweaters for our public art display. We would also like to wrap lamp posts around the Square in yarn to tie in to our event.

List of Street Closures (If applicable)
n/a

Expected Number of Participants:
15 volunteers

Expected # of vehicles (Use of Parking Spaces to close):
n/a

## 4. IF YOUR EVENT IS A RUN/WALK/PARADE, YOU ARE REQUIRED TO SECURE AND ATTACHED THE FOLLOWING: *Moving Events – Use and/or Closure of City Streets/Sidewalks*

- ❑ A map of the proposed rights-of-way closure or route in its entirety (streets shall be properly labeled and identified)
  - The starting point shall be clearly marked
  - The ending point shall be clearly marked
  - The number of lanes to be restricted on each road shall be clearly marked
  - Each intersection along the route shall be clearly identified
  - A notation of how each intersection is to be blocked shall be specifically noted at each intersection (ie: Type 3 barricades and/or law enforcement); and
  - The location of any staging area(s) for the rights-of-way closure and how much space the staging area(s) shall utilize
- ❑ Notification to businesses /residents that will be impacted by event of the day the application will be heard by Board of Public Works (Example attached)
- ❑ Using a City park or trail? Parks & Recreation Department Approved Special Use Permit   ❑Not applicable
- ❑ Certificate of Liability Insurance – Proof of insurance listing the City of Bloomington as additional insured for an amount no less than $1,000,000 per occurrence and $2,000,000 in the aggregate. DEADLINE: To Public Works no later than five days before event.
- ❑ A properly executed Maintenance of Traffic Plan
  *Determine if No Parking Signs will be required       * Determine if Barricades will be required
- ❑ For every 500 attendees who will be present at your event at any one time, you must hire one uniformed off-duty Indiana Certified Police Officer as security (however, the City reserves the right to request one officer be present for every 250 attendees, depending on the nature of the particular event)
- ❑ Secured a Parade Permit from Bloomington Police Department ❑   Not applicable
- ❑ Noise Permit application       ❑   Not applicable
- ❑ Waste and Recycling Plan if more than 100 participates (template attached)

## 5. If YOUR EVENT IS A FESTIVAL/SPECIAL COMMUNITY EVENT YOU ARE REQUIRED TO SECURE AND ATTACH, AND SUBMIT THE FOLLOWING:
*Stationary Events – Closure of Streets/Sidewalks/Use of Metered Parking*

- ❑ A map of the proposed rights-of-way closure in its entirety (streets shall be properly labeled and identified) The starting point shall be clearly marked
  - The ending point shall be clearly marked
  - The number of lanes to be restricted on each road shall be clearly marked
  - Each intersection along the route shall be clearly identified
  - A notation of how each intersection is to be blocked shall be specifically noted at each intersection (ie: type 3 barricades and/or law enforcement); and
  - The location of any staging area(s) for the rights-of-way closure and how much space the staging area(s) shall utilize
- ❑ Notification to business/residents who will be impacted by event of the day the application will be heard by Board of Public Works (Example attached)
- ❑ Using a City park or trail? Parks & Recreation Department Approved Special Use Permit   ❑   Not applicable
- ❑ A properly executed Maintenance of Traffic Plan
  *Determine if No Parking Signs will be required       * Determine if Barricades will be required
- ❑ For larger events, you may be required to submit an Emergency Management Plan for review by the Bloomington Fire and Police Departments
- ❑ Noise Permit application       ❑ Not applicable
- ❑ Beer & Wine Permit       ❑ Not applicable

❑   Certificate of Liability Insurance listing the City of Bloomington as additional insured.  For an amount not less than $1,000,000 per occurrence and $2,000,000 in the aggregate.  **DEADLINE**:  To Public Works no later than five days before event.

❑   For every 500 attendees who will be present at your event at any one time, you must hire one uniformed off-duty Indiana Certified Police Officer as security (however, the City reserves the right to request one officer be present for every 250 attendees, depending on the nature of the particular event)

❑   If Food Vendors are part of Festival (Monroe County Health Department Licenses & Fire Inspection)

❑   Waste and Recycling Plan if more than 100 participates (template attached)

## 6.
## CHECKLIST

❑   Determine what type of Event

❑   Complete application with attachment
   ❑ Detailed Map
   ❑ Proof of notification to businesses/residents (copy of letter/flyer/other)
   ❑ Maintenance of Traffic Plan
   ❑ Noise Permit Application (if applicable)
   ❑ Certificate of Liability Insurance
   ❑ Secured a Parade Permit from Bloomington Police Department (if applicable)
   ❑ Beer and Wine Permit (if applicable)Waste and Recycling Plan (if applicable)
   ❑ Waste and Recycling Plan (if applicable)

❑   Date Application will be heard by Board of Public Works (contact ESD at 812-349-3418 for date)

❑   Approved Parks Special Use Permit (if using a City Park)

❑   If using food vendors assure proper paperwork in order (Monroe County Health Department Licenses & Fire Inspection)

❑   No Parking Signs
   ❑ Board of Public Works approved events are provided by Department of Public Works (DPW)

   ❑ Contacted DPW at 812-349-3410 to request and schedule No Parking Signs

**NOTE: The City of Bloomington reserves the right to cancel any event at any time should such event begin to threaten public safety or if an emergency necessitates cancellation.**

**Amusement and Entertainment Permits: The Indiana Department of Homeland Security requires that certain events be inspected by a representative from the Department of Homeland Security. Amusement and Entertainment permits are required for events at a variety of locations and venues. Some of the most common kinds of places that require amusement entertainment permits are places where the following kinds of events occur: concerts and other shows, amusement rides, movies, dances, and bowling. It is your responsibility to contact the Department of Homeland Security to see if your event requires an Amusement and Entertainment Permit and an inspection. The Department of Homeland Security can be reached at (317)232-2222 or online at https://www.in.gov/dhs/2795.htm.**

**For City Of Bloomington Use Only**

Date Received:    Received By:                                    Date Approved:    Approved By:
                  Economic & Sustainable Development
                  Bloomington Police
                  Bloomington Fire
                  Planning & Transportation
                  Transit
                  Public Works
                  Board of Public Works





# Wrap

# Sp

## This annual public art display raises fun

### community about our services and

**1.** ## Gold Leaf: $2,500+

· Framed photo of tree sweater with caption for y

· Tree sweater (with input on theme) including sig
tree for the duration of display

· Inclusion of a quote from your organization's Cl
release announcing the Wrapped in Love art disp
Yarn-Cutting celebration

· Personal description on our "Friends and Partne
web page; including your logo

· Recognition in all Wrapped in Love social medi
and in all printed promotional materials

**CITY OF BLOOMINGTON**
**BOARD OF PUBLIC WORKS**
**RESOLUTION 2021-37**

**Wrapped In Love**

WHEREAS, the City of Bloomington Board of Public Works (hereinafter "City") has authority pursuant to IC 36-9-2-5 to establish, vacate, maintain, and operate public ways, including sidewalks; and,

WHEREAS, Middle Way House, Inc., a member of the Committee of the Non-Profit Alliance has put a project together called "Wrapped in Love"; and

WHEREAS, the main components of this project is to allow fabric artists to adopt approximately 70 trees in the downtown public right of way and create a fabric in which to wrap the tree and to wrap approximately 30 lamp posts around the courthouse square in yarn to tie into the fabric wrapped around the trees; and,

WHEREAS, October is Domestic Violence Awareness Month, and the project will be a fundraiser for Middle Way House to heal a victim of abuse; and,

WHEREAS, downtown businesses are supportive of the project and are willing for the trees adjacent to their buildings be temporarily wrapped; and,

WHEREAS, the Board of Public Works agrees that this project to raise awareness and funding for violence victim services is important to the community and an opportunity to display public art; and,

WHEREAS, Middle Way House, Inc., has agreed to provide the City with a Certificate of Insurance naming the City of Bloomington as additionally insured.

NOW, THEREFORE, BE IT RESOLVED, that the City approves the event herein described, provided:

1. Trees to be wrapped will be identified by the City of Bloomington Urban Forrester.

2. No staples, nails or screws may be used to attach the textiles to the trees.

3. Wraps will be maintained and kept in an attractive manner.

4. If at any time it is determined that any of the wraps become unsafe, ugly or a nuisance to the general public, then the Sponsor shall move said encroachment(s) upon notification by City, without compensation by City.

Resolution 2021-37

5. The City of Bloomington will not be responsible for any damages or vandalism to the wraps.

6. Recognition of sponsors may be attached to the wraps but may not include logos or pictures and may not be larger than eight and one/half by eleven inches (8 ½ x 11") in size.

7. Wraps may be installed around trees and lamp posts beginning on October 1, 2021, and must be removed from the trees by March 1, 2022.

8. _____, by signing this agreement, represents that she/he has been fully empowered by proper action of the entity to enter into the agreement and has authority to do so.

9. In consideration for the use of the City's property and to the fullest extent permitted by law, Middle Way House, Inc., for itself, its officers, directors, agents, employees, members, successors and assigns, does hereby indemnify and hold harmless the City of Bloomington, the Board, and the offices, agents and employees of the City and the Board from any and all claims, demands, damages, costs, expenses or other liability arising out of bodily injury or property damage (collectively "Claims") which may occur as a result of the use of said property, including, but not limited to, any claim or claims brought by third parties, whether or not sounding in tort or contract.

ACCEPTED AND AGREED TO:

BOARD OF PUBLIC WORKS:                         MIDDLE WAY HOUSE, INC.

_____          _____
Dana Henke, President                                      Signature

_____          _____
Beth H. Hollingsworth, Vice President              Printed Name

_____          _____
Kyla Cox Deckard,  Secretary                         Title

Date: _____          Date: _____

Resolution 2021-37



# Board of Public Works
# **Staff Report**

**Project/Event:** Student Involvement Center Fair

**Staff Representative:** April Rosenberger

**Petitioner/Representative:** Alison Miron

**Date of Event:** August 26, 2021

**Date of Meeting:** August 3, 2021

**Report:** Student Involvement Center, Division of Student Affairs IU, would like to close 7th Street between Woodlawn and Indiana on August 26, 2020 from 7:00 a.m. until 7:00 p.m. for the Student Involvement Fair as they have done in the past. The Student Involvement Fair is an annual event that provides students the opportunity to meet with and learn about ways to get involved on campus. The Student Involvement Fair will feature over 300 student organizations in Dunn Meadow, as well as food and a hot air balloon on 7th Street. The Student Involvement Fair is free and open to all.



**JOHN HAMILTON
MAYOR**

**CITY OF BLOOMINGTON**

401 N Morton St Suite 150
PO Box 100
Bloomington IN 47402

DEPARTMENT OF PUBLIC WORKS
DEPARTMENT OF ECONOMIC
& SUSTAINABLE DEVELOPMENT

ESD 812.349.3418
PW 812.349.3410

Greetings from the City of Bloomington!

This application is for approval from the Board of Public Works for Temporary Special Events for the use of public rights of way owned by the City of Bloomington. To assure timely approval by the Board of Public Works to your application we ask that you notify us 3 months in advance.

Applications will not be considered unless all relevant portions of the application have been completed in their entirety. Once a completed application is submitted to the City it will be reviewed by City Staff and will then go before the Board of Public Works for consideration. Once approved by the Board of Public Works, the City retains the right to revoke permission if event becomes a public safety concern.

The Board of Public Works has the sole discretion as to whether or not a special approval shall be granted. If the Board of Public Works issues a special approval for use of public right-of-way the Board may prescribe any reasonable conditions or requirements it deems necessary to minimize the adverse effects upon the Bloomington community, surrounding neighborhoods, or emergency service providers.

If the Board of Public Works issues the special approval, the permit holder shall still abide by all other city, county, state and federal laws.

The City of Bloomington
Department of Economic and Sustainable Development



# SPECIAL EVENT APPLICATION

**CITY OF BLOOMINGTON**

**City of Bloomington**
**Department of Economic and Sustainable Development**
**401 N. Morton Street, Suite 150**
**Bloomington, Indiana 47404**
**812-349-3418**
**Department of Public Works**
**812-349-3410**

## 1. Applicant Information

| | |
|---|---|
| Contact Name: | Alison Miran |
| Contact Phone: | 812-855-8156 | Mobile Phone: 928-419-8782 |
| Title/Position: | Student Organization Coordinator |
| Organization: | Student Involvement Center, Division of Student Affairs IU |
| Address: | 900 E. Seventh st. |
| City, State, Zip: | Bloomington, IN 47403 |
| Contact E-Mail Address: | alimiran@iu.edu |
| Organization E-Mail and URL: | sile@indiana.edu, studentaffairs.indiana.edu |
| Org Phone No: | 812-855-9682 | Fax No: 812-855-8947 |

## 2. Any Key Partners Involved (including Food Vendors if applicable)

| | |
|---|---|
| Organization Name: | Big Cheeze |
| Address: | E. Kirkwood Ave |
| City, State, Zip: | Bloomington, IN 47705 |
| Contact E-Mail Address: | contactus@thebigcheeze.com |
| Phone Number: | 812-345-0214 | Mobile Phone: |

| | |
|---|---|
| Organization Name: | Kona Ice |
| Address: | |
| City, State, Zip: | Martinsville, IN 46151 |
| E-Mail Address: | wstohler@kona-ice.com |
| Phone Number: | 317 363 7810 | Mobile Phone: |

| | |
|---|---|
| Organization Name: | La Pobana |
| Address: | 922 E Atwater 900 S. Walnut St. |
| City, State, Zip: | Bloomington, IN 47402 |
| E-Mail Address: | lapobana922@gmail.com |
| Phone Number: | 812-219-8997 | Mobile Phone: |

*All food trucks not confirmed but will be working through IU Dining

## 3. Event Information

| | |
|---|---|
| Type of Event | ☐ Metered Parking Space(s)  ☐ Run/Walk  ☒ Festival  ☐ Block Party<br>☐ Parade  ☒ Other (Explain below in Description of Event) |
| Date(s) of Event: | Thursday<br>August 26ᵀᴴ, Friday August 27ᵀᴴ (if rain) |
| Time of Event: | Date: Aug 26ᵀᴴ Start: 4:00PM  Date: Aug 26 End: 7:00PM |
| Setup/Teardown time Needed | Date: Aug 26ᵀᴴ Start: 7:00 am  Date:  End: |
| Calendar Day of Week: | Thursday |
| Description of Event: | Student involvement fair takes place on Dunn Meadow and is a large event to help students get connected to involvement opportunities. There will be about 300 student organizations/departments along with food trucks and a hot air balloon. |
| List of Street Closures (If applicable) | Seventh Street between Indiana and Woodlawn |
| Expected Number of Participants: | 2,000 |

| Expected # of vehicles (Use of Parking Spaces to close): | N/A |
|---|---|

**4. IF YOUR EVENT IS A RUN/WALK/PARADE, YOU ARE REQUIRED TO SECURE AND ATTACHED THE FOLLOWING:** *Moving Events – Use and/or Closure of City Streets/Sidewalks*

| | |
|---|---|
| ❑ | A map of the proposed rights-of-way closure or route in its entirety (streets shall be properly labeled and identified)<br>• The starting point shall be clearly marked<br>• The ending point shall be clearly marked<br>• The number of lanes to be restricted on each road shall be clearly marked<br>• Each intersection along the route shall be clearly identified<br>• A notation of how each intersection is to be blocked shall be specifically noted at each intersection (ie: Type 3 barricades and/or law enforcement); and<br>• The location of any staging area(s) for the rights-of-way closure and how much space the staging area(s) shall utilize |
| ❑ | Notification to businesses /residents that will be impacted by event of the day the application will be heard by Board of Public Works (Example attached) |
| ❑ | Using a City park or trail? Parks & Recreation Department Approved Special Use Permit ❑Not applicable |
| ❑ | Certificate of Liability Insurance – Proof of Insurance listing the City of Bloomington as additional insured for an amount no less than $1,000,000 per occurrence and $2,000,000 in the aggregate. DEADLINE: To Public Works no later than five days before event. |
| ❑ | A properly executed Maintenance of Traffic Plan<br>*Determine if No Parking Signs will be required     * Determine if Barricades will be required |
| ❑ | For every 500 attendees who will be present at your event at any one time, you must hire one uniformed off-duty Indiana Certified Police Officer as security (however, the City reserves the right to request one officer be present for every 250 attendees, depending on the nature of the particular event) |
| ❑ | Secured a Parade Permit from Bloomington Police Department ❑    Not applicable |
| ❑ | Noise Permit application ❑    Not applicable |
| ❑ | Waste and Recycling Plan if more than 100 participates (template attached) |

**5. IF YOUR EVENT IS A FESTIVAL/SPECIAL COMMUNITY EVENT YOU ARE REQUIRED TO SECURE AND ATTACH, AND SUBMIT THE FOLLOWING:**

*Stationary Events – Closure of Streets/Sidewalks/Use of Metered Parking*

| | |
|---|---|
| ☒ | A map of the proposed rights-of-way closure in its entirety (streets shall be properly labeled and identified)<br>The starting point shall be clearly marked<br>• The ending point shall be clearly marked<br>• The number of lanes to be restricted on each road shall be clearly marked<br>• Each intersection along the route shall be clearly identified<br>• A notation of how each intersection is to be blocked shall be specifically noted at each intersection (ie: type 3 barricades and/or law enforcement); and<br>• The location of any staging area(s) for the rights-of-way closure and how much space the staging area(s) shall utilize |
| ☒ | Notification to business/residents who will be impacted by event of the day the application will be heard by Board of Public Works (Example attached) |
| ❑ | Using a City park or trail? Parks & Recreation Department Approved Special Use Permit ☒    Not applicable |
| ☒ | A properly executed Maintenance of Traffic Plan<br>*Determine if No Parking Signs will be required     * Determine if Barricades will be required |
| ❑ | For larger events, you may be required to submit an Emergency Management Plan for review by the Bloomington Fire and Police Departments |
| ❑ | Noise Permit application ☒ Not applicable |
| ❑ | Beer & Wine Permit ☒ Not applicable |

| | |
|---|---|
| ❑ | Certificate of Liability Insurance listing the City of Bloomington as additional insured.  For an amount not less than $1,000,000 per occurrence and $2,000,000 in the aggregate.  **DEADLINE**:  To Public Works no later than five days before event. |
| ❑ | For every 500 attendees who will be present at your event at any one time, you must hire one uniformed off-duty Indiana Certified Police Officer as security (however, the City reserves the right to request one officer be present for every 250 attendees, depending on the nature of the particular event) |
| ❑ | If Food Vendors are part of Festival (Monroe County Health Department Licenses & Fire Inspection) |
| ❑ | Waste and Recycling Plan if more than 100 participates (template attached) |

**6.**
**CHECKLIST**

| | |
|---|---|
| ☒ | Determine what type of Event |
| ❑ | Complete application with attachment <br> ❑ Detailed Map <br> ❑ Proof of notification to businesses/residents (copy of letter/flyer/other) <br> ❑ Maintenance of Traffic Plan <br> ❑ Noise Permit Application (if applicable) <br> ❑ Certificate of Liability Insurance <br> ❑ Secured a Parade Permit from Bloomington Police Department (if applicable) <br> ❑ Beer and Wine Permit (if applicable)Waste and Recycling Plan (if applicable) <br> ❑ Waste and Recycling Plan (if applicable) |
| ❑ | Date Application will be heard by Board of Public Works (contact ESD at 812-349-3418 for date) |
| ❑ | Approved Parks Special Use Permit (if using a City Park) |
| ❑ | If using food vendors assure proper paperwork in order (Monroe County Health Department Licenses & Fire Inspection) |
| ❑ | No Parking Signs <br> ❑   Board of Public Works approved events are provided by Department of Public Works (DPW) <br><br> ❑   Contacted DPW at 812-349-3410 to request and schedule No Parking Signs |

**NOTE: The City of Bloomington reserves the right to cancel any event at any time should such event begin to threaten public safety or if an emergency necessitates cancellation.**

**Amusement and Entertainment Permits: The Indiana Department of Homeland Security requires that certain events be inspected by a representative from the Department of Homeland Security. Amusement and Entertainment permits are required for events at a variety of locations and venues. Some of the most common kinds of places that require amusement entertainment permits are places where the following kinds of events occur: concerts and other shows, amusement rides, movies, dances, and bowling. It is your responsibility to contact the Department of Homeland Security to see if your event requires an Amusement and Entertainment Permit and an inspection. The Department of Homeland Security can be reached at (317)232-2222 or online at https://www.in.gov/dhs/2795.htm.**

## For City Of Bloomington Use Only

| Date Received: | Received By: | Date Approved: | Approved By: |
|---|---|---|---|
| | Economic & Sustainable Development | | |
| | Bloomington Police | | |
| | Bloomington Fire | | |
| | Planning & Transportation | | |
| | Transit | | |
| | Public Works | | |
| | Board of Public Works | | |

# Old Crescent Insurance Company / Indiana University

## Certificate of Insurance

**Insured**

**The Trustees of Indiana University**
c/o INLOCC
2805 E. 10th St, Rm 110
Bloomington IN 47408

Should any of the below described policies be cancelled before the expiration date thereof the issuing company and/or The Trustees of Indiana University will endeavor to mail 30 days written notice to the certificate holder named below, but failure to do so shall impose no obligation or liability of any kind upon the company or the Trustees of Indiana University, their agents or representatives.

07/30/2021   Certificate 6990

This certificate is issued as matter of information, only, and conveys no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below.

### Insurers Affording Coverage

Insurer A: Old Crescent Insurance Company
Insurer B: Travelers
Insurer C: Star Insurance Company
Insurer D: Ironshore Indemnity Inc
Insurer E: United Educators

Insurer F: XL Specialty Ins. Co.
Insurer G: Columbia Casualty Co.
Insurer H: Ace American Ins. Co.
Insurer I: Allied World Ass. Co.
Insurer J: Lexington Ins. Co.

The policies of insurance listed below have been issued to the insured named above for the policy period indicated, notwithstanding any requirement, term or condition of any contract or other document with respect to which this certificate may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of such policies. Aggregate limits shown may have been reduced by paid claims.

| Insr Ltr | Type of Insurance | Policy Number | Policy Dates | Limits | |
|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** Commercial General Liability – Occurrence including Contractual Excess of $100,000 retention Includes coverage for Professional Liability excluding Medical Malpractice | GLEx-1r | 02/01/2021 – 02/01/2022 | Each Occurrence | $2,000,000 |
| | | | | Fire Damage | $2,000,000 |
| | | | | Personal & Adv Injury | $2,000,000 |
| | | | | General Aggregate | $2,000,000 |
| | | | | Products/Comp Ops | $2,000,000 |
| | | | | Liquor Liability | $2,000,000 |
| A | **VEHICLE LIABILITY** All licensed vehicles owned, leased, rented by or for, or driven on behalf of Indiana University (Excess of $100,000 retention) | AEx-1r | 02/01/2021 – 02/01/2022 | Combined Single Limit | $2,000,000 |
| H | **FOREIGN LIABILITY** (GL & Auto) | PHFD38513813-007 | 02/01/2021 – 02/01/2022 | Each Occurrence | $1,000,000 |
| E | **EXCESS LIABILITY** Layer 1 | G7467K | 02/01/2021 – 02/01/2022 | Aggregate | $30,000,000 |
| I | Layer 2 | 03127174 | 02/01/2021 – 02/01/2022 | Aggregate | $10,000,000 |
| J | Layer 3 | 023627600 | 02/01/2021 – 02/01/2022 | Aggregate | $10,000,000 |
| C | **WORKERS COMPENSATION & EMPLOYERS LIABILITY** (excess of $850,000/claim retention | WCE-0937565-20 | 02/01/2021 – 02/01/2022 | Each Occurrence | Statutory + $1M |
| | | | | Employers Liability | $1,000,000 |
| A | **PROPERTY** (Incl Boiler, Flood, Earthquake) Sub-limits may apply. Excess of $100,000 retention. | ARP-1r | 02/01/2021 – 02/01/2022 | Each Occurrence | $500,000 |
| B | **EXCESS PROPERTY** | KTK-CMB-5647P70-9-21 | 02/01/2021 – 02/01/2022 | Each Occurrence | $1 billion |
| F | **FINE ART** (pro rata: 60% share) | UMA0010548SP21A | 02/01/2021 – 02/01/2022 | Each Occurrence | $360 million |
| D | **FINE ART** (pro rata: 40% share) | HTB-001340-006 | 02/01/2021 – 02/01/2022 | Each Occurrence | $240 million |
| A | **MEDICAL MALPRACTICE** (coverage subject to Indiana statutes) Includes $1 million out-of-state coverage. This includes participation in the Indiana Patient Compensation Fund with current statutory limits. | HL-1r | 02/01/2021 – 02/01/2022 | Statutory | $500,000 |
| G | **EXCESS MEDICAL MALPRACTICE** (out-of-state, only) | HMC 1064386826 | 02/01/2021 – 02/01/2022 | Aggregate | $2,000,000 |

Description of operations/locations/vehicles/exclusions added by endorsement/Special Provisions:

To provide proof of various insurance coverages by The Trustees of Indiana University for the Student Involvement Fair Annual Event. 7th street will be shut down on the date shown below.

| Certificate Holder: | Authorized signature |
|---|---|
| Board of Public Works Department 401 N. Morton St. #120 BLOOMINGTON IN 47404 | Approved by: *Kutina L. England* |
| | The signer of this document is authorized to represent the coverages of the Old Crescent Insurance Company. In addition, the signer is authorized to make representations of the other coverages outlined on this certificate of insurance based on policy information on file at the Indiana University Office of Insurance, Loss Control and Claims. Certificate of insurance for the other insurance companies indicated on this certificate may be obtained, if necessary. |
| | Effective dates: 08/26/2021 — 08/26/2021 |



**BOARD OF PUBLIC WORKS**
**RESOLUTION 2021-38**

**STUDENT INVOLVEMENT FAIR**

WHEREAS, the Board of Public Works is empowered by I.C. 36-9-6-2 to supervise city streets; and

WHEREAS, Student Involvement Center, Division of Student Affairs IU, has requested use of city streets to conduct a student involvement fair; and

WHEREAS, Student Involvement Center, Division of Student Affairs IU, has agreed to provide the City with a Certificate of Insurance naming the City of Bloomington as additionally insured.

**NOW, THEREFORE, BE IT RESOLVED** that the City of Bloomington approves the event herein described, provided that:

1. The City of Bloomington Board of Public Works agrees that all or a portion of the following City streets may be utilized:  E. 7th Street between N. Indiana Avenue and N. Woodlawn Avenue.

2. The street closures outlined above are for the purposes of allowing IU Student Involvement Center to provide an event of high quality that is mutually beneficial to participants and the community on Thursday, August 26th (rain date August 27th).

3. Student Involvement Center, Division of Student Affairs IU shall work with City of Bloomington Parking Enforcement regarding a requested closure of any parking spaces. Parking Enforcement shall post "No Parking" signs at appropriate parking spaces at least 24 hours in advance of their closure.

4. Student Involvement Center, Division of Student Affairs IU, shall be responsible for developing a Traffic Plan to be approved by the Planning and Transportation Department. Student Involvement Center, Division of Student Affairs IU, shall obtain, and place at Student Involvement Center, Division of Student Affairs IU's, own expense, any security measures which are deemed prudent and necessary by the Police Department which may include, but are not limited to: anti-vehicle barriers for protection; pedestrian barriers; and other engineering controls or personnel as deemed appropriate. IU Student Involvement Center agrees to close the streets not before 7:00 a.m. on Thursday, August 26, 2021 and to remove barricades and signage by 7:00 p.m. on Thursday, August 26, 2021.  Rain Date set for Friday, August 27, 2021.

RESOLUTION 2021-38

5. Student Involvement Center, Division of Student Affairs IU, shall be responsible for obtaining any and all required permits as well as being responsible for all legal and financial expenditures.

6. Student Involvement Center, Division of Student Affairs IU, will be responsible for removing all trash, picking up litter including cigarette butts from the street and sidewalks within these blocks, cleaning any grease or other food products from the pavement and sidewalks, and removing any signs posted as part of the event. Cleanup shall be completed by 7:00 p.m. on Thursday, August 26, 2021.

7. By granting permission to utilize City property to facilitate this activity, the Board of Works also waives the City Noise Ordinance in accordance with Section 14.09.070 of the Bloomington Municipal Code, and therefore amplified sound and music may be played during the hours of the event.

8. The Board of Public Works herein declares the above-described an approved event to be a Special Event for purposes of Chapters 4.16, 4.28, and 4.30 of the Bloomington Municipal Code.

9. Student Involvement Center, Division of Student Affairs IU, shall be responsible for notifying the general public, public transit and public safety agencies of the street closing in advance by notice at least 48 hours in advance.

10. In consideration for the use of the City's property and to the fullest extent permitted by law, Student Involvement Center, Division of Student Affairs IU, for itself, its officers, directors, agents, employees, members, successors and assigns, does hereby indemnify and hold harmless the City of Bloomington, the Board, and the offices, agents and employees of the City and the Board from any and all claims, demands, damages, costs, expenses or other liability arising out of bodily injury or property damage (collectively "Claims") which may occur as a result of the use of said property, including, but not limited to, any claim or claims brought by third parties, whether or not sounding in tort or contract.

11. _____, by signing this agreement, represents that he/she has been fully empowered by proper action of the entity to enter into the agreement and has authority to do so.

RESOLUTION 2021-38

ADOPTED THIS 3[th] DAY OF AUGUST, 2021.

**BOARD OF PUBLIC WORKS:**              **IU STUDENT INVOLVEMENT CENTER
                                        REPRESENTATIVE:**

_____        _____
Dana Henke, President                  Signature

_____        _____
Beth H. Hollingsworth, Vice-President  Printed Name

_____        _____
Kyla Cox Deckard, Secretary            Position

RESOLUTION 2021-38



**Board of Public Works**
**Staff Report**

---

**Project/Event:** Black Lives Matter Mural -Jordan Avenue - Encroachment

**Petitioner/Representative:** ESD, Public Works

**Staff Representative:** Adam Wason, Public Works Director

---

**Report:** The City of Bloomington Economic & Sustainable Development Department, Office of the Mayor, Community Family Resources Department, and the Public Works Department endorse the painting of a Black Lives Matter mural on Jordan Avenue adjacent to the IU Neil Marshall Black Cultural Center in partnership with the IU Provost's Office and the Black Collegians student group. This community project is requesting the Board of Public Works to permit this use of a public right of way and join in this public display of support for our Black and Brown residents who have been fighting for justice. This request is coming to the Board of Public Works after the project was completed due to an oversight by staff as City personnel transitioned out of the organization. Intentions were always to work with IU and this student group, and have this before the Board in early June. Due to the oversight, we are requesting after the fact approval.

---

**Board of Public Works**
Staff Report

Filed: 2/23/2022 6:03 PM
Clerk
Monroe County, Indiana
Monroe Circuit Court 6

|  |  |
|---|---|
| The Board of Public Works meeting was held on Tuesday, August 03, 2021, at 5:30 pm virtually through Zoom.   Dana Henke presiding. | **REGULAR MEETING OF THE BOARD OF PUBLIC WORKS** |
| Present:     Dana Henke
              Kyla Cox Deckard
              Beth H. Hollingsworth | **ROLL CALL** |
| City Staff: Adam Wason – Public Works
              Matt Smethurst - Engineering
              Mike Stewart- Engineering | |
| Hollingsworth wanted to thank the employees of the City that keep it safe, clean, and beautiful.  Cox Deckard wanted to remind everyone that the following day is the first day of school for many of the students in the community and to be aware of the increased school traffic and buses. | **MESSAGES FROM BOARD MEMBERS** |
| John Kennedy made mention of the Gull property (2611 Round Hill Lane) that has gone before the Board previously.  Kennedy said the property looks horrible, and as he walks by the property, he does not recognize any of the species of growth to be anything other than invasive weeds.  Kennedy asked that the property be put on the agenda in the coming month so that the some of the homeowners in Spicewood could speak about it.  Adam Wason, Public Works, stated that there had been conversation between Public Works, Planning and Transportation and HAND. Explained that while the property hasn't necessarily been deemed in compliance, it is less invasive as it has been in the past.  Henke reiterated that since the property is in continuance abatement, if it is out of compliance, it will not have to go back before the Board. Wason confirmed. | **PETITIONS & REMONSTRANCES** |

8/3/2021

Exhibit 2D

1. Approval of Minutes – July 20, 2021
2. Resolution 2021-32: Use of Public Right-of-Way for PRIDEfest
3. Resolution 2021-37: Middle Way House Annual Wrapped in Love Public Art Display
4. Resolution 2021-38: Indiana University Student Involvement Fair
5. Resolution 2021-39: Renewal of Mobile Vendor in Public Right-of-Way; Uno Mas Taco Truck
6. Resolution 2021-40: Renewal of Mobile Vendor in Public Right-of-Way; Kona Ice of Brown County
7. Black Lives Matter Mural – Jordan Avenue Encroachment
8. Approval of Payroll

**CONSENT AGENDA**

**Board Comments:** None

Hollingsworth made a motion to approve the Consent Agenda. Cox Deckard seconded. Henke took a roll call vote. Cox Deckard voted yes, Hollingsworth voted yes, Henke voted yes. Motion is passed.

Matt Smethurst, Engineering, presented Change Order #10 for the West 17th Street Reconstruction Project with Reed & Sons. See meeting packet for details.

**NEW BUSINESS**
**Change Order #10 for the West 17th Street Reconstruction Project with Reed & Sons**

**Board Comments:** Wason made mention from the work session about negotiations with contractor to close out final project with discussions about liquidated damages and hoping to wrap up the project entirely sooner than later.

Hollingsworth made a motion to approve Change Order #10 for the West 17th Street Reconstruction Project with Reed & Sons. Cox Deckard seconded. Henke took a roll call vote. Cox Deckard voted yes, Hollingsworth voted yes, Henke voted yes. Motion is passed.

Mike Stewart, Engineering, presented Request from CRG Residential for Dumpster and POD Placement in Right-of-Way at 316 N. Washington (August 03, 2021-August 16, 2021). See meeting packet for details.

**Request from CRG Residential for Dumpster and POD Placement in Right-of-Way at 316 N. Washington (August 03, 2021-August 16, 2021)**

8/3/2021

**Board Comments:** Henke asked if there had been any issues in the few weeks that the dumpster has been there already. Wason answered no. Said that the reason this was brought to the Board tonight was because it extended past the two weeks that could be approved at staff level.

Hollingsworth made a motion to approve Request from CRG Residential for Dumpster and POD Placement in Right-of-Way at 316 N. Washington (August 03, 2021-August 16, 2021). Cox Deckard seconded. Henke took a roll call vote. Cox Deckard voted yes, Hollingsworth voted yes, Henke voted yes. Motion is passed.

Adam Wason, Public Works, on behalf of J.D. Boruff, presented Agreement with Discount Blinds & Verticals for Replacement of Blinds at Fire Station #2. See meeting packet for details.

**Agreement with Discount Blinds & Verticals for Replacement of Blinds at Fire Station #2**

**Board Comments:** Hollingsworth asked when the project would be started. Wason answered that J.D. would give them a notice to proceed once the approvals are received.

Hollingsworth made a motion to approve Agreement with Discount Blinds & Verticals for Replacement of Blinds at Fire Station #2 for $3,164.00. Cox Deckard seconded. Henke took a roll call vote. Cox Deckard voted yes, Hollingsworth voted yes, Henke voted yes. Motion is passed.

Adam Wason, Public Works, on behalf of J.D. Boruff, presented Agreement with Carpets Plus ColorTile for Replacement of Flooring at Fire Station #2. See meeting packet for details.

**Agreement with Carpets Plus ColorTile for Replacement of Flooring at Fire Station #2**

**Board Comments:** Hollingsworth mentioned that Carpets Plus ColorTile had been used in other projects. Wason confirmed and said that there had never been any issues with their work.

Hollingsworth made a motion to approve Agreement with Carpets Plus ColorTile for Replacement of Flooring at Fire Station #2 for $8,124.70. Cox Deckard seconded. Henke took a roll call vote. Cox Deckard voted yes, Hollingsworth voted yes, Henke voted yes. Motion is passed.

Wason pointed out that Public Works had been in communication with Planning and Transportation and HAND regarding 2611 Round Hill Lane and the neighborhood will be updated as soon as

**STAFF REPORTS AND OTHER BUSINESS**

8/3/2021

the staff learns more.

Wason sent condolences to another member of the Public Works family, Doug Deckard, who passed away this weekend. Wason offered condolences to his family and thanked him for his years of service to the City of Bloomington

**CLAIMS**

Henke wondered what the consulting services are for under other services and charges for Thomas Renneisen. Wason stated that often times, as with positions such as the Deputy Mayor, there is a transition as the employment ends that they are often retained for consulting services.

Hollingsworth made a motion to approve claims in the amount of $3,547,667.51. Cox Deckard seconded. Henke took a roll call vote. Cox Deckard voted yes, Hollingsworth voted yes, Henke voted yes. Motion is passed.

**ADJOURNMENT**

Henke called for adjournment at 5:50 p.m.

Accepted By:

_____
Dana Henke, President

_____
Beth H. Hollingsworth, Vice-President

_____
Kyla Cox Deckard, Secretary

     Date:               Attest to:

8/3/2021

Case 1:22-cv-00458-SEB-TAB    Document 2202-1  Filed 12/23/22  Page 113 of 226 PageID #: 118

53C06-2202-PL-000361
Filed: 2/23/2022 6:03 PM
Clerk
Monroe County, Indiana
Monroe Circuit Court 6

# Board of Public Works Meeting
## September 14, 2021



The City will offer virtual options, including CATS public access television (live and tape -delayed) and
Zoom by using the following link: https://bloomington.zoom.us/j/81485364306?pwd=N3ZsdUc4RjNvaVVJMCtLTE1SdVZldz09

Public comments and questions will be encouraged via Zoom or   bloomington.in.gov rather than in person

Exhibit 2E

Topic: Board of Public Works

Time: Sep 14, 2021 05:30 PM Eastern Time (US and Canada)

Join Zoom Meeting

https://bloomington.zoom.us/j/81485364306?pwd=N3ZsdUc4RjNvaVVJMCtLTE1SdVZldz09

Meeting ID: 814 8536 4306

Passcode: 073732

Dial by your location

    +1 301 715 8592 US (Washington DC)

    +1 312 626 6799 US (Chicago)

    +1 929 205 6099 US (New York)

    +1 253 215 8782 US (Tacoma)

    +1 346 248 7799 US (Houston)

    +1 669 900 6833 US (San Jose)

Meeting ID: 814 8536 4306

Passcode: 073732

Find your local number: https://bloomington.zoom.us/u/kPpKDvxCf

**AGENDA**
**BOARD OF PUBLIC WORKS**
**September 14, 2021**

**A Regular Meeting of the Board of Public Work will be held Tuesday, September 14, 2021 at 5:30 p.m. via**
**Zoom by using the following link:**
https://bloomington.zoom.us/j/81485364306?pwd=N3ZsdUc4RjNvaVVJMCtLTE1SdVZldz09
**The City will offer virtual options, including CATS public access television (live and tape- delayed) and**
**Comments and questions will be encouraged via Zoom or bloomington.in.gov rather than in person.**

   **I.**    **MESSAGES FROM BOARD MEMBERS**

  **II.**    **PETITIONS & REMONSTRANCES**

 **III.**    **CONSENT AGENDA**
     1.  **Approval of Minutes – August 31, 2021**
     2.  **Resolution 2021-46: Renewal of Mobile Vendor in Public Right-of-Way; Swakin LLC.**
     3.  **Resolution 2021-47: Indiana University Homecoming Parade**
     4.  **Resolution 2021-48: Indiana University Student Foundation Little 500 Street Sprints**
     5.  **Noise Permit for Out of the Darkness 5k Walk**
     6.  **Noise Permit for The Commons**
     7.  **Approval of Payroll**

 **IV.**    **NEW BUSINESS**
     1.  **Change Orders #11 and Change #12 for the West 17th Street Reconstruction Project**
     2.  **Construction Inspection Contract with Clark Dietz, Inc. for the Installation of Guardrails at Various Locations Project**

  **V.**    **STAFF REPORTS & OTHER BUSINESS**

 **VI.**    **APPROVAL OF CLAIMS**

**VII.**    **ADJOURNMENT**


**Auxiliary aids for people with disabilities are available upon request with adequate notice.**
**Please call 812-349-3410 or email public.works@bloomington.in.gov.**



**Board of Public Works**
**Staff Report**

**Project/Event:**     2021 Indiana University Homecoming Parade

**Petitioner/Representative:** Indiana University Alumni Association

**Staff Representative:** April Rosenberger

**Meeting Date:**     September 14, 2021

**Event Date:** Friday, October 15, 2021

The Indiana University Alumni Association is requesting street closures for the purpose of conducting their annual Indiana University Homecoming Parade on Friday, October 15th from 4:30 p.m. to 8:30 p.m.

The annual IU Homecoming parade, will begin assembling in the Green Lot of Assembly Hall, then at 6pm will officially start at 17th & Woodlawn and travel south down Woodlawn, turn east on 13th St, turn north on Fee lane, turn west back onto 17th St. and finish back at the stadium. Parade will begin at 6 p.m. and end at 7:30 p.m. on October 15, 2021.

Indiana University Police Department will be providing traffic control.

The Indiana University Alumni Association expects approximately 1500-2000 attendees, including student and community members, and will feature walking groups, decorated vehicles, and floats.

A noise waiver has been written into the Resolution, and a Noise Permit application was submitted.

BPD has approved a Parade Permit subject to BPW approval.



**JOHN HAMILTON**
**MAYOR**

**CITY OF BLOOMINGTON**

DEPARTMENT OF PUBLIC WORKS
DEPARTMENT OF ECONOMIC
& SUSTAINABLE DEVELOPMENT

401 N Morton St Suite 150                          ESD 812.349.3418
PO Box 100                                         PW 812.349.3410
Bloomington IN 47402

Greetings from the City of Bloomington!

This application is for approval from the Board of Public Works for Temporary Special Events for the use of public rights of way owned by the City of Bloomington. To assure timely approval by the Board of Public Works to your application we ask that you notify us 3 months in advance.

Applications will not be considered unless all relevant portions of the application have been completed in their entirety. Once a completed application is submitted to the City it will be reviewed by City Staff and will then go before the Board of Public Works for consideration. Once approved by the Board of Public Works, the City retains the right to revoke permission if event becomes a public safety concern.

The Board of Public Works has the sole discretion as to whether or not a special approval shall be granted. If the Board of Public Works issues a special approval for use of public right-of-way the Board may prescribe any reasonable conditions or requirements it deems necessary to minimize the adverse effects upon the Bloomington community, surrounding neighborhoods, or emergency service providers.

If the Board of Public Works issues the special approval, the permit holder shall still abide by all other city, county, state and federal laws.

The City of Bloomington
Department of Economic and Sustainable Development



**CITY OF BLOOMINGTON**

# SPECIAL EVENT APPLICATION

**City of Bloomington**
**Department of Economic and Sustainable Development**
**401 N. Morton Street, Suite 150**
**Bloomington, Indiana 47404**
**812-349-3418**
**Department of Public Works**
**812-349-3410**

## 1. Applicant Information

| | | | |
|---|---|---|---|
| Contact Name: | Garrett Baker | | |
| Contact Phone: | 812-583-2701 | Mobile Phone: | |
| Title/Position: | Assistant Director of Programs | | |
| Organization: | IU Alumni Association | | |
| Address: | 1000 E 17th St. | | |
| City, State, Zip: | Bloomington, IN 47408 | | |
| Contact E-Mail Address: | jgb@iu.edu | | |
| Organization E-Mail and URL: | jgb@iu.edu | | |
| Org Phone No: | 812-855-4822 | Fax No: | |

## 2. Any Key Partners Involved (including Food Vendors if applicable)

| | | | |
|---|---|---|---|
| Organization Name: | IU Athletics | | |
| Address: | 1001 E 17th St. | | |
| City, State, Zip: | Bloomington, IN 40408 | | |
| Contact E-Mail Address: | mskirvin@indiana.edu | | |
| Phone Number: | 812-856-1401 | Mobile Phone: | |
| | | | |
| Organization Name: | IUPD | | |
| Address: | Kenneth Ross Allen | | |
| City, State, Zip: | 1469 E 17th St. Bloomington, IN 47408 | | |
| E-Mail Address: | keroalle@indiana.edu | | |
| Phone Number: | 812-855-4275 | Mobile Phone: | |
| | | | |
| Organization Name: | The Tao – Finney Hospitality Group | | |
| Address: | Address: 101 N. College Ave | | |
| City, State, Zip: | Bloomington, IN | | |
| E-Mail Address: | maryann@finneyhospitality.com | | |
| Phone Number: | 812-855-4275 | Mobile Phone: | |

## 3. Event Information

| | |
|---|---|
| Type of Event | ☐Metered Parking Space(s)  ☐Run/Walk  ☐ Festival  ☐ Block Party<br>☑ Parade  ☐ Other (Explain below in Description of Event) |
| Date(s) of Event: | October 15, 2021 |
| Time of Event: | Date: 10/15/2021      Start:  6:00 pm      Date:      End: 7:30 pm |
| Setup/Teardown time Needed | Date: 10/15/2021      Start:  4:30pm      Date:      End:  8:30 pm |
| Calendar Day of Week: | Friday |
| Description of Event: | Annual IU Homecoming parade, which will begin assembling in the Green Lot of Assembly Hall, then at 6pm will officially start at 17th & Woodlawn and travel south down Woodlawn, turn east on 13th St, turn north on Fee lane, turn west back onto 17th St. and finish back at the stadium. |
| List of Street Closures (If applicable) | 17th St, 14th St, 13th St, N Walnut Grove, Fee Lane, |

| Expected Number of Participants: | 1500-2000 | Expected # of vehicles (Use of Parking Spaces to close): Parking availavble via Assembly Hall |
|---|---|---|

## 4. IF YOUR EVENT IS A RUN/WALK/PARADE, YOU ARE REQUIRED TO SECURE AND ATTACHED THE FOLLOWING:  *Moving Events – Use and/or Closure of City Streets/Sidewalks*

| | |
|---|---|
| ☑ | A map of the proposed rights-of-way closure or route in its entirety (streets shall be properly labeled and identified)<br>• The starting point shall be clearly marked<br>• The ending point shall be clearly marked<br>• The number of lanes to be restricted on each road shall be clearly marked<br>• Each intersection along the route shall be clearly identified<br>• A notation of how each intersection is to be blocked shall be specifically noted at each intersection (ie:  Type 3 barricades and/or law enforcement); and<br>• The location of any staging area(s) for the rights-of-way closure and how much space the staging area(s) shall utilize |
| ☑ | Notification to businesses /residents that will be impacted by event of the day the application will be heard by Board of Public Works (Example attached) |
| ☐ | Using a City park or trail? Parks & Recreation Department Approved Special Use Permit   ☑Not applicable |
| ☑ | Certificate of Liability Insurance – Proof of insurance listing the City of Bloomington as additional insured for an amount no less than $1,000,000 per occurrence and $2,000,000 in the aggregate. DEADLINE:  To Public Works no later than five days before event. |
| ☑ | A properly executed Maintenance of Traffic Plan<br>*Determine if No Parking Signs will be required        * Determine if Barricades will be required |
| ☑ | For every 500 attendees who will be present at your event at any one time, you must hire one uniformed off-duty Indiana Certified Police Officer as security (however, the City reserves the right to request one officer be present for every 250 attendees, depending on the nature of the particular event) |
| ☑ | Secured a Parade Permit from Bloomington Police Department ☐     Not applicable |
| ☑ | Noise Permit application     ☐     Not applicable |
| ☑ | Waste and Recycling Plan if more than 100 participates (template attached) |

## 5. IF YOUR EVENT IS A FESTIVAL/SPECIAL COMMUNITY EVENT YOU ARE REQUIRED TO SECURE AND ATTACH, AND SUBMIT THE FOLLOWING:

### *Stationary Events – Closure of Streets/Sidewalks/Use of Metered Parking*

| | |
|---|---|
| ☐ | A map of the proposed rights-of-way closure in its entirety (streets shall be properly labeled and identified) The starting point shall be clearly marked<br>• The ending point shall be clearly marked<br>• The number of lanes to be restricted on each road shall be clearly marked<br>• Each intersection along the route shall be clearly identified<br>• A notation of how each intersection is to be blocked shall be specifically noted at each intersection (ie: type 3 barricades and/or law enforcement); and<br>• The location of any staging area(s) for the rights-of-way closure and how much space the staging area(s) shall utilize |
| ☐ | Notification to business/residents who will be impacted by event of the day the application will be heard by Board of Public Works (Example attached) |
| ☐ | Using a City park or trail? Parks & Recreation Department Approved Special Use Permit   ☐   Not applicable |
| ☐ | A properly executed Maintenance of Traffic Plan<br>*Determine if No Parking Signs will be required        * Determine if Barricades will be required |
| ☐ | For larger events, you may be required to submit an Emergency Management Plan for review by the Bloomington Fire and Police Departments |
| ☐ | Noise Permit application          ☐ Not applicable |
| ☐ | Beer & Wine Permit          ☐ Not applicable |

| ❑ | Certificate of Liability Insurance listing the City of Bloomington as additional insured.  For an amount not less than $1,000,000 per occurrence and $2,000,000 in the aggregate.  **DEADLINE**:  To Public Works no later than five days before event. |
| ❑ | For every 500 attendees who will be present at your event at any one time, you must hire one uniformed off-duty Indiana Certified Police Officer as security (however, the City reserves the right to request one officer be present for every 250 attendees, depending on the nature of the particular event) |
| ❑ | If Food Vendors are part of Festival (Monroe County Health Department Licenses & Fire Inspection) |
| ❑ | Waste and Recycling Plan if more than 100 participates (template attached) |

## 6. CHECKLIST

| ☑ | Determine what type of Event |
| ❑ | Complete application with attachment<br>☑ Detailed Map<br>☑ Proof of notification to businesses/residents (copy of letter/flyer/other)<br>☑ Maintenance of Traffic Plan<br>☑ Noise Permit Application (if applicable)<br>☑ Certificate of Liability Insurance<br>☑ Secured a Parade Permit from Bloomington Police Department (if applicable)<br>☑ Beer and Wine Permit (if applicable)Waste and Recycling Plan (if applicable)<br>☑ Waste and Recycling Plan (if applicable) |
| ❑ | Date Application will be heard by Board of Public Works (contact ESD at 812-349-3418 for date) |
| ❑ | Approved Parks Special Use Permit (if using a City Park) |
| ☑ | If using food vendors assure proper paperwork in order (Monroe County Health Department Licenses & Fire Inspection) |
| ❑ | No Parking Signs<br>❑   Board of Public Works approved events are provided by Department of Public Works (DPW)<br><br>❑   Contacted DPW at 812-349-3410 to request and schedule No Parking Signs |

**NOTE: The City of Bloomington reserves the right to cancel any event at any time should such event begin to threaten public safety or if an emergency necessitates cancellation.**

**Amusement and Entertainment Permits: The Indiana Department of Homeland Security requires that certain events be inspected by a representative from the Department of Homeland Security. Amusement and Entertainment permits are required for events at a variety of locations and venues. Some of the most common kinds of places that require amusement entertainment permits are places where the following kinds of events occur: concerts and other shows, amusement rides, movies, dances, and bowling. It is your responsibility to contact the Department of Homeland Security to see if your event requires an Amusement and Entertainment Permit and an inspection. The Department of Homeland Security can be reached at (317)232-2222 or online at https://www.in.gov/dhs/2795.htm.**

**For City Of Bloomington Use Only**

| Date Received: 9/8/2021 | Received By: Public Works | Date Approved: | Approved By: |
|---|---|---|---|
| | Board of Public Works | | |
| | Bloomington Police | 9/8/2021 | Scott Oldham |
| | Bloomington Fire | 9/8/2021 | Tim Clapp |
| | Economic & Sustainable Development | | Kaisa |
| | Engineering | 9/10/2021 | Emily/Roy |
| | Office of The Mayor | 9/8/2021 | Mary Catherine |
| | Parking Enforcement | 9/8/2021 | RayeAnn |
| | Transit | No response | |



**CITY OF BLOOMINGTON**

# NOISE PERMIT

**City of Bloomington**
**401 N. Morton St., Suite 120**
**Bloomington, Indiana 47404**
**812-349-3410**

## Application and Permit Information

This is an application for a permit for relief from Chapter 14.09 (Noise Control) of the Bloomington Municipal Code. Any permit granted by the City of Bloomington must contain all conditions upon which said permit shall be effective. The City may prescribe any reasonable conditions or requirements it deems necessary to minimize adverse effects upon the community or the surrounding neighborhood.

Once a completed application is submitted to the City, it will be reviewed by the Board of Public Works. If the permit is approved, the holder must still abide all other city, state, and federal laws.

Contact April Rosenberger with any questions: (812) 349-3410 or april.rosenberger@bloomington.in.gov

## Event and Noise Information

| Name of Event: | 2021 IU Homecoming Parade | | |
|---|---|---|---|
| Location of Event: | 17th & Woodlawn, near Assembly Hall | | |
| Date of Event: | October 15, 2021 | Time of Event: | Start: 6:00 pm |
| Calendar Day of Week: | | | End: 7:30 pm |
| Description of Event: | Annual IU Homecoming parade, which will begin assembling in the Green Lot of Assembly Hall, then at 6pm will officially start at 17th & Woodlawn and travel south down Woodlawn, turn east on 13th St, turn north on Fee lane, turn west back onto 17th St. and finish back at the stadium. | | |
| Source of Noise: | ☐ Live Band   ☑ Instrument   ☑ Loudspeaker | | Will Noise be Amplified? ☑ Yes   ☐ No |
| Is this a Charity Event? | ☐ Yes  ☑ No   If Yes, to Benefit: | | |

## Applicant Information

| Name: | Garrett Baker | | |
|---|---|---|---|
| Organization: | IU Alumni Association | Title: | Assistant Director of Programs |
| Physical Address: | 1000 E 17th St. | | |
| Email Address: | jgb@iu.edu | Phone Number: | 812-583-2701 |
| Signature: | *Garrett Baker* | Date: | 7/20/2021 |

## FOR CITY OF BLOOMINGTON USE ONLY

**In accordance with Section 14.09.070 of the Bloomington Municipal Code, We, the Board of Public Works, the designee of the Mayor of the City of Bloomington, hereby waive the City Noise Ordinance for the above mentioned event.**

**BOARD OF PUBLIC WORKS**

_____
Dana Henke, President

_____
Beth H. Hollingsworth, Vice-President

_____
Date

_____
Kyla Cox Deckard, Secretary

# Waste and Recycling Management Plan Template

Event name: 2021 IU Homecoming Parade

Number of expected attendees: 1000

Number of food vendors: One

Number of other vendors: _____

**Designated waste and recycling manager**: This may be a staff member or a volunteer. Events expecting over 100 attendees are required to designate a waste and recycling manager who will be in charge of overseeing the implementation of the waste and recycling management plan.

**Event map**: In the event map you submit with your event application, please clearly designate where waste and recycling bins will be placed. Each waste bin should be paired with one or more recycling bins. Also designate any larger collection areas (such as dumpsters) and the path for access by waste haulers.

> **TIP**: Recycling bins should be visually distinct from waste bins, and all bins should be clearly labeled for easy use by attendees.
> ClearStream recycling bins are available for use through Downtown Bloomington, Inc.

**Targeted waste**: Please enumerate the types of waste expected at the event and plans for collecting each type of item using the following table. Examples are listed, but feel free to modify as appropriate.

| Type of waste | Collection plan |
|---|---|
| \<Containers\>* | \<Recycling, composting, etc.\> |
| \<Mixed paper\> | \<Recycling in on-site, designated bins staffed by volunteers\> |
| \<Food waste\> | \<Composting bins, waste bins, etc.\> |

*Note that "compostable" plastics are only compostable in industrial composters, which are not available in the Bloomington area. If you opt for compostable items at your event, ensure that they are compostable paper rather than plastic.

**Collection and hauling system**: Describe where and how waste and recycling will be collected and separated. Include information on how attendees and vendors will be educated on where materials should be placed, including signage, pre-event training and publicity, volunteer-staffed waste management stations, etc.

Events with over 100 attendees must provide staffed (by paid staff or volunteers) waste management stations to ensure that materials are separated according to the waste and recycling management plan.

**Vendor and volunteer education and training**: Describe your plans for educating volunteers about waste and recycling management plans at the event, and vendors on what materials will be permitted in order to comply with the Plan and to minimize waste through both reduction and recycling.

**Materials and supplies**: List the materials you plan to have on hand to implement the waste and recycling management plan, including bins, labels, bags, signage, etc.

**Designation of duties**: Clearly designate the volunteers, staff, or other individuals who will be responsible for implementing each component of the waste and recycling management plan.

**EXAMPLE:  NOTICE OF PUBLIC MEETING LETTER**

The Board of Public Works of Bloomington, Indiana, has been petitioned to hear a request for a Special Event in Public Right Way for  Garrett Baker                                                                                      .

The Board of Public Works meeting to hear this request will be MONTH, DAY, YEAR.   Board of Public Works meetings are held virtually via Zoom.  Meeting information can be found on the City's website at: https://bloomington.in.gov/boards/public-works

The proposal for  Garrett Baker                              will be on file and may be examined in the Public Works office on the Friday (insert date) prior to the Tuesday (insert) meeting.

All persons interested in said proposal may be heard at the time and place as herein set out.  If you would rather voice your opinion by phone you may call 812.349.3410 or email public.works@bloomington.in.gov.  Written and verbal objections filed with the Board of Public Works prior to the hearing will be considered.


<div align="center">

BOARD OF PUBLIC WORKS
CITY OF BLOOMINGTON, INDIANA

</div>


PETITIONER:   Garrett Baker
DATE:       09/01/2021

| **Contact Information- Other** | | | |
|---|---|---|---|
| | **Location** | **Contact** | **Phone Number** |
| Maintenance of Traffic Plan | 401 N. Morton St. Suite 130 Bloomington, IN | City of Bloomington Planning & Transportation | (812) 349-3423 |
| Monroe County Health Department (Food Handler Permit) | 119 W. 7th St. Bloomington, IN | Nicole Wagner | (812) 349-2543 |
| Waste & Recycling Plan | 401 N. Morton Street Suite 150 | Lauren Travis Economic & Sustainable Development | (812) 349-3837 |
| Bloomington Board of Public Works | 401 N. Morton St. Suite 120 Bloomington, IN | April Rosenberger Dept. of Public Works | (812) 349-3411 |
| Bloomington Parks and Recreation Department (Events on City of Bloomington Parks Property) | 401 N. Morton St. Suite 250 Bloomington, IN | Leslie Brinson Community Events Manager | (812) 349-3700 |
| Bloomington Fire Department (If event will have any kind of open | 300 E. 4th St. Bloomington, IN | Fire Administration | (812) 332-9763 |
| Bloomington Police Department (Parade Permit) | 220 E. Third Bloomington, IN | Police Administration | (812) 339-4477 |
| Master Rental | 2022 W. 3rd Street Bloomington, IN | Type 3 Barricades | (812) 332-0600 |
| Indiana Traffic Services | 3867 N. Commercial Parkway Greenfield, IN  46140 | Type 3 Barricades | (317) 891-8065 |
| Monroe County Emergency Management | 2800 S. Kirby Road Bloomington, IN | | (812)- 349-2546 |

September 9, 2021

Dear Bloomington Community and IU Campus friends:

Greetings from the Indiana University Homecoming Committee! This year, the Homecoming parade will take place on Woodlawn Ave. on Friday, October 15th at 6:00 p.m. We are contacting you because the building you live or work in will be affected by the parade. Our petition will be heard virtually by the Board of Public Works on September 14, 2021. Meeting details can be found at https://bloomington.in.gov/boards/public-works

This year, the staging area is in the Green lot of the Memorial Stadium parking lot. The parade will begin on 17th and Woodlawn, head south on Woodlawn, turn east on 13th St., turn north on Fee lane, then head west back down 17th St., finishing at Assembly Hall. Multiple roads will be closed along this route from approximately 5:45 pm to 7:00 pm on Friday, October 15th.  Please see the attached parade route map for a better understanding of what areas will be affected.  It is likely that parking will be limited or unavailable in these areas. Not only will there be the usual college students and community members, but we anticipate many Hoosier alumni will be returning to Bloomington.

Homecoming is one of the biggest IU events of the year, and the parade is a significant part of building up the spirit for the big game. Your participation would be greatly appreciated! We encourage you to get spirited, get involved, and let's make Homecoming 2021 a year to remember!

We appreciate your patience and understanding during the parade.  If you have specific questions about suggestions for navigating around the parade during this time period, please feel free to contact the Indiana University Alumni Association at (812) 855-4822 and ask to speak to someone in the programs department.

Sincerely,

Garrett Baker
Assistant Director of Alumni Programs
Indiana University Alumni Association



**BEER / WINE AUTHORITY / TYPE 118**
State Form 35494 (R8 / 11-15)
Approved by State Board of Accounts, 2015

*INSTRUCTIONS:* 1. *Applicant must complete all requested information.*
2. *Please type or print clearly.*
3. *Submit application and payment to the local excise district office.*

| Send, deliver, or mail to: | |
|---|---|
| **DISTRICT 1**<br>52422 County Road 17<br>Bristol, IN 46507<br>Telephone: (574) 264-9480 | **DISTRICT 4**<br>651 S. Commerce Dr.<br>Seymour, IN 47274<br>Telephone: (812) 523-8314 |
| **DISTRICT 2**<br>1353 South Governors Drive<br>Columbia City, IN 46725<br>Telephone: (260) 244-4285 | **DISTRICT 5**<br>3650 South US Hwy 41<br>Vincennes, IN 47591<br>Telephone: (812) 882-1292 |
| **DISTRICT 3**<br>279 West 300 North<br>Crawfordsville, IN 47933<br>Telephone: (765) 362-8815 | **DISTRICT 6**<br>6400 East 30th Street<br>Indianapolis, IN 46219<br>Telephone: (317) 541-4100 |

| STEP 1. GENERAL INFORMATION | |
|---|---|
| Name of applicant applying for permit *(organization, club, corporation, individual)*<br>Indiana University Alumni Association | TM Permit number *(issued by ATC)*<br>TM009047 |
| Address of applicant *(number and street, city, state, and ZIP code)*<br>1000 E. 17th Street, Bloomington, IN 47408 | E-mail address<br>klrosten@iu.edu |

| Name of person making application<br>Kennedy Rostenkowski | Fax number<br>(   ) | Emergency contact telephone number<br>( 812 ) 855-7938 |
|---|---|---|
| Printed name of contact person of event<br>Kennedy Rostenkowski | | Emergency contact telephone number<br>( 317 ) 430-9709 |

| STEP 2. EVENT INFORMATION | | | |
|---|---|---|---|
| Beginning day<br>Friday | Beginning date *(month, day, year)*<br>October 15, 2021 | Ending day<br>Friday | Ending date *(month, day, year)*<br>October 15, 2021 |
| Time of event<br>Start time    5:00 | ☐ AM ☑ PM | End time    8:00 | ☐ AM ☑ PM |

Type or description of event
VIP viewing area for select alumni leaders and family. Bleacher to watch the parade, food and beverages, and activities provided.

Exact address of event *(number and street, city, state, and ZIP code)*
IU Athletics Tailgate Lot - 1100 N Fess Ave, Bloomington, IN 47404

| STEP 3. FLOOR PLAN *(See Step 4, Number 2)* |
|---|

## STEP 4. ACKNOWLEDGEMENT

In order to qualify for this authority to serve beer and wine, the following guidelines must be met:

1.  There must be a well defined premises, i.e. building, tent, enclosure, or fenced-in or designated area.
2.  You must have a defined floor plan or diagram. This is to be drawn on Page 1, Step 3 of this application. If minors are to be present, you must have a defined separation between the bar area and family area. *(Must be on floor plan.)*
3.  There shall be NO carry-out privileges, NO carry-in privileges and NO spirituous beverages allowed.
4.  Each applicant must designate an individual to be responsible for the event and such person shall sign the authority.
5.  ANY and ALL persons dispensing or accepting payment for alcoholic beverages **MUST POSSESS** a valid ATC employee permit.
6.  The event must meet applicable Indiana State Board of Health requirements, particularly with regard to restroom facilities.
7.  If the event is held in a town park, you must have approval from the town board.
8.  Legal Hours of dispensing alcoholic beverages: (Prevailing time)
    Monday through Saturday -- 7 AM to 3 AM the following day
    Sunday -- 7 AM to 3 AM the following day
9.  Applicant must file with the district office at which the event will be held at least five (5) days prior to the event.
10. The authority must be posted in the most conspicuous place at the location of the event. An excise officer or commissioner, for good cause, has the authority to revoke the authority during the event.

## STEP 5. COMMUNITY CLEARANCE

| | |
|---|---|
| 1. Signature of Sheriff of county, or Chief of Police, or Town Marshall of jurisdiction where the event will be held | Date signed *(month, day, year)* 8/24/21 |
| 2. Signature of the mayor *(if the event is held in Fort Wayne)* | Date signed *(month, day, year)* |

Note:
Please post your approved request in a conspicuous place where the alcoholic beverages are being dispensed at the location. If for any reason this request is denied, you may be notified either in person or by telephone.

I swear or affirm under penalties of perjury that the information is true and accurate.

| | |
|---|---|
| Signature of permittee / agent *(Your signature acknowledges that you have read and will abide by the rules and guidelines.)* | Date signed *(month, day, year)* 8/23/2021 |

## FOR DISTRICT USE ONLY

| | |
|---|---|
| District number 4 | Date issued *(month, day, year)* 8/31/21 |
| Reviewed by Excise Police District Representative  Jesse Mails | ☒ Approved   ☐ Denied |

1. ALL EVENTS ARE $50.00 PER DAY. BUSINESS CHECKS OR MONEY ORDERS ARE ACCEPTED MADE OUT TO THE INDIANA ALCOHOL AND TOBACCO COMMISSION.

2. SERVING PAST MIDNIGHT, NO LATER THAN 3 AM, IS <u>ONE (1)</u> DAY.

3. NO RAIN CHECKS ON ANY OF THE ABOVE EVENTS.



**BEER / WINE AUTHORITY / TYPE 118**
State Form 35494 (R8 / 11-15)
Approved by State Board of Accounts, 2015

*INSTRUCTIONS:*  1. *Applicant must complete all requested information.*
              2. *Please type or print clearly.*
              3. *Submit application and payment to the local excise*
                 *district office.*

Send, deliver, or mail to:

| | |
|---|---|
| **DISTRICT 1**<br>52422 County Road 17<br>Bristol, IN 46507<br>Telephone: (574) 264-9480 | **DISTRICT 4**<br>651 S. Commerce Dr.<br>Seymour, IN 47274<br>Telephone: (812) 523-8314 |
| **DISTRICT 2**<br>1353 South Governors Drive<br>Columbia City, IN 46725<br>Telephone: (260) 244-4285 | **DISTRICT 5**<br>3850 South US Hwy 41<br>Vincennes, IN 47591<br>Telephone: (812) 882-1292 |
| **DISTRICT 3**<br>279 West 300 North<br>Crawfordsville, IN 47933<br>Telephone: (765) 362-8815 | **DISTRICT 6**<br>6400 East 30th Street<br>Indianapolis, IN 46219<br>Telephone: (317) 541-4100 |

## STEP 1.  GENERAL INFORMATION

Name of applicant applying for permit *(organization, club, corporation, individual)*
**Indiana University Alumni Association**

TM Permit number *(issued by ATC)*
TM0090413

Address of applicant *(number and street, city, state, and ZIP code)*
**1000 E. 17th Street, Bloomington, IN 47408**

E-mail address
klrosten@iu.edu

Name of person making application
**Kennedy Rostenkowski**

Fax number
( )

Emergency contact telephone number
( 317 ) 430-9709

Printed name of contact person of event
**Garrett Baker**

Emergency contact telephone number
( 812 ) 583-2701

## STEP 2.  EVENT INFORMATION

| Beginning day<br>Saturday | Beginning date *(month, day, year)*<br>October 16, 2021 | Ending day<br>Saturday | Ending date *(month, day, year)*<br>October 16, 2021 |
|---|---|---|---|

Time of event
Start time    9:00    ☑ AM ☐ PM        End time    12:00    ☐ AM ☑ PM

Type or description of event
**Tailgate celebration for 500 alumni and friends. Food and beverages will be provided.**

Exact address of event *(number and street, city, state, and ZIP code)*
**1000 E. 17th Street, Bloomington, IN 47408**

## STEP 3.  FLOOR PLAN *(See Step 4, Number 2)*

## STEP 4. ACKNOWLEDGEMENT

In order to qualify for this authority to serve beer and wine, the following guidelines must be met:

1. There must be a well defined premises, i.e. building, tent, enclosure, or fenced-in or designated area.
2. You must have a defined floor plan or diagram. This is to be drawn on Page 1, Step 3 of this application. If minors are to be present, you must have a defined separation between the bar area and family area. *(Must be on floor plan.)*
3. There shall be NO carry-out privileges, NO carry-in privileges and NO spirituous beverages allowed.
4. Each applicant must designate an individual to be responsible for the event and such person shall sign the authority.
5. ANY and ALL persons dispensing or accepting payment for alcoholic beverages MUST POSSESS a valid ATC employee permit.
6. The event must meet applicable Indiana State Board of Health requirements, particularly with regard to restroom facilities.
7. If the event is held in a town park, you must have approval from the town board.
8. Legal Hours of dispensing alcoholic beverages: (Prevailing time)
   Monday through Saturday -- 7 AM to 3 AM the following day
   Sunday -- 7 AM to 3 AM the following day
9. Applicant must file with the district office at which the event will be held at least five (5) days prior to the event.
10. The authority must be posted in the most conspicuous place at the location of the event. An excise officer or commissioner, for good cause, has the authority to revoke the authority during the event.

## STEP 5. COMMUNITY CLEARANCE

| | Date signed *(month, day, year)* |
|---|---|
| 1. Signature of Sheriff of county, or Chief of Police, or Town Marshall of jurisdiction where the event will be held | 8/24/21 |
| 2. Signature of the mayor *(if the event is held in Fort Wayne)* | Date signed *(month, day, year)* |

Note:
Please post your approved request in a conspicuous place where the alcoholic beverages are being dispensed at the location. If for any reason this request is denied , you may be notified either in person or by telephone.

I swear or affirm under penalties of perjury that the information is true and accurate.

| Signature of permittee / agent *(Your signature acknowledges that you have read and will abide by the rules and guidelines.)* | Date signed *(month, day, year)* |
|---|---|
| | 8/23/2021 |

## FOR DISTRICT USE ONLY

| District number | Date issued *(month, day, year)* |
|---|---|
| 4 | 8/31/21 |
| Reviewed by Excise Police District Representative | ☒ Approved   ☐ Denied |

1. ALL EVENTS ARE $50.00 PER DAY. BUSINESS CHECKS OR MONEY ORDERS ARE ACCEPTED MADE OUT TO THE INDIANA ALCOHOL AND TOBACCO COMMISSION.

2. SERVING PAST MIDNIGHT, NO LATER THAN 3 AM, IS <u>ONE (1)</u> DAY.

3. NO RAIN CHECKS ON ANY OF THE ABOVE EVENTS.

Client#: 45736          INDIUNI2

**ACORD**™  **CERTIFICATE OF LIABILITY INSURANCE**

DATE (MM/DD/YYYY)
7/08/2021

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer any rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Christopher Ensminger | | |
|---|---|---|---|
| EPIC Insurance Midwest | PHONE (A/C, No, Ext): 317-706-9594 | | FAX (A/C, No): |
| P.O. Box 80159 | E-MAIL ADDRESS: christopher.ensminger@epicbrokers.com | | |
| Indianapolis, IN 46280 | | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : The Cincinnati Insurance Company | | 10677 |
| INSURED | INSURER B : United Educators Insurance | | 10020 |
| Indiana University Alumni Association | INSURER C : | | |
| Off of Insurance, Loss Control & Claims | INSURER D : | | |
| 2805 E. 10th St.;Smith Research C # 110 | INSURER E : | | |
| Bloomington, IN 47408 | INSURER F : | | |

**COVERAGES          CERTIFICATE NUMBER:                    REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **X** COMMERCIAL GENERAL LIABILITY | X | X | ENP0423551 | 02/01/2021 | 02/01/2022 | EACH OCCURRENCE | $1,000,000 |
| | CLAIMS-MADE **X** OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $500,000 |
| | | | | | | | MED EXP (Any one person) | $10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | POLICY **X** PRO-JECT **X** LOC | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | OTHER: | | | | | | | $ |
| A | AUTOMOBILE LIABILITY | X | X | ENP0423551 | 02/01/2021 | 02/01/2022 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | OWNED AUTOS ONLY **X** SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | **X** HIRED AUTOS ONLY **X** NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | UMBRELLA LIAB OCCUR | | | ENP0423551 | 06/10/2021 | 02/01/2022 | EACH OCCURRENCE | $$1,000,000 |
| | **X** EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $$1,000,000 |
| | DED RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | Y/N | | | | PER STATUTE / OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Event: Friday October 15th, 2021

Certificate holder is an additional insured as required by written contract but only with respect to the operations of the named insured.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| City of Bloomington Department of Public Works 401 N Morton St. Suite 150;PO Box 100 Bloomington, IN 47402 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)     **1** of **1**     The ACORD name and logo are registered marks of ACORD
#S3160558/M3112354                                                                CENSM



**BOARD OF PUBLIC WORKS**
**RESOLUTION 2021-47**

**IU HOMECOMING PARADE 2021**

**WHEREAS,** the City of Bloomington Board of Public Works (hereinafter referred to as the "City") is empowered by Indiana Code § 36-9-6-2 to supervise the streets, sidewalks, and parking spaces of the City; and

**WHEREAS,** the Indiana University Alumni Association (hereinafter referred to as "IUAA") would like to have the City close the following City streets: N. Woodlawn Avenue from E. 17th Street to E. 13th Street, E. 13th Street to N. Fee Lane, N. Fee Lane to 17th Street to finish at Assembly Hall. Parade staging will begin in the IU Green Lot of Assembly Hall and start at the corner of E. 17th and N. Woodlawn. This closing is so IUAA can host the 2021 Indiana University Homecoming Parade.

**WHEREAS,** IUAA has agreed to provide the City with a Certificate of Insurance naming the City of Bloomington as additionally insured; and

**WHEREAS,** the City desires to close said streets in order to support this community function.

**NOW, THEREFORE, BE IT RESOLVED** that the City approves the Special Event herein described, subject to the following conditions:

1. The City declares that all or a portion of the following City streets shall be temporarily closed to motor vehicles to conduct the 2021 Indiana University Homecoming Parade: N. Woodlawn Avenue from E. 17th Street to E. 13th Street, E. 13th Street to N. Fee Lane, N. Fee Lane to 17th Street. Parade staging will begin at 4:30 p.m. in the IU Green Lot of Assembly Hall and start at the corner of E. 17th Street and N. Woodlawn Avenue on Friday, October 15th, 2021. The parade will begin at 6:00 p.m. and will end at 7:30 p.m.

2. IUAA shall work with City of Bloomington Parking Enforcement regarding a requested closure of any parking spaces. Parking Enforcement shall post "No Parking" signs at appropriate parking spaces at least 24 hours in advance of their closure.

3. IUAA shall be responsible for developing a Traffic Plan to be approved by the Engineering Department. IUAA shall obtain and place at IUAA's own expense, any security measures which are deemed prudent and necessary by the Police Department which may include, but are not limited to: anti-vehicle barriers or protection; pedestrian barriers; and other engineering controls or personnel as deemed appropriate. IUAA shall not close the streets until 4:30 p.m. on Friday, October 15thth, 2021 and shall remove barricades and signage by 8:30 p.m. on Friday, October 15th, 2021.

4. IUAA shall be responsible for notifying the general public, public transit and public safety agencies of the street closing by notice at least 48 hours in advance.

Resolution 2021-47

5. IUAA shall clean up the affected area before, during, and after the event. Clean-up shall include, but not be limited to, removal of all "no parking" signs posted for the event, the removal of any and all food and/or drink, picking up all trash and litter, sweeping up any and all broken glass, and empty and remove all trash cans/receptacles. Clean-up shall be completed by 8:30 p.m. on Friday, October 15th, 2021.

6. The City declares the above-described and approved event to be a Special Event for purposes of Chapters 4.16, 4.28, and 4.30 of the Bloomington Municipal Code.

7. By granting permission to utilize City property to facilitate this activity, the City also waives the City Noise Ordinance in accordance with Section 14.09.070 of the Bloomington Municipal Code, and therefore amplified sound and music may be played during the hours of the event.

8. IUAA shall be responsible for obtaining any and all required permits as well as being responsible for all legal and financial expenditures.

9. IUAA, its officers, directors, agents, employees, members, successors and assigns, does hereby indemnify and hold harmless the City, its Boards, officers, agents and employees from any and all claims, demands, damages, costs, expenses or other liability arising out of bodily injury or property damage (collectively "Claims") which may occur as a result of the use of said property, including, but not limited to, any claim or claims brought by third parties, whether or not sounding in tort or contract.

10. _____, a duly authorized representative of IUAA, represents that he/she is fully empowered by proper action of IUAA to bind IUAA to the terms and conditions set forth in this Resolution and does so bind IUAA by his/her signature set forth below.

ADOPTED THIS 14th DAY SEPTEMBER, 2021.

BOARD OF PUBLIC WORKS:          INDIANA UNIVERSITY ALUMNI
                                            ASSOCIATION:

_____
Dana Henke, President                       Signature

_____
Beth H. Hollingsworth, Vice-President      Printed Name, Title

_____
Kyla Cox Deckard, Secretary            Date

Resolution 2021-47

COVID
19        Court sides with IU on COVID-19 vaccine mandate   IU reimplementing mask mandate indoors   December

BLACK VOICES

# Black Voices: Black Lives Matter Mural: Inclusivity Matters



Courtesy Photo

A Black Lives Matter mural created by IU students located on Jordan Avenue. Each letter of the Black Lives Matter mural has something every person can relate to, Tiera Howlett said.

By **Tiera Howlett**
Published Jul 26, 2021 10:44 am
Last updated Jul 28, 2021 5:52 pm

Black Lives Matter.

To some, this statement is one of hate and division, but to others it means peace, unity and equality.

When I say Black Lives Matter, I say it with pride because I know what it means to me. This statement acknowledges the systemic oppression and violence which has plagued Black, brown and other marginalized communities for centuries.

Black Lives Matter is a statement of power, reversing the years of torment Black people endured by saying enough is enough. Black people demand to be seen as human and as equal to everyone else. Our lives will no longer be shed in vain. We matter.

IU sophomore and Black Lives Matter mural co-organizer, Joa'Quinn Griffin, said Black Lives Matter means all lives can't matter until Black ones do.

"We have to give a voice to the oppressed and give equity to those who are not privileged based on systemic racism and a system so flawed and against a certain type of people based on looks," Griffin said.

Exhibit 3A

For the past year, I have been working alongside Griffin to create an all-inclusive Black Lives Matter mural on the campus of Indiana University.

The project began in September of 2020 when Griffin noticed there was a hidden Black Lives Matter flag located on the exterior of the IMU. At the time, Griffin and I served on the diversity, equity and inclusion committee for IU Student Government, which I was the executive director for.

Griffin brought the flag to our committee's attention and I also noted the existence of the statement "Black Lives Matter" on the lobby steps of the Biddle Hotel, which is located within the IMU. As a result of this conversation, Griffin and I decided it would be best to make a more significant impact on campus with this statement.

From there, Griffin and I decided it would be best to take a more detached approach from IU Student Government to ensure this initiative would be successful. My organization, Black Collegians, came on board from there as the official student organization behind the mural initiative.

The mural was mostly funded through the IU Funding board, as Griffin and I presented our proposal to the committee and were awarded funds to cover costs for supplies, artists and logistics. We also received donations from community members and the Division of Student Affairs.

The idea to make the mural inclusive of other marginalized communities was quite intentional, as we recognize the systemic issues faced by Black people are also faced by others. Griffin and I also understood Black people cannot be in the fight for justice alone and needed to represent unity within the mural.

"We wanted to give a voice to everyone who is underrepresented," Griffin said. "The mural speaks to intersections and allies and each letter tells its own story."

Nonetheless, Black people are not monolithic and our identities intertwine with many others. These different identities all conjoined with one another form an identity based on intersectionality.

As a result, each letter represents a different marginalized community. From body positivity to Islamophobia, anyone can walk up to the mural and identify with at least one of the letters and feel seen.

The mural process began with slower motions, and most people we initially talked with were not completely sold on the idea. One major concern was because of the violence experienced last year, the mural would create a rise in the need for security.

However, during the spring of the past academic year, more people began to see the importance of the mural and the statement it would bring to campus.

The mural initiative was approved through the City of Bloomington and IU campus leadership, including former President Michael McRobbie and former Provost Lauren Robel. Griffin and I worked closely with Thomas Morrison, IU capital planning and facilities Vice President, to solidify a location for the mural.

The mural is located at 7th St. and Jordan Ave. between the Neal Marshall Black Culture Center and the Office of the Vice Provost for Diversity, Equity and Multicultural Affairs. The location of the mural was very intentional as Jordan Ave. is being renamed after originally being named after David Starr Jordan, a known eugenicist.

While Griffin and I led the mural initiative, we had others join along in the process. Our artists, Katelyn Scott, Olivia Roath and Ronny Booker all helped bring the vision of the mural to life. Also, Damorion Page, Black Collegians Vice President, played an important role in helping coordinate volunteers and finalize logistics of the mural site.

The mural could not have been completed without the help of over 40 volunteers who came out to work for the three days the mural was being painted.

The painting process spanned from the morning of July 3 to the evening of July 5.

Within the following two weeks, vandals have already begun their acts of hatred to destroy the mural with tire burns. The mural however will not be destroyed, and plans to make minor revisions are currently in works, and will be considered for the years to come.

"This mural is the epitome of inclusion," Griffin said.

## Around the Web

revcontent



**Alarming Report from Chuck Norris: "America May Be Lost Forever"**
American Retirement Kits



**Doctors Stunned: Granny Removes Her Wrinkles with Th Tip**
HealthScore



**Mama Bear Does This After M Saves Her Drowning Cubs**
SurelyAwesome



**These Twins Were Named 'Mo Beautiful in the World,' Wait Ti You See Them Now**
SurelyAwesome



**33 Things Vanishing From Sto Because Millennials Refuse to Buy Them**
SurelyAwesome



**This Bizarre Photo Caused Mayhem, Try Not to Gasp whe You See Why**
SurelyAwesome

## More in Black Voices



**Black Voices: COVID-19 is affecting African Americans in Indiana at a disproportionate rate**



**COLUMN: Indianapolis Colts up and down on the road to the playoffs**



**Black Voices: I am done sharing my birthday with my eating disorder**

## TRENDING

NEWS   CRIME & COURTS
**Dangerous situation occurring near Indiana Memorial Union Monday night**
*3 days ago*

NEWS   CRIME & COURTS
**Dangerous situation at Indiana Memorial Union ends without injury, man taken into custody**
*2 days ago*

SPORTS   MEN'S BASKETBALL
**Indiana men's basketball's final nonconference game against UNC Asheville canceled**
*Dec 28, 2021 3:02 pm*

NEWS

**Four fraternities placed on cease and desist for fight during finals week**

*Yesterday*

NEWS   STUDENT LIFE

**Philanthropy round of IU's sorority recruitment will be virtual, PHA announces**

*Dec 30, 2021:04 pm*

# Indiana Daily Student

**GENERAL INFO**

CONTACT US
EMPLOYMENT
POLICIES
ADVERTISING
PRINT EDITION
WRITE TO US

**PUBLICATIONS**

ARBUTUS
ORIENTER
PARENT SURVIVAGUIDE
SOURCE GUIDE
INTERNATIONASTUDENT GUIDE
BIG 10 PREVIEW
IU BASKETBALL GUIDE
HOUSING & LIVING GUIDE
LITTLE 500 RACE GUIDE
812 MAGAZINE
**MARKETPLACE**

CLASSIFIEDS
EVENTS
HEALTH
RELIGIOUS

812-855-0763
ids@indiana.edu
601 E. Kirkwood Ave.,
Bloomington, IN 47405-108

**SUBSCRIBE**

Get email updates with daily headlines and weekly recaps.

 
 

Powered by WORKS Solutions by The State News
All Content © 2022 Indiana Daily Student



| COVID 19 | Court sides with IU on COVID-19 vaccine mandate | IU reimplementing mask mandate indoors | December ' |

BLACK VOICES

# Black Voices: Black Lives Matter mural brings Bloomington community together during its reveal





Courtesy Photo

The Black Lives Matter mural on Jordan Avenue is seen July 5, 2021, outside the Neal-Marshall Black Culture Center.

By **Tiera Howleit**
*Published Aug 31, 2021 9:52 pm*
*Last updated Aug 31, 2021 9:53 pm*

Black Lives Matter in its most literal sense, implies the need to change actions within humanity in order to have peace and equality for all. This statement challenges the foundation for which this country was built and pays homage to the ancestors whose lives were lost in their fight to be seen as human beings.

To me, Black Lives Matter is more than a statement or a globally recognized organization. This statement gives me the ability to be seen as what I should have been seen as at birth, human.

I co-led the BLM Mural Initiative with Joa'Quinn Griffin this past year because I realized the importance of this statement and its true representation. This initiative has no ties with the Black Lives Matter organization, but stands on its own in the power and resilience within the statement.

To officially welcome the mural to campus, Joa'Quinn and I hosted a reveal for the IU and Bloomington communities Aug. 19.

The organization itself has many flaws and the recent actions of one of the founders, Patrisse Cullors, have been questionable with regard to morality. However, the statement should not be disregarded.

The reveal featured guest speakers IU student body president, Ky Freeman, and local poet, PDVNCH.

Exhibit 3B

Both Freeman and Poet PDVNCH were handpicked by me due to their involvement in the IU and Bloomington community and power to truly captivate an audience through their own experiences as Black people. Both of these individuals are proud advocates of their identities and of those who have been and continue to be marginalized within this country.

The mural reveal served as a point of unity as the crowd was filled with individuals of multicultural backgrounds. IU students, faculty and staff, as well as Bloomington community members were present to welcome the mural to campus and to the city.

What was evident to me during this reveal was how many white people were in attendance. While this could have a variety of interpretations, this was not a surprising thing to see. During the recent protests and gatherings amidst the unrest of 2020, many individuals who showed up were those without any ethnic ties to the Black community or diaspora.

Having a diverse audience, made up of white, Black and multicultural individuals meant the work behind the mural was not done in vain and the message has been felt by people of different backgrounds.

IU freshman, Andalysia Ivey, said Black Lives Matter means change, especially given the history Black people have endured in this country.

"I am so proud to see a Black Lives Matter mural on campus," Ivey said. "I feel, in a sense, the mural creates a community among students of color."

Ivey said the mural's presence on campus brings a variety of good and bad emotions, but overall encourages inclusivity by addressing conflict.

To open up the event, Joa'Quinn Griffin and I, both co-organizers of the mural, gave some words on how the mural came to be and delved deeper into the contexts of each letter represented within the mural.

The B in the mural signifies Black Girl Magic. This letter begins the statement to represent the grand essence of what it means to be a Black woman, in contradiction to normal western beliefs and ideologies on the significance of the Black woman.

The K is an ASL K to bring awareness to the Deaf community. Oftentimes, this community is disregarded because this disability is not always seen. However, we included this representation to show how important it is to acknowledge the disability and the impact it has on certain individuals.

The E in Matter represents indigenous peoples. This symbolism was included because there are still individuals who teach and believe false narratives about how indigenous people had their land stolen from them. This letter shows their presence and welcomes the idea that none of us would be here if indigenous people were not slaughtered and stripped of their livelihoods. This very institution resides on indigenous soil.

During the reveal, PDVNCH recited a spoken word piece surrounding Black Lives Matter and what it means to exist as a Black person. He urged the audience to think about what it means to rally behind this movement only because Black death has been televised and recorded for them to see. He encouraged them to be true allies of the movement.

"It's a reminder of the reality that has become a nightmare, via the fantasy of the "American dream," PDVCH said. "It means being viewed and treated with proportional equality, both individually and collectively."

During the reveal, Freeman spoke of how important it is to understand why a mural of this stature has to be designed and urged attendees to think about how far this country has come since the Civil Rights Era and the Voting Rights Act. Freeman championed the need for unity and the representation the mural has for all individuals.

Freeman said it was his duty to be a part of the reveal, because he is the essence of what Black Lives Matter means.

"Given the positions I have held and how significant the mural statement has been," Freeman said. "I have lived in every essence of the words, Black Lives Matter."

He believes there is nothing he would change about the mural and feels it is a good representation of marginalized communities based on the thoughts put into the mural to include diverse communities, surrounding the LGBTQ+, indigenous and Asian Pacific American Islander communities.

While the mural has already sparked a bit of negative attention from individuals who may not understand its deeper meaning, the reveal offered as a guide to the interpretations of the letters and the representation within them.

This reveal was one of commemoration for the efforts of those behind the mural, but also for the individuals who have chosen and continue to choose peace and unity.

## Around the Web

revcontent.



**Alarming Report from Chuck Norris: "America May Be Lost Forever"**
American Retirement Kits



**Mama Bear Does This After M Saves Her Drowning Cubs**
SurelyAwesome



**15 Best Dog Breeds for Senior No. 7 Will Surprise You**
Mom Life Weekly



**13 North Korea Images They Never Wanted Leaked To The World**
SurelyAwesome



**20 Secrets Flight Attendants \ Never Tell You**
ComedyJedi



**Rare Photos Not Suitable for History Books**
SurelyAwesome

## More in Black Voices



**Black Voices: COVID-19 is affecting African Americans in Indiana at a disproportionate rate**



**COLUMN: Indianapolis Colts up and down on the road to the playoffs**



**Black Voices: I am done sharing my birthday with my eating disorder**

## TRENDING

NEWS  CRIME & COURTS

**Dangerous situation occurring near Indiana Memorial Union Monday night**

*3 days ago*

---

NEWS   CRIME & COURTS

**Dangerous situation at Indiana Memorial Union ends without injury, man taken into custody**

*2 days ago*

---

SPORTS   MEN'S BASKETBALL

**Indiana men's basketball's final nonconference game against UNC Asheville canceled**

*Dec 28, 2021 3:02 pm*

---

NEWS

**Four fraternities placed on cease and desist for fight during finals week**

*Yesterday*

---

NEWS   STUDENT LIFE

**Philanthropy round of IU's sorority recruitment will be virtual, PHA announces**

*Dec 30, 2021:04 pm*

# Indiana Daily Student

**GENERAL INFO**

CONTACT US
EMPLOYMENT
POLICIES
ADVERTISING
PRINT EDITION
WRITE TO US

**PUBLICATIONS**

ARBUTUS
ORIENTER
PARENT SURVIVAGUIDE
SOURCE GUIDE
INTERNATIONALSTUDENT GUIDE
BIG 10 PREVIEW
IU BASKETBALL GUIDE
HOUSING & LIVING GUIDE
LITTLE 500 RACE GUIDE
812 MAGAZINE

**MARKETPLACE**

CLASSIFIEDS
EVENTS
HEALTH
RELIGIOUS

812-855-0763
ids@indiana.edu
601 E. Kirkwood Ave.,
Bloomington, IN 47405-0808

**SUBSCRIBE**

Get email updates with daily headlines and weekly recaps.

 
 

Powered by WORKS Solutions by The State News
All Content © 2022 Indiana Daily Student

Case 1:22-cv-00458-SEB-TAB    Document 1-1    Filed 02/23/22    Page 144 of 226 PageID #: 147

53C06-2202-PL-000361

Filed: 2/23/2022 6:03 PM
Clerk
Monroe County, Indiana
Monroe Circuit Court 6



☰

# New Bloomington mural, planned renaming of street both send same message: Black Lives Matter

👤 Dave Askins    📁 Bloomington, Indiana University    🕐 August 1, 2021    📑 3 Minutes



Last week came the announcement that a Bloomington task force has recommended new names for two parts of Jordan Avenue, a north-south street that splits the Indiana University campus.

Exhibit 3C

In its report, the task force recommended renaming Jordan Avenue south of 17th Street as Eagleson Avenue.

North of 17th Street, the street is recommended to be called Fuller Lane.

Both names honor the contributions of Black residents to Bloomington.

The announcement of the task force report came just a month after the installation of a "Black Lives Matter" mural—on the street that is now slated to be renamed for four-generations of the Eagleson family, starting with Halson Vashon Eagleson who was born a slave in 1851.

According to the task force report, Halson Eagleson arrived in Bloomington in the 1880s and became a prominent barber. His five children attended Indiana University. The report describes how in 1910, he opened Industrial City, a home for "colored" orphans in Unionville.

Joa'Quinn Griffin, an Indiana University student who helped lead the effort to install the street mural, told The B Square that the choice of Jordan Avenue was deliberate, for two reasons.

First, the mural would provide a counterpoint to the legacy of the past IU president for whom the street was named. David Starr Jordan was a proponent of eugenics, which advocates for the improvement of the human species through selective mating.

Second, the place on Jordan Avenue selected for the mural installation is in front of the Neal-Marshall Black Culture Center.

The street mural was conceived over a year ago, when Griffin saw a "Black Lives Matter" flag at the Indiana Memorial Union that was not as visible as the other flags were. Correcting that situation, to make the BLM flag more conspicuous, was straightforward, Griffin said. It was fixed the next day.

That experience led him to work on the BLM mural. He partnered up with Black Collegians, a group led by Tiera Howleit.

Griffin and Howleit were both wielding paint brushes on the morning of July 5, when The B Square dropped by the work site. At that point the mural was mostly done but still needed the remaining hours in the day to be completed.

Howleit has written a column about the mural for the Indiana Daily Student's Black Voices section.

Howleit lays out in her piece why the mural looks the way it does: "Black people are not monolithic and our identities intertwine with many others. These different identities all conjoined with one another form an identity based on intersectionality."

The column continues, "As a result, each letter represents a different marginalized community. From body positivity to Islamophobia, anyone can walk up to the mural and identity with at least one of the letters and feel seen."

One example of the way the mural includes different marginalized communities is the "font" for the letter "K" in the word "Black." It is rendered as the hand-shape for "K" in the finger-spelled alphabet from American Sign Language.

The task force that recommended the new names for Jordan Avenue was appointed by Bloomington's mayor John Hamilton. The task force's report describes the reason a new name was sought for Jordan Avenue: "The views of David Starr Jordan on eugenics and racial differences conflict also with the City's commitment to promote inclusion and equity in the community..." The task force started its work in April.

It's the city plan commission that has the final word on street renaming in Bloomington.  The earliest the renaming of Jordan Avenue would be on a plan commission meeting agenda is Aug. 9, the date of the commission's next regular meeting.

**Photos: BLM Mural Painting (July 5, 2021)**





Nearly complete BLM mural looking north on the street to be renamed as Eagleson Avenue. (July 5, 2021)

**Tagged:**   Black Lives Matter,  BLM,  Eagleson Avenue,  Fuller Lane,  Jordan Avenue,  mural,
street mural

<   $32K lawsuit payout for scooter crash on bad concrete: A quick look at Bloomington's plan for sidewalk
repair

Likely response to new charges in year-old Lake Monroe incident: Challenge to special prosecutor's
jurisdiction   >

## Leave a Reply

## News at IU Bloomington

**CAMPUS LIFE**

# Around IU Bloomington

**BY INSIDE IU BLOOMINGTON**

July 13, 2021

  

## All-inclusive Black Lives Matter mural debuts



Exhibit 3D

A Black Lives Matter mural is painted on Jordan Avenue at IU Bloomington. *Photo by James Brosher, Indiana University*

Tiera Howleit, an IU student who founded Black Collegians <https://www.blackcollegians.com/> , worked with fellow student Joa'Quinn Griffin and artists Katie Scott, Olivia Roath and Ronny Booker to bring an all-inclusive Black Lives Matter mural <https://twitter.com/IUBloomington/status/1413219770896457728?s=20> to IU Bloomington's campus.

The mural is painted on Jordan Avenue near Seventh Street, outside the Neal-Marshall Black Culture Center. Each letter of the mural is meant to represent a different marginalized group on campus.

## IU rededicates Lilly Library





Watch | Home | Live | Music | Shows | Explore | Saved Videos | Your Watchlist | Search videos

0:00 / 0:14

**Construction begins for our Black Lives Matter Street Mural on Jordan Avenue this Morning. What an exciting time! #BlackCollegiansInc...**

Like | Comment | Share — 4 · 168 Views

Black Collegians
July 2, 2021 · Bloomington, IN
Construction begins for our Black Lives Matter Mural on Jordan Avenue this Morning. What a
See more

Be the first to leave a comment.

Write a comment...

Ben Shapiro
Today at 10:07 AM
LIVE: Supreme Court Hears Arguments about Biden's Vaccine Mandate
LIVE: Supreme Court Hears Arguments about Biden's Vaccine Mandate | The Supreme Court...
See more

LIVE 6.5K

Visit the COVID-19 Information Center for vaccine resources.
Get Vaccine Info

Explore More Videos on Watch

Home | Live
Music | Shows

Sneakerheads

how to dye yo
BuzzFeed

Something Ev
Sneakerhead
Bleacher R

Match The Sn
The Person | L
WatchCut

Exhibit 3E



53C06-2202-PL-000361
Filed: 2/23/2022 6:03 PM
Clerk
Monroe County, Indiana
Monroe Circuit Court 6

Search Twitter

**IU Bloomington** @IUBloomington

Black Lives Matter.

Thank you to the Black Collegians group for bringing this mural to life on our campus.

← **Thread**

14.1K views 0:00 / 0:28

3:33 PM · Jul 8, 2021 · Twitter Web App

**92** Retweets **10** Quote Tweets **723** Likes

**IU Bloomington** @IUBloomington · Jul 8, 2021
Replying to @IUBloomington
You can check it out at 7th and Jordan Ave between the Neal Marshall Black Culture Center and the Groups building.

Artists: Katie Scott, Olivia Roath, Ronny Booker

Special shoutout to: Tiera Howleit, Joa'Quinn Griffin, Damorion Page

1 3 66

**IU Bloomington** @IUBloomington · Jul 8, 2021
Follow @BCollegians to see what other projects and initiatives they have coming up in the future.

**Black Collegians** @BCollegians · Jul 7, 2021
For the past year, our President and Founder @officialtiera co-lead an initiative with @joa_quinng to create an all inclusive mural at Indiana

**New to Twitter?**
Sign up now to get your own personalized timeline!

Sign up with Google

Sign up with Apple

Sign up with phone or email

By signing up, you agree to the Terms of Service and Privacy Policy, including Cookie Use.

**Relevant people**

**IU Bloomington** @IUBloomington Follow
The official Twitter feed from @IndianaUniv Bloomington, forever home to the Hoosiers.

**What's happening**

NCAA Men's Basketball · Last night
**Beach at Bruins**

**Reuters** · Yesterday
**Fresh violence in Kazakhstan after Russia sends troops to quell uprising**

**Bloomberg Quickt...** · Yesterday
**These are the 5 people who died in the January 6 Capitol riot**

Movies & TV · Trending
**#BadBuddySeriesEP10**
356K Tweets

Soccer · Trending
**Coutinho**
Philippe Coutinho is to spend the rest of the season on loan to Aston Villa
Trending with Aston Villa

Show more

Terms of Service Privacy Policy Cookie Policy Accessibility Ads info More ···
© 2022 Twitter, Inc.

**Don't miss what's happening**
People on Twitter are the first to know

Log in **Sign up**

Exhibit 3F



Search Twitter

IU Provost
@IUBProvost

The Black Collegians finished the amazing Black Lives Matter mural on Jordan Ave. If you're on the @IUBloomington campus, check it out between

Thread

9:40 AM · Jul 6, 2021 · Twitter Web App

**112** Retweets **13** Quote Tweets **680** Likes

**IU Provost** @IUBProvost · Jul 6, 2021
Replying to @IUBProvost
If you'd like to learn more about the Black Collegians, get involved, or donate, check out their website at

blackcollegians.com
HOME | Blackcollegian

1 7

**Reatha. F Thomas** @ReathaFThomas1 · Jul 6, 2021
Replying to @IUBProvost @IUBloomington and 2 others
No thank you!

1 1

Show replies

Show more replies

## More Tweets

**Nick Kelly** @_NickKelly · Jan 5
Jameson Williams on Crimson Crane movement:
Said it's exciting "how the Alabama family is behind you and how we're all together, it's just exciting seeing things like that."

## New to Twitter?

Sign up now to get your own personalized timeline!

Sign up with Google

Sign up with Apple

Sign up with phone or email

By signing up, you agree to the Terms of Service and Privacy Policy, including Cookie Use.

## Relevant people

**IU Provost** Follow
@IUBProvost
The official Twitter feed of the IU Bloomington Office of the Provost | #IUisHome

**IU Bloomington** Follow
@IUBloomington
The official Twitter feed from @IndianaUniv Bloomington, forever home to the Hoosiers.

**NMBCC** Follow
@NMBCC_IU
The Neal-Marshall Black Culture Center....Where you belong! Celebrating 50 years of Power, Progress and Promise.

## What's happening

NCAA Men's Basketball · Last night
**Trojans at Golden Bears**

Reuters · Yesterday
**Fresh violence in Kazakhstan after Russia sends troops to quell uprising**

Thomson Reuters ... · Yesterday
**How could the world tackle crypto in 2022?**

Politics · Trending
**OSHA**
7,375 Tweets

Trending in United States
**#RIPNeilPeart**

Show more

Don't miss what's happening
People on Twitter are the first to know.

Log in Sign up

Exhibit 3G



## B SQUARE
### B U L L E T I N



---

# Activist on "BLACK LIVES MATTER" mural overlay: "It's something we can all dance to."

👤 Dave Askins    📁 Bloomington, Local Government    🕐 June 27, 2020    ☰ 5 Minutes



Exhibit 4A



Sometime mid-afternoon on Friday a week ago, an anonymous artist, not commissioned by the property owners, drew new letters across the mural in Bloomington's People's Park, spelling out the words: "BLACK LIVES MATTER."

That's the way the mural will look for at least the next few months, Bloomington city officials have said. And some local activists would like the wall to be preserved as it is.

Indiana University professor of history Amrita Chakrabarti Myers told The Square Beacon: "I would prefer to see it left the way it sits now—as a historian, but also as a social justice activist." Myers is a member of BLM B-town's core council.

Bloomington's assistant director for the arts, Sean Starowitz, told The Square Beacon that the possibility of preserving the "BLACK LIVES MATTER" lettering is not being ruled out. But that outcome would have to be the result of the public process he's looking to start with the city's art commission, which next meets on July 8.

The unauthorized contribution to the mural coincided with Juneteenth, the holiday celebrating the emancipation of slaves in United States.

It also came in the context of nationwide and local demonstrations, prompted by Minneapolis police killing of George Floyd, a 46-year-old Black man, along with other recent police killings of Black men and women. Floyd was killed on May 25 by Minneapolis police officer, Derek Chauvin, when the police officer pinned Floyd down with a knee-on-neck hold.

The message "Defund BPD" (Bloomington Police Department), spray-painted into a blank light-blue background field in the upper right of the People's Park mural, has been painted over.

In the short term, the city of Bloomington won't be trying to remove the "BLACK LIVES MATTER" lettering, for at least a couple of reasons. One is that the approach of high-pressure washing, which can work for latex layered over oil-based paint, won't work in this case, according to Bloomington's assistant director of the arts, Sean Starowitz.

"It's latex and latex, and the damage would be a complete redo," Starowitz said. The 2017 mural, done by artist Eva Allen, wasn't clear-coated or covered in an anti-graffiti coating, Starowitz said.

A second reason is that the agreement between the artist and the city ends in August, which points to the city's intention all along to cycle through to another mural after a few years. Under that agreement, if the city wanted to paint over the mural, the artist would have 30 days to "remove" the mural—based on the Visual Artists Rights Act.  Starowitz described the law as designed to protect conceptual and intellectual rights.

So there's little interest in trying to address the current condition of the mural except in the context of planning for the next mural.

The next mural, Starowitz told The Square Beacon, would likely use a request for qualifications (RFQ) process, as opposed to a request for proposals (RFP). That would allow the selection of an artist first, before a specific work is proposed. Starowitz wants the budget for the next mural to be bigger than the one Eva Allen had.

Allen was paid $1,450 to create the work. The Bicycle Garage, which owns the wall where the mural is painted, contributed $200 dollars for materials, Starowitz said. Starowitz thinks a budget between $3,000 and $5,000 might be possible for the next mural.

The Bicycle Garage, Starowitz said, ultimately has a say in the future of the mural.

Starowitz told The Square Beacon that the politics of public spaces like Bloomington's People's Park is complicated. The history of the park is "rich, complex, and traumatic," Starowitz said, including the 1968 firebombing of the Black Market that previously stood there.

More recently, Starowitz said, the unveiling of the current mural three years ago came at a time when the city was discouraging use of the park by those without permanent homes and moving them out of the area. So the mural's slogan, "You belong here!" was criticized as ironic. He himself was called an "art washer," Starowitz said.

Given the park's history, the call for artists would go out to BLM B-town, Neal-Marshall Black Culture Center, First Nations Educational & Cultural Center, among others, Starowitz said.

The wording for the call would say the city is particularly interested in hearing from artists from traditionally underrepresented communities and that the applicants would be evaluated based on how well they could meet the objectives and goals of the project, according to Starowitz.

Jada Bee, who's a board member of Democracy for Monroe County and a member of BLM B-town's core council, told The Square Beacon, she thinks the mural should be left in its current condition.

Jada Bee added: "Whatever happens, it needs to be a Black artist calling the shots."

"It should be sanctified as a Black art space. The artist should be given free rein in the creative process and the city should not be able to censor it. Any kind of change should from a Black artist working with the Black community," Jada Bee said.

For Myers, the historian, the two layers of the mural now tell the story better than any fresh mural could. "A fresh, new mural would do a disservice to the layered historical struggle," she said. "This country is rooted in white supremacy," Myers said, "and we have been screaming 'Black Lives Matter' for centuries, but none one listened."

Myers called the present a "revolutionary moment." She said that to replace what is now a two-layered mural would lose the story of the struggle. The two-layered mural now tells all at once a story of competing narratives, Myers said.

In addition to the historical value of preserving the "BLACK LIVES MATTER" lettering, Jada Bee sees artistic merit in it.

Other have commented on the fact that the letters seem to reflect thoughtful, intentional choices. They're wedged between the existing text, which is left uncovered: "Welcome to" in the upper left and "You belong here!" in the lower right. The mural now reads in sum: "Welcome to BLACK LIVES MATTER you belong here!" The shapes of the letters seem to echo the shapes in the letters of the word "Bloomington" in the original mural.

What about the choice of fill-color for the letters? Could the Caucasian-flesh-color be analyzed as a part of an ironic commentary? That wasn't anything that occurred to Jada Bee.

She told The Square Beacon that when she first saw the lettering, she thought, "Oh, they used *pink*, so it's 'Queer Black Lives Matter!'"

Jada Bee told The Square Beacon she grew up watching various graffiti artists in Bloomington. Even graffiti tagging—when someone is just painting their stylized name in a public space—is artistic social commentary, she said: "It takes a corporate-city-state sponsored space and says, 'I am here as well.'"

The "BLACK LIVES MATTER" lettering over the top of the mural "took a meaningless picture about culture and diversity and turned it into something true," Jada Bee said.

On the question of whether to leave the letters intact or to paint over them, Jada Bee said it made her recall years ago how a local business had a mural that showed a group of people dancing—mostly white people. Someone spray-painted onto the mural stenciled letters: "It would take us all." The business owners painted it over. It was re-stenciled. Back and forth it went. Eventually, the business owner just left the words, Jada Bee said.

The "BLACK LIVES MATTER" lettering could be handled like the stenciling on the mural of the people dancing, Jada Bee said. The mashup of the original People's Park mural with the new "BLACK LIVES MATTER" lettering is now like a mixed tape, Jada Bee said: "It's something we can all dance to."

**Like this:**

Like   

One blogger likes this.

**Tagged:**   artist,  Black Lives Matter,  mural,  People's Park

‹  Advisory groups give green light to city council on 7th Street: Remove parking for protected bicycle lane

A Summer Three-Day Getaway▸
A Fall Three-Day Getaway▸
A Winter Three-Day Getaway▸
A Learning Day in Bloomington▸
A Memorable Day in Bloomington▸
A Healthy Day in Bloomington▸
A Discovery Day in Bloomington▸
A Hoosier Day in Bloomington▸
A Family Fun Day in Bloomington▸
An Inexpensive Day in Bloomington▸
A Culinary Day in Bloomington▸
Not Bad For A Tuesday in Bloomington▸
A Rainy Day in Bloomington▸
Make A Plan✚
    Make A Plan▸
    E-Newsletter Sign Up▸
    Request a Visitors Guide▸
    Virtual Visitors Guides▸
    Visitors Centers▸
    Maps & Transportation ▸
        Get Driving Directions▸
        Interactive Maps▸
        Transportation▸
        Downtown Parking▸
        IU Campus Parking▸
    Weather▸
    Special Offers▸
    Media Gallery▸

🔍



# MIDDLE WAY HOUSE 2021 - 2022 WRAPPED IN LOVE PUBLIC ART DISPLAY

October 1, 2021 - March 1, 2022  |  Recurring daily  |  Downtown Bloomington  |  Bloomington, IN  |  (812) 333-7404  |  All Day  |  Free

Visit Website

## DETAILS

Just as Middle Way House wraps survivors of domestic violence, sexual assault, and human trafficking in warmth and support, fabric artists lovingly created tree sweaters for dozens of downtown Bloomington trees.

The tree sweaters will be prominently hung throughout numerous locations in the heart of Bloomington and feature our help and crisis hotline phone number in hopes of raising awareness about domestic violence. The public art display will span nearly six months, coinciding with the beginning of Domestic Violence Awareness month in October and end March 1st, 2022.

Exhibit 4B

Each beautiful tree sweater is sponsored by a business, person, or organization committed to helping us provide meaningful alternatives to living with violence. Each tree sweater will have a sponsorship patch containing sponsor names and our 24/7 help and crisis line phone number to be seen by tens of thousands of residents and many of the nearly 2 million annual visitors to Bloomington. It is imperative that we include our crisis number on the sponsorship patch because last year, our help and crisis line answered over 5,000 calls, and we provided nearly 7,000 nights of emergency shelter to survivors of domestic violence.

We are hoping to elevate the event this year as we celebrate 50 years in the community and have gathered a tremendous group of volunteers to craft and maintain the tree sweaters throughout the year. 💜 Our volunteer need for Wrapped in Love has been fulfilled! Thank you!

On October 1st, join us at our Yarn Cutting Celebration and help us celebrate 50 years in the community and the beginning of our annual Wrapped in Love Public Art Display outside of the Monroe County Courthouse lawn ad show much love to the sponsors, fabric artists, and volunteers that made this event possible!

We would like to thank our Volunteer Event Chair, Erin Hollinden, the fabric artists, and our current sponsors for all their support!

Fabric Artists:
Mia Altholz
Sandi Taylor
Linda Handelsman
Tara Babcock
Erin Hollinden
Christopher DeYoung (Development Chair)
Danielle Bruce
The Knit Wits
Joan Hongen
Mary Lostutter
Alpha Phi Omega Fraternity
Jackie Vest
Vicky Haralovich
Gamma Phi Omega International Sorority, Inc.
Alyssa Marie McPherson
Peg Smith
Cathy Lipscomb
Orchard Enthusiasts (Bloomington community orchard knitting group)
North Staff and Families (North high school knitting group)
Ana Lim
Holly Bui
Knitting Nomads
Beth Shalom's Knitwitz
Kalie Chuke
Tina Haley
Peggy Daniels


Gold Leaf Sponsors ($2,500+):
Anna Strout in honor of Toby Strout, Martha Voyles, Ekah Yoga, and the People's Market
Bob Arnove
Ivy Tech -Bloomington, Indiana
DeAngelo's Restaurant


Silver Spruce Sponsors ($1,000+):
Plant Brothers Excavating

Cook Medical
ISU the May Agency
Vibrant Life/Clark Brittain
WFHB
IU Health
Middle Way House Board of Directors

Bronze Birch Sponsors ($500+):
Susie Sullivan
Garry Johnson
Patrick Bratlinger
Lahn Law Offices
Jellison Family
Anonymous
Family Dental Centre
Pictura, FAR Gallery
Haralovich Properties
Loren Wood Builders
Shine Insurance
FASTSIGNS

Copper Maple Sponsors ($300+):
Danielle Bruce
geoConvergence
Christopher DeYoung
Paul Laudeman
Tara and Bob Babcock
Smile Promotions
Applegate Consulting Co.
The Ryder
Ruth's Daughters
Hometown Insurance Group
MPI Solar
Bloomington Stitchery
BHSN Project Middle Way
Hopscotch Coffee
Hoosier Heights
Muddy Fork
The Goat Conspiracy

If you are interested in becoming a Wrapped in Love sponsor, please contact Maddie at development@middlewayhouse.org for more information.
Thank you in advance for your love and support!

If you are in need of help, please call our confidential 24/7 Help and Crisis Line at (812) 336-0846.

 beINvolved

SIGN IN



# Wrapped in Love

📅 **Date and Time**
Saturday, September 25 2021 at 10:00 AM EDT to
Saturday, September 25 2021 at 11:00 AM EDT

Add To Google Calendar |
iCal/Outlook

📍 **Location**
Southwest Corner of the Bloomington town square
100 N Walnut St, Bloomington, Indiana
View Map

## Description

Help MiddleWay House Wrap the trees in the town square on September 25th at 10am!

## Host Organization

 Psychology Club at Indiana University

Exhibit 4C

Privacy    Support

© Campus Labs 2022

## Alumni Association



# Parade Guide
## Homecoming Parade Guide

Each year, we kick off Homecoming weekend with a Friday evening parade—an event that showcases IU student groups and local community organizations. To participate in the parade, please review the following information and apply by 5 p.m. on Oct. 8.

**Apply for a parade entry <https://iuaa.imodules.com/2021-hoco-parade-entry>**

## Important Dates for IU Homecoming 2021

| Date | Description |
|------|-------------|
| Friday, Oct. 8 | Parade entry forms are due by 5 p.m. |
| Monday, Oct. 11 | Mandatory meeting for all parade participants at either 6 p.m. or 7 p.m.* All entries will receive their lineup order and time at this meeting.<br>*Let us know as soon as possible if you are unable to attend either time. |

Exhibit 4D

| Date | Description |
|---|---|
| Friday, Oct. 15 | Staging and lineup starts at 4:30 p.m. in the Assembly Hall Green Lot. The parade begins at 6 p.m. at the intersection of 17th Street and Woodlawn Avenue, runs south on Woodlawn, turns east on 13th Street, turns north on Fee Lane, then heads west back to 17th and Woodlawn. |

## Parade Policies, Rules, and Resources

Before completing the Parade Entry Form, please review the following guidelines and regulations for all parade participants and entries.

> Please note: All entries are subject to approval from the IU Alumni Association. We reserve the right to refuse any entry that is not in good taste, does not follow guidelines, or is not in the best interest of IU's Homecoming festivities.

### Participating in the Parade ╋

- Each parade entry must submit the Parade Entry Form (currently and briefly describe their entry design).
- Organizations may partner with another organization and participate in the parade together.
- Staging and lineup begins at 4:30 p.m. Please arrive at your designated time—this will help ensure a smooth setup and a prompt start. Ahead of the event, more information regarding lineup assignments will be sent to the person of contact for each entry.

### Definition of Entry Types ╋

- **Float:** Anything being pulled by a vehicle or a self-propelled wagon. If your organization is using something other than a vehicle to pull the float, permission must be obtained.
- **Decorated Car:** A vehicle requiring a standard automobile license to operate and is decorated in accordance with the Homecoming theme.
- **Walking:** Any group walking through the parade with similar dress style, synchronized movement, or organized choreography.
- **Musical:** A group of people walking together while playing music or instruments.

### Number of Entries and Point of Contact ╋

- An organization may participate in the parade with one of each type of entry: one float, one decorated car, and one walking entry. Each entry will be judged separately, and there is no guarantee that multiple entries will be grouped together in the final lineup.
- The IUAA has the right to refuse any parade entries that are in direct conflict with the mission, values, and goals of the university.
- In questionable situations, the IUAA will determine the type of entry.
- It is important that we have accurate contact information for every entry submitted. Each organization must select a point of contact for each entry—someone who will be present with the entry throughout the entire parade. If an organization has more than one entry, each entry must have a different point of contact.
- All float entries must also select two representatives to be their float safety monitors. These people will help monitor the float lineup area. These individuals' names must be submitted on the Parade Entry Form and they must attend one of two mandatory parade meetings.

## Participant Prizes    +

- Entries will compete in one of four divisions: float, decorated car, walking, or musical.
- The winner will receive on-field recognition, a trophy, and a $100 gift card to Pizza X.
- Political entries are excluded from winning prizes.

## Judging and Points    +

Entries will be judged using a five-point scale on the following criteria:

### Floats and Cars

- **Theme:** The organization(s) incorporation of the Homecoming theme.
- **Participation:** All organization members displaying the theme.
- **Creativity:** Use of imagination or original ideas in relation to the theme.
- **Presentation:** The appeal of the entry to spectators and judges.
- **Construction:** The attention to detail, quality, and use of movable parts.
- **Name Display:** The organization's name prominently displayed in an original way.

### Walking and Musical Entries

In addition to theme, participation, creativity, and presentation, Walking and Musical entries will be judged on the following criteria:

- **Dress/Costumes:** Wardrobe relates to the theme.
- **Choreography:** Success of synchronized or organized movements.

## Requirements for Floats and Participants                                    +

- The number of participants riding on the float during the parade must be estimated when completing the float entry form.
- Please remember that because of traffic signals and other obstructions, floats must be **less than 13 feet in height** and **less than 20 feet wide**.
- Each parade entry will be given a banner to identify the sponsoring organization. Organizations will need to provide two volunteers to walk the parade route with their banner.
- All entries must be constructed of fire-resistant materials as required by fire codes.

## Miscellaneous Rules and Information                                          +

- Candidates running for political office must be sponsored by an on-campus student organization to participate in the parade. No speeches for candidates will be allowed, and an off-campus entry form is required.
- All candy must be sealed and individually wrapped. Candy **may not** be thrown into the crowds.
- A representative from each student and campus organization must attend one of two mandatory parade meetings. If an organization does not have a representative present for at least one of the two parade meetings they will not be allowed to compete in the parade. Each meeting will last an hour and will discuss lineup procedures and general parade safety.

## Alcohol Promotion and Use                                                    +

- Companies promoting alcohol (Budweiser, Big Red, etc.) cannot be used as float sponsors.
- All community entries are prohibited from displaying or distributing any information regarding alcohol—this includes the display of alcoholic beverage company logos.
- An entry may be removed from the parade and competition if, in the opinion of an IUAA representative, the entry is operated in a hazardous manner or because of the misbehavior of individuals associated with the entry. **Entries will be removed immediately if the presence of alcohol is detected.**
- The IUAA reserves the right to do spot checks of any entries if alcohol use is suspected. The Indiana University Police Department will also be present in the lineup area to confiscate any alcohol present. They will cite and/or arrest persons they feel violate alcohol laws (public

intoxication, minor in possession, driving under the influence, etc.) *Alcohol related situations will most likely result in the immediate disqualification of your entry, even if the entry is shared with multiple organizations and other groups participating are uninvolved in the situation.*

- The consumption of alcoholic beverages or use of any illegal substance by participants prior to and during the parade is strictly prohibited.

## Questions?

Contact Eryn Wisler at ewisler@iu.edu or 812-855-4664 for more Homecoming and parade information.

**VOLUNTEER INTRANET <HTTPS://OUR.INDIANA.EDU>** |

**STAFF INTRANET <HTTPS://OUR.INDIANA.EDU/IUAA-STAFF-INTRANET/>**



# Constitution of Turning Point USA at Indiana University

**Article I: Purpose**

The purpose of this organization (TPUSA at IU) is to educate students about the importance of freedom, free markets, and limited government and to empower conservative activists on campus to combat left-leaning and progressive policies at the university, state, and federal level.

Beyond educating students on political, economic, and cultural issues, the chapter should strive to mobilize its network to participate in activism, issue advocacy, the public policy process, and grassroots organization.

TPUSA at IU should additionally strive to be continually growing and evolving through stimulating and compelling events that encourage membership and continued involvement in the organization. The chapter should identify student activists across campus who believe in limited government and individual liberty and encourage them to participate in the organization's mission.

The establishment of this organization is meant to provide the Indiana University campus with a viewpoint that students and other members of the university community may seldom otherwise be exposed to. Conservative thought and expression are severely lacking on campus and it is essential for an institution of higher learning to encourage and facilitate a diversity of opinion.

This organization is also meant to serve as a club where conservative students and members of the campus community can share their thoughts and opinions without feeling ostracized or uncomfortable.

**Article II: Membership**

Membership in TPUSA at IU shall be open to all interested full- or part-time students at Indiana University.

Exhibit 5



The chapter allows any interested student to participate in, become a member of, and seek leadership positions in the organization without regard to arbitrary consideration of such characteristics as age, race, disability, ethnicity, gender, religion, sexual orientation, marital status, or veteran status.

Interested students may inquire about the organization by contacting any of TPUSA at IU's officers or other organization leadership and may join through the chapter's beINvolved page.

While not required, members are encouraged to attend official TPUSA at IU meetings and events.

Members may be expelled by a majority of the executive board, or by a two-thirds majority of the members. Reasons for expulsion can include, but are not limited to, being found guilty of violating the university or the organization's conduct code, exhibiting conduct unbecoming of a member of the organization, breaking any state or federal statutes, violating university policy, violating policies of the national Turning Point USA organization (TPUSA), or violating this constitution.

If a member is being considered for expulsion, they must be given a chance to argue their case in front of the applicable body.

**Article III: Executive Positions**

Section A: Positions and Responsibilities

There shall be six executive officers within TPUSA at IU. The positions are as follows: president, director of operations and communication, vice president, treasurer, secretary, and events manager. These positions shall make up the executive board of TPUSA at IU and shall be collectively responsible for leading and managing the organization. The executive board is encouraged to meet regularly, and meeting times and locations are to be decided by the secretary. Meetings are to be presided over by the secretary or president, unless the purpose of the meeting is to discuss the removal of either of those two officers. If the meeting is to discuss the removal of an officer, then that officer cannot preside over the meeting. If, due to this stipulation, neither the president nor the secretary is able to preside over the meeting, the faculty advisor or another officer may preside. At least half of the officers must be present at executive board meetings in order for quorum to be met. While the responsibilities and the



powers of the officers are somewhat fluid, the major responsibilities, duties, and powers of each officer are laid out below.

The President: The president, in consultation with the events manager and director of operations, shall organize, preside over, and lead all official organization meetings. The president, if otherwise unavailable, may assign another officer to lead and preside over a meeting. Meetings shall be held weekly or biweekly and should reflect the mission of the chapter and should be engaging, thought-provoking, and of general interest for the majority of members. The president shall ensure that the organization is registered with the university, in compliance with all university mandates, recognized by TPUSA as an official chapter, and in agreement with all TPUSA regulations. The president is responsible for executing the mission of the chapter and ensuring that all facets of the organization are operating effectively. The president is, for all intents and purposes, the administrative head of the organization.

The Director of Operations and Communication: While the president's general focus is administrative, the director of operations and communications has prevailing authority over the internal operations, affairs, transactions, and dealings of the chapter. Additionally, the president is tasked with running chapter meetings, however, events; financial and legal matters; chapter initiatives; extended dealings with outside parties, such as TPUSA, other student organizations, law firms, or fundraising groups, that are non-administrative in nature; and other overarching operational concerns fall under the purview of the director of operations and communication. The director of operations and communication shall act as an agent of the chapter when contracting with outside parties and has sole and unfettered authority to contract with outside parties. Organization wide and marketing communications are also delegated to and under the control of the director of operations and communication. Marketing and promotion of the chapter and chapter events are therefore also headed by the director, as are all other operational activities not expressly named.

The Vice President: The vice president shall also oversee and assist in internal chapter matters including, but not limited to, events, finance, marketing, tabling, and meetings. The vice president should also assist the president and the director of operations and communication when working with TPUSA. Of all the officer positions, the vice presidency is the most fluid. The vice president, while a full executive officer of the organization, generally serves under the director of operations and communication as both positions are tasked with organizing the internal proceedings of the chapter.



Treasurer: The treasurer shall oversee all financial matters including banking, IRS compliance, budgeting, fundraising, and the management of donations. The treasurer is a full executive officer, but reports to the vice president and, ultimately, the director of operations and communication, as finance falls within the purview of both those positions. The treasurer serves as the chief financial officer of the organization.

Secretary: The secretary is the chief record keeper for the organization. Beyond presiding over board meetings, the secretary should consult with the president and director of operations and communication to establish an agenda for meetings. The secretary should also make note of major decisions made by the board. The secretary should assist the director of operations and communication in communication matters and serves under the director of operations and communication and the vice president when undertaking matters related to the internal operations of the chapter. The secretary is also responsible for the maintenance of and ensuring chapter compliance with this constitution and the running of elections.

Events Coordinator: The events coordinator is responsible for, in conjunction with the director of operations and communication and the vice president, the planning, marketing, and execution of chapter events. The events coordinator is an executive officer but fully serves under the director of operations and communication and the vice president. The events coordinator should organize events that further the chapter's mission, encourage attendance, and bolster chapter membership. Events include speaker lectures, activism events, viewings, social events, and other organization-wide activities that are in compliance with the previously stated guidelines.

Social Media Manager: The social media manager is not an executive officer, meaning they do not serve on the board. They are, however, still a chapter officer and serve under the director of operations and communication. The social media manager is responsible for the maintenance, growth, and promotion of the chapter's social media accounts and pages. They should employ an effective strategy that increases the chapter's following and presence on social media, advertises the chapter's events and activities, and engages students with the chapter's pages.

Section B: The Election and Appointment of Officers

All members are eligible to hold officer positions unless they hold other positions on campus that may conflict with their responsibilities as an officer should they be elected or appointed. If a concern about ineligibility is raised, the issue shall be decided by a vote of the executive board. An affirmative four-sixths vote of the executive board



members is needed in order to declare a member ineligible to serve in an officer position. Any concerns regarding ineligibility must be made known and settled prior to the election in which the member is running or 72 hours after their appointment.

The president, vice president, treasurer, secretary, and events coordinator shall all be elected by a simple majority vote of members. The initial holders of those positions following the adoption of this constitution are exempted from this requirement and will be appointed. Elections shall be held before the end of the Fall semester. Elections shall be run by the secretary and the results and vote totals shall be made known to all members immediately following the election. Additionally, the secretary must make known to all members the date and location of the election at least two weeks prior to the election. No member may run for more than one position. Members may declare their candidacy for an officer position up to and until the election has begun. Members must communicate their candidacy to the secretary. The secretary shall make known to all members the candidates for each position as he or she receives members' declarations of candidacy. If and only if the election results are disputed, the secretary shall make each member's vote known to the party or parties disputing the results.

The sitting president shall appoint members to any positions that remain empty after the election.

The director of operations and communications shall be the TPUSA campus coordinator for Indiana University. If there is no campus coordinator, then this position will be appointed by the president. The director of operations and communications shall appoint the social media manager and they will serve at the pleasure of the director of operations and communications.

Officers shall serve for the Spring, Summer, and Fall semesters following their election or appointment. The first election shall be held in the Fall semester of the 2022-2023 academic year.

If an executive officer is removed or is no longer able to serve in their position then a special election shall be held to elect a new officer to fill the vacancy. This does not apply if the officer who is removed or is no longer able to serve is the director of operations and communications. If that is the case, the president will appoint someone to fill the vacancy. Officers elected or appointed to fill a vacancy will serve until the end of the term of the officer whose position they filled. Special elections shall be run by the secretary unless the special election is for the position of secretary. If that is the case, then the election may be run by the faculty advisor, the vice president, or the director of



operations and communication. Members must be notified of the date and location of special elections at least one week prior to the election.

Section C: The Removal of Officers

Executive officers can be removed from their position by a vote of two thirds of the members or four officers.

Reasons for removal can include, but are not limited to, not fulfilling one's duty, being found guilty of violating the university or the organization's conduct code, exhibiting conduct unbecoming of an officer of the organization, breaking any state or federal statutes, violating university policy, or violating this constitution.

If an officer is being considered for removal, they must be given a chance to argue their case before the applicable body.

**Article IV: Advisor**

The advisor should provide advice and assistance to TPUSA at IU. While the advisor is not a member of the executive board, he or she may work with the executive board in order to assist them with their duties.

**Article VI: Code of Conduct and Compliance With the Rules and Regulation of Indiana University**

Statement of University Compliance: This organization shall comply with all Indiana University regulations and local, state, and federal laws.

Anti-Hazing Policy: Hazing is strictly prohibited. Hazing shall be defined as any conduct which subjects another person, whether physically, mentally, emotionally, or psychologically, to anything that may endanger, abuse, degrade, or intimidate the person as a condition of association with a group or organization, regardless of the person's consent or lack of consent.

Personal Gain Clause: This organization, if raising funds, shall ethically raise and distribute profits from organizational functions to either the organization or to members who provide a service that directly benefits the organization. Individual members may not receive compensation from for-profit companies if acting as a representative of a student organization.



Programs Involving Children: This organization, when working with children, will be aware of and abide by the university's Programs Involving Children (PIC) Policy.

International Travel: This organization, when traveling internationally, will coordinate their travel through the Office of Overseas Study.

**Article VII: Amendments**

Amendments to this constitution must be passed by an affirmative vote of four sixths of the officers as well as an affirmative simple majority vote of members. Amendments may be proposed by any member.

Filed: 2/23/2022 6:03 PM
Clerk
Monroe County, Indiana
Monroe Circuit Court 6

| | | | |
|---|---|---|---|
| STATE OF INDIANA | ) | | IN THE MONROE COUNTY SUPERIOR |
| | ) | SS | COURT |
| COUNTY OF | ) | : | CIVIL DIVISION, ROOM NO. |
| MONROE | | | CAUSE NO. 53C06-2202-PL-000361 |

INDIANA UNIVERSITY CHAPTER )
OF TURNING POINT USA, and )
)
KYLE REYNOLDS, )
)
          Plaintiffs, )
)
     vs. )
)
CITY OF BLOOMINGTON, INDIANA, )
ADAM WASON, in his official capacity as )
Director of Public Works for the City of )
Bloomington, and KYLA COX DECKARD, )
BETH H. HOLLINGSWORTH and DANA )
HENKE in their official capacities as )
members of the Board of Public Works of )
the City of Bloomington, Indiana, )
)
         Defendants. )
)

## **Declaration of Kyle Reynolds**

I, Kyle Reynolds, under penalties of perjury, affirm that the following

statements are true to the best of my knowledge, information, and belief:

1.    I am over the age of twenty-one (21).

2.    The statements contained in this declaration are based on my personal

knowledge and are true and accurate to the best of my knowledge, information, and

belief.

3.    I understand that the statements made in this declaration will be

submitted to the Court in connection with the above-captioned case.

Page **1** of **6**

Exhibit 6

4.     I am a student at Indiana University, Bloomington ("IU") and am the campus coordinator for Indiana University Chapter of Turning Point USA ("TPUSA-IU") and the President of The Crimson Post, which are two self-governed student organizations on the IU campus (collectively, the "IU Student Organizations").

5.     TPUSA-IU is a membership organization of students on the IU campus.

6.     I am an authorized agent of TPUSA-IU and a current resident of Bloomington, Indiana.

7.     TPUSA-IU seeks to identify, educate, train, and organize students to promote principles of freedom, free markets, and limited government.

8.     Among these principles is commitment to a robust exchange of ideas and the belief that all lives matter.

9.     In July of 2021 a group of students at IU designed, painted, and funded (in part through student activity fee funding obtained through the IU Funding Board) a "Black Lives Matter" mural on a street running through campus.

10.     The "Black Lives Matter" statement is contradictory to Plaintiffs' core principles from the standpoint that it is connected to a political ideology that ultimately seeks to divide and alienate individuals based on characteristics such as skin color.

11.     Therefore, TPUSA-IU and I sought to express our own view that All Lives Matter by creating a similar mural on a public right-of-way on the IU campus.

12.    TPUSA and I, as its campus coordinator, sought to paint on a public right-of-way on the IU campus a mural stating, "All Lives Matter."

13.    However, as explained in the Complaint for Declaratory and Injunctive Relief filed in the above-captioned case (the "Complaint") our request to paint a mural stating All Lives Matter was denied by the Board of Public Works of the City of Bloomington through its Director and City Attorney.

14.    I have reviewed the factual allegations in the Complaint and affirm that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

15.    I have also reviewed the documents submitted in Appendix of Exhibits to be submitted in the above-captioned and affirm that they are authentic, true and accurate documents to the best of my knowledge, information, and belief.

16.    From July 20, 2021 to August 2, 2021, on behalf of the IU Student Organizations, I communicated via email with various IU representatives regarding the creation of an "All Lives Matter" mural on the IU campus. *See* Exhibit 1B of the Appendix of Exhibits.

17.    The final proof of the "All Lives Matter" mural we proposed is accurately depicted in Exhibit 1F of the Appendix of Exhibits.

18.    On July 29, 2021 and August 1, 2021, on behalf of the IU Student Organizations, I sent emails to the Bloomington Public Works office regarding a permit for an All Lives Matter mural on IU's campus. *See* Exhibit 1C of the Appendix of Exhibits.

19.     On August 2, 2021, on behalf of the IU Student Organizations, I communicated via email with various IU representatives regarding the creation of an "All Lives Matter" mural on the IU campus. *See* Exhibit 1A of the Appendix of Exhibits.

20.     From August 2, 2021, through August 10, 2021, on behalf of the IU Student Organizations, I communicated via email with Adam Wason of the Public Works Department of the City of Bloomington regarding permission to create an All Lives Matter mural on the IU campus. *See* Exhibit 1D of the Appendix of Exhibits.

21.     From August 10, 2021, to August 23, 2021, I communicated with Michael Rouker, City Attorney for the City of Bloomington, and other City and IU representatives regarding an All Lives Matter mural on IU's Campus. *See* Exhibit 1E of the Appendix of Exhibits.

22.     Exhibit 3A of the Appendix of Exhibits is an article entitled "Black Voices: Black Lives Matter Mural: Inclusivity Matters" written by Tiera Howleit and published in the Black Voices section of the Indiana Daily Student on July 26, 2021.

23.     Exhibit 3B of the Appendix of Exhibits is an article entitled "Black Voices: Black Lives Matter mural brings Bloomington community together during its reveal" written by Tiera Howleit and published in the Black Voices section of the Indiana Daily Student on August 31, 2021.

24.     Exhibit 3C of the Appendix of Exhibits is an article entitled "New Bloomington mural, panned renaming of street both send same message: Black

Lives Matter" written by Dave Askins and published in the B Square Bulletin on August 1, 2021.

25.     Exhibit 3D of the Appendix of Exhibits is an article entitled "All-inclusive Black Lives Matter mural debuts" published July 13, 2021 in the News at IU Bloomington by Inside IU Bloomington.

26.     Exhibit 3E is a Facebook Post of July 2, 2021 by Black Collegians stating "Construction begins for our Black Lives Matter Street Mural on Jordan Avenue this Morning.  What an exciting time!  #Black CollegiansInc…"

27.     Exhibit 3F is IU's official twitter feed posted July 8, 2021, stating "Thank you to the Black Collegians group for bringing this mural to life on our campus".

28.     Exhibit 3G is an IU Provost Tweet posted July 6, 2021, commenting commented, "[t]he Black Collegians finished the amazing Black Lives Matter mural on Jordan Ave. If you're on the @IUBloomington campus, check it out between @NMBCC_IU and @IU_Groups buildings!"

29.     Exhibit 4A of the Appendix of Exhibits is an article entitled "Activist on 'BLACK LIVES MATTER' mural overlay: 'It's something we can all dance to.'" written by Dave Askins and published in the B Square Bulletin on June 27, 2020.

30.     Exhibit 4B of the Appendix of Exhibits is an announcement by Middle Way House entitled "Middle Way House 2021 – 2022 Wrapped in Love Public Art Display" for their display in public right-of-ways from October 1, 2021 – March 1, 2022.

31.     Exhibit 4C of the Appendix of Exhibits is an announcement published in beINvolved for Middleway House's "Wrapped in Love" event on September 25, 2021.

32.     Exhibit 4D of the Appendix of Exhibits is IU's Homecoming Parade Guide for its 2021 Homecoming Parade.

33.     Exhibit 5 of the Appendix of Exhibits is the true, accurate, and correct Constitution of Turning Point USA at Indiana University.

I swear or affirm that the foregoing statements are true to the best of my knowledge, information, and belief.

Dated this 23rd day of February, 2022.

_____
Kyle Reynolds

Filed: 2/23/2022 6:03 PM
Clerk
Monroe County, Indiana
Monroe Circuit Court 6

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MONROE COUNTY SUPERIOR COURT |
| | ) SS: | CIVIL DIVISION, ROOM NO. |
| COUNTY OF MONROE | ) | CAUSE NO. 53C06-2202-PL-000361 |

|  |  |
|---|---|
| INDIANA UNIVERSITY CHAPTER | ) |
| OF TURNING POINT USA, and | ) |
| | ) |
| KYLE REYNOLDS, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| CITY OF BLOOMINGTON, INDIANA, | ) |
| ADAM WASON, in his official capacity as | ) |
| Director of Public Works for the City of | ) |
| Bloomington, and KYLA COX DECKARD, | ) |
| BETH H. HOLLINGSWORTH and DANA | ) |
| HENKE in their official capacities as members of | ) |
| the Board of Public Works of the City of | ) |
| Bloomington, Indiana, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### Declaration of Mary E. Myers

I, Mary E. Myers, under penalties of perjury, affirm that the following statements are true to the best of my knowledge, information, and belief:

1.  I am over the age of twenty-one (21).

2.  The statements contained in this declaration are based on my personal knowledge and are true and accurate to the best of my knowledge, information, and belief.

3.  I understand that the statements made in this declaration will be submitted to the Court in connection with the above-captioned case.

Exhibit 7

4.    I am employed with the firm Kroger, Gardis & Regas, LLP ("KGR"),
111 Monument Circle, Suite 900, Indianapolis, IN 46204.

5.    I have reviewed the documents identified as Exhibits 2A through 2E to
be submitted in the above-captioned and affirm that they are authentic, true and
accurate documents to the best of my knowledge, information, and belief.

6.    Exhibit 2A of the Appendix of Exhibits contains true and accurate
copies of excerpts from the Packet for the September 29, 2020 Board of Public
Works Meeting of the City of Bloomington, which packet of materials was obtained
from the Board of Public Works section of the City of Bloomington's website at
https://bloomington.in.gov/boards/public-works/meetings/2021]

7.    Exhibit 2B of the Appendix of Exhibits contains true and accurate
copies of excerpts from the Packet for the April 13, 2021 Board of Public Works
Meeting of the City of Bloomington, which packet of materials was obtained from
the Board of Public Works section of the City of Bloomington's website at
https://bloomington.in.gov/boards/public-works/meetings/2021]

8.    Exhibit 2C of the Appendix of Exhibits contains true and accurate
copies of excerpts from the Packet for the August 3, 2021 Board of Public Works
Meeting of the City of Bloomington, which packet of materials was obtained from
the Board of Public Works section of the City of Bloomington's website at
https://bloomington.in.gov/boards/public-works/meetings/2021]

9.    Exhibit 2D of the Appendix of Exhibits is a true and accurate copy of
the August 3, 2021 Minutes of the Board of Public Works obtained from the Board

of Public Works section of the City of Bloomington's website at

https://bloomington.in.gov/boards/public-works/meetings/2021]

    10.    Exhibit 2E of the Appendix of Exhibits contains true and accurate copies of excerpts from the Packet for the April 13, 2021 Board of Public Works Meeting of the City of Bloomington, which packet of materials was obtained from the Board of Public Works section of the City of Bloomington's website at

https://bloomington.in.gov/boards/public-works/meetings/2021]


    I swear or affirm that the foregoing statements are true to the best of my knowledge, information, and belief.

    Dated this 23rd day of February, 2022.

_____
Mary E. Myers

STATE OF INDIANA     )     IN THE MONROE COUNTY SUPERIOR COURT
                       )  SS:  CIVIL DIVISION, ROOM NO.
COUNTY OF MONROE   )     CAUSE NO. _____
                               53C06-2202-PL-000361

|  |  |
|---|---|
| INDIANA UNIVERSITY CHAPTER OF TURNING POINT USA, and | ) ) ) |
| KYLE REYNOLDS, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| CITY OF BLOOMINGTON, INDIANA, ADAM WASON, in his official capacity as Director of Public Works for the City of Bloomington, and KYLA COX DECKARD, BETH H. HOLLINGSWORTH and DANA HENKE in their official capacities as members of the Board of Public Works of the City of Bloomington, Indiana, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs Indiana University Chapter of Turning Point USA and Kyle

Reynolds ("Plaintiffs"), by counsel, pursuant to Rule 65 of the Indiana Rules of Trial

Procedure, respectfully request that the Court issue a preliminary injunction

enjoining Defendants from enforcing their Encroachment Policy against the

Plaintiffs, permitting Plaintiffs to paint a street mural depicting "All Lives Matter"

in Bloomington, Indiana, on East Kirkwood Avenue in front of the Von Lee building

on the Indiana University campus as approved by Indiana University officials, and

enjoining Defendants from enforcing their Encroachment Policy in a content- and

viewpoint-discriminatory manner.

This Motion is based on Plaintiffs' Complaint and the accompanying

Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction ("Plaintiffs' Memorandum"), the Declaration of Kyle Reynolds, the Declaration of Mary Myers and Plaintiffs' Appendix of Exhibits in Support of Motion for Preliminary Injunction (the "Appendix of Exhibits"), all of which are incorporated by reference as if fully set forth.

As specified in Trial Rule 65, the Court is requested to move "promptly" in this matter and to order that Defendants promptly respond to this Motion and Plaintiffs' Memorandum.

Given that Plaintiffs believe the evidence submitted through the Declarations of Kyle Reynolds and Mary Myers and through Plaintiffs' Appendix of Exhibits should be stipulated to, Plaintiffs do not believe at this time that a hearing should be required in this matter but reserve the right to request a hearing in the event that Defendants submit evidence in response to this Motion or fail to stipulate to the facts set forth in Plaintiffs' Declarations and Appendix of Exhibits.

Dated: February 23, 2022

Respectfully submitted,

**KROGER, GARDIS & REGAS, LLP**

/s/ William Bock, III
William Bock, III, Atty. No. 14777-49

ATTORNEY FOR PLAINTIFFS

KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Phone: (317) 692-9000

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MONROE COUNTY SUPERIOR COURT |
| | ) SS: | CIVIL DIVISION, ROOM NO. |
| COUNTY OF MONROE | ) | CAUSE NO. _____ |

53C06-2202-PL-000361

INDIANA UNIVERSITY CHAPTER       )
OF TURNING POINT USA, and        )
                                 )
KYLE REYNOLDS,                   )
                                 )
            Plaintiffs,          )
                                 )
      vs.                        )
                                 )
CITY OF BLOOMINGTON, INDIANA,    )
ADAM WASON, in his official capacity as )
Director of Public Works for the City of )
Bloomington, and KYLA COX DECKARD, )
BETH H. HOLLINGSWORTH and DANA   )
HENKE in their official capacities as )
members of the Board of Public Works of )
the City of Bloomington, Indiana, )
                                 )
            Defendants.           )
                                 )

PLAINTIFFS' MEMORANDUM IN SUPPORT OF

MOTION FOR PRELIMINARY INJUNCTION

## CONTENTS

Table of Authorities ..................................................................................iii

Introduction ............................................................................................ 1

Background ............................................................................................. 2

Legal Standard ........................................................................................ 7

Argument ................................................................................................ 7

    I.  Plaintiffs have a likelihood of success on the merits of their claims. ........... 7

        A.  Defendants engaged in viewpoint discrimination by allowing the Black Collegians' BLM mural but not Turning Point USA's "All Lives Matter" mural............................................................................... 8

        B.  Defendants' right-of-way art policy grants officials unbridled discretion to discriminate based on viewpoint. .................................... 10

        C.  Defendants' right-of-way art policy violates Indiana's Equal Privileges and Immunities Clause. ......................................................... 13

    II.  Plaintiffs meet the remaining requirements for a preliminary injunction.. 16

Conclusion ............................................................................................. 17

TABLE OF AUTHORITIES

### Cases

*City of Lakewood v Plain Dealer Publ'g Co.*,
   486 U.S. 750 (1988) ............................................................................... 10, 11, 12

*Collins v. Day*,
   644 N.E.2d 72 (Ind. 1994) ............................................................. 2, 14, 15

*DeBoer v. Village of Oak Park*,
   267 F.3d 558 (7th Cir. 2001) ........................................................ 11, 12, 13

*Forsyth Cnty. v. Nationalist Movement*,
   505 U.S. 123 (1992) ............................................................................... 11

*Iancu v. Brunetti*,
   139 S. Ct. 2294 ............................................................................... 9, 15

*Ind. Family and Soc. Servs. Admin. v. Walgreen Co.*,
   769 N.E.2d 158 (Ind. 2002) ....................................................................... 7, 9

*Joelner v. Vill. of Wash. Park, Ill.*,
   378 F.3d 613 (7th Cir. 2004) ............................................................... 16

*John K. MacIver Inst. for Pub. Pol'y, Inc. v. Evers*,
   994 F.3d 602 (7th Cir. 2021) ................................................................. 1, 8, 9

*McGuire v. State*,
   132 N.E.3d 438 (Ind. Ct. App. 2019) ................................................. 15

*Myers v. Crouse-Hinds Div. of Cooper Indus., Inc.*,
   53 N.E.3d 1160 (Ind. 2016) ........................................................ 14, 15, 16

*Paul Stieler Enters., Inc. v. City of Evansville*,
   2 N.E.3d 1269 (Ind. 2014) ....................................................................... 14

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
   460 U.S. 37 (1983) ............................................................................... 8, 9

*Planned Parenthood of Ind. v. Carter*,
   854 N.E.2d 853 (Ind. Ct. App. 2006) ................................................. 7, 16

*Roach v. Stouffer*,
   560 F.3d 860 (8th Cir. 2009) ................................................................. 12

*Rosenberger v. Rector and Visitors of the University of Virginia,*
515 U.S. 819 (1995) ........................................................................ 1, 9, 10

*Sadler v. State ex rel. Sanders,*
811 N.E.2d 936 (Ind. Ct. App. 2004) ...................................................... 16

*Shuttlesworth v. City of Birmingham, Ala.,*
394 U.S. 147 (1969) .................................................................... 2, 11, 12

*Southworth v. Bd. of Regents of Univ. of Wisc. Sys.,*
307 F.3d 566 (7th Cir. 2002) ................................................................. 10

*Sperry v. Hutchinson Co. v. State,*
122 N.E. 584 (Ind. 1919) ...................................................................... 14

**<u>Statutes</u>**

Article 1, Section 23 of the Indiana Constitution ............................... 2, 13, 14

## INTRODUCTION

The government cannot discriminate against the speech of private actors based on a speaker's viewpoint. *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819, 829 (1995). Viewpoint neutrality applies whether the speech takes place in a street, sidewalk, park, or even on "public property which is . . . open only for selective access." *John K. MacIver Inst. for Pub. Pol'y, Inc. v. Evers*, 994 F.3d 602, 609 (7th Cir. 2021). But last summer, the City of Bloomington did just that. The City granted permission for a "Black Lives Matter" mural but denied permission for a virtually identical "All Lives Matter" mural.

Plaintiff Indiana University Chapter of Turning Point USA ("TPUSA") seeks to identify, educate, train, and organize students to promote principles of freedom, free markets, and limited government. In July 2021, TPUSA and its campus coordinator, Kyle Reynolds, tried to create a mural stating, "All Lives Matter" on one of the city-owned streets running through Indiana University (the "University"). Plaintiffs submitted this request shortly after other students at the University designed, painted, and funded a "Black Lives Matter" mural on a street running through campus. Defendants sent Plaintiffs through a bureaucratic morass with shifting requirements that ultimately ended in a denial. Worse, during this same time period Defendants granted permission for the nearly-identical BLM mural so quickly that they did not officially approve the mural until a month after it was completed. The First Amendment forecloses such viewpoint discrimination.

Viewpoint-neutrality also requires Defendants to restrain the discretion of officials through "narrow, objective, and definite standards." *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 151 (1969). But here, Defendants have virtually no standards to prevent them from imposing different requirements based on a speaker's views. That Defendants fast-tracked the BLM mural under one set of standards but sent Plaintiffs in circles under conflicting requirements shows this.

Finally, Article 1, Section 23 of the Indiana Constitution prohibits the government from unequally granting benefits to private persons. *Collins v. Day*, 644 N.E.2d 72, 80 (Ind. 1994). But that is what Defendants are doing here by allowing some citizens to express their views on government property but not others.

For these reasons, more fully described below, Plaintiffs seek an order preliminarily enjoining Defendants from enforcing the right-of-way art policy against Plaintiffs, thus permitting them to paint their desired "All Lives Matter" mural.

## BACKGROUND

**A.  The City approves a Black Lives Matter mural and other expressive activity on its property under its right-of-way Encroachment Policy**

In early July 2021, the City approved a "Black Lives Matter" street mural. The students worked with Thomas Morrison, the Indiana University Capital Planning and Facilities Vice President, to choose a location for the BLM mural. Exs. 1B, 1D. But the students sought ultimate approval from the City. Ex. 1B. Director Wason, with the University's approval, authorized the students to paint the BLM mural on Jordan Avenue (now Eagleson Avenue), which runs through the

University campus. Eagleson Avenue is under the control and supervision of the City's Board of Public Works. Compl. ¶¶ 52–54.

Students at the University and the Black Collegians student group designed, painted, and funded the BLM mural. Ex. 3A at 1–2. "The mural was mostly funded through the IU Funding board," which in turn takes money from mandatory student fees. *Id.* at 2. On July 5, 2021, the Black Collegians expressed their excitement to start creating their mural: "Construction begins for our Black Lives Matter Street Mural on Jordan Avenue this Morning. What an exciting time! #BlackCollegiansInc #blacklivesmatter." Ex. 3E. The students worked directly with "artists Katie Scott, Olivia Roath and Ronny Booker to bring an all-inclusive Black Lives Matter mural to IU Bloomington's campus." Ex. 3D at 2. After the students finished the mural, the University promoted the students' work on its website and official Twitter feed. Ex. 3F ("Thank you to the Black Collegians group for bringing this mural to life on our campus."); Ex. 3D. The University's Provost tweeted, "[t]he Black Collegians finished the amazing Black Lives Matter mural on Jordan Ave. If you're on the @IUBloomington campus, check it out between @NMBCC_IU and @IU_Groups buildings!" Ex. 3G. Several news articles also detailed the students' efforts and leadership to make their idea a reality. Exs. 3A, 3B, 3C, 3D.

Nearly one month after students completed the BLM mural, Director Wason submitted an official request to the Board of Public Works ("the Board") for a permit for the BLM mural's "[e]ncroachment" on the "use of a public right of way." Ex. 2C at 29. Director Wason urged the Board to approve it to show "support for our Black

and Brown residents who have been fighting for justice." *Id.* He also noted that the request should have been "before the Board" at least one month before the BLM mural was completed. *Id.* The Board then retroactively approved the BLM mural as an encroachment. Ex. 2D at 2.

The City has a policy and practice of approving expressive activity like the BLM mural on public rights-of-way. Under this right-of-way art policy, the City has approved many types of expressive activity, including two other "Black Lives Matter" murals on other streets, Ex. 2A at 8–10, Ex. 2B at 8–13, and a University homecoming parade and student organization showcase, Ex. 2C at 17–28, Ex. 2E at 4–23. Last September, the Board even allowed Middle Way House, an emergency shelter and advocacy group for survivors of sexual violence, to wrap handmade blankets around trees and lamp posts along public rights-of-way. Ex. 2C at 7–1. The Board approved these blankets to be displayed in public rights-of-way for six months, until March  022. Ex. 2C at 15-16

**B.     Plaintiffs seek to create an All Lives Matter mural**

On the heels of the BLM mural, Plaintiffs Kyle Reynolds and TPUSA sought to create a similar mural which stated, "All Lives Matter." Turning Point USA is a national organization that seeks to identify, educate, train, and organize students to promote principles of freedom, free markets, and limited government. Ex. 5 at 1. Among these principles is the belief that all lives matter. *Id.*; Ex. 1A. Plaintiffs also believe that the "Black Lives Matter" statement is contradictory to Plaintiffs' core

principles. Ex. 1A. Thus, Plaintiffs sought to express their own view that "All Lives Matter" by creating a similar mural. *Id.*

On July 20, Plaintiff Reynolds reached out to the University to get permission for the mural. Ex. 1A. A week later, the office directed him to Vice President Thomas Morrison. *Id.* Plaintiff Reynolds asked Morrison about a permit to create the ALM mural. *Id.*; Ex. 1B. Morrison replied  that the "BLM mural was created on a street owned by the City of Bloomington. Thus, the City was the entity that ultimately approved the mural," and Morrison "direct[ed] [Reynolds] to the City of Bloomington" for further inquiry. Ex. 1B.

Plaintiff Reynolds then e-mailed Director Wason, expressing his and TPUSA's desire to create the ALM mural and requesting a permit to do so. Ex. 1D. Director Wason routed Reynolds back to Vice President Morrison. *Id.* Morrison explained that because Wason told Reynolds to "work with the IUB President's Office," Reynolds' request for the ALM mural was now "delegated to [Morrison]," in the same way "as it was with the BLM group." Ex. 1B. Vice President Morrison asked Reynolds to send some location ideas and a graphic for the ALM Mural. *Id.*

As requested, Reynolds sent Vice President Morrison the proposed graphic for the ALM mural and some ideas for potential locations. *Id.*; Ex. 1F. Morrison told Reynolds, "the graphic and sizing look good on my end," for the ALM mural and recommended Reynolds "relay to the City that IU is ok with the East Kirkwood location," a public right-of-way running through the University, for the ALM mural. *Id.* Morrison also added that "[it] is the City's ultimate approval" that mattered and

that his input mattered only because the City "consults with us as an adjacent property owner." *Id.*

## C.    The City denies Plaintiff's All Lives Matter mural

On August 3, Reynolds e-mailed Director Wason, explaining that the ALM mural "was approved by the IUB President's Office, specifically . . . Thomas Morrison." Ex.  1D. That same day, the Board approved Director Wason's request to treat the "Black Lives Matter" mural as a permissible encroachment. Ex. 2C at 29; Ex. 2D at 2.

But one week later, Director Wason responded, "City Legal is who you can speak with." Ex. 1D. Wason added that "Mr. Morrison's office is also not in agreement with your take on IU 'giving permission.'" *Id.* Reynolds then contacted City Attorney Michael Rouker, explaining his conversations with Director Wason and Vice President Morrison. Ex. 1E.

Nearly two weeks later, and after Plaintiff Reynolds sent two follow-up emails, City Attorney Rouker gave a terse denial: "Mr. Reynolds: The City of Bloomington's Board of Public Works approves the placement of art in the public right of way. The City does not take recommendations for art in its right of way from individuals, and, at this time, the City is not considering adding additional art within its right of way." *Id.*

LEGAL STANDARD

To obtain a preliminary injunction, a plaintiff must show by a preponderance of the evidence that (1) the "remedies at law were inadequate, thus causing irreparable harm," (2) he has "at least a reasonable likelihood of success at trial by establishing a *prima facie* case," (3) his "threatened injury outweighed the potential harm to [Defendant] resulting from the granting of an injunction"; and (4) "the public interest would not be disserved" by granting an injunction. *Ind. Family and Soc. Servs. Admin. v. Walgreen Co.*, 769 N.E.2d 158, 161 (Ind. 2002). "Where the action to be enjoined is unlawful, . . . . the plaintiff need not make a showing of irreparable harm or a balance of the hardship in his favor." *Planned Parenthood of Ind. v. Carter*, 854 N.E.2d 853, 863–64 (Ind. Ct. App. 2006) (citations omitted).

ARGUMENT

## I.   Plaintiffs have a likelihood of success on the merits of their claims

Defendants' right-of-way art policy and discriminatory enforcement of that policy violate the First Amendment in two ways. First, the City engaged in viewpoint discrimination by permitting University students to paint the "Black Lives Matter" mural on a city street running through the University's campus while simultaneously denying the same permission to students who desire to create a similar "All Lives Matter" mural. The City fast-tracked one mural and approved it after it was painted, but during the same time period sent Plaintiff Reynolds in a bureaucratic circle and gave him contradictory standards before ultimately denying

his request. This is more than enough to show a prima facie case of viewpoint discrimination.

Second, the City's policy also fails to be viewpoint-neutral because it has virtually no standards to prevent City officials from discriminating against students based on viewpoint. That officials here treated the BLM mural differently from the ALM mural and did so under the guise of inconsistent and ever-shifting requirements proves this.

The policy also violates Indiana's Equal Privileges and Immunities Clause because Defendants' policy discriminates against students like Plaintiffs who express disfavored viewpoints.[1]

### A. Defendants engaged in viewpoint discrimination by allowing the Black Collegians' BLM mural but not Turning Point USA's "All Lives Matter" mural

Defendants have a policy and practice of approving and authorizing expressive activity on public rights-of-way. But Defendants denied Plaintiffs access to this forum because of Plaintiffs' viewpoint. The First Amendment unequivocally prohibits this discrimination.

"The amount of access to which the government must give the public for expressive activities, and the standards by which a court will evaluate limitations on those rights, depends on the nature of the forum at issue." *John K. MacIver Inst.*, 994 F.3d at 609 (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S.

---

[1] For purposes of their motion for preliminary injunction, Plaintiffs limit their arguments to their First Amendment claims (Counts I & II) and their Indiana Equal Privileges and Immunities claim (Count VI).

37, 44 (1983)). To this end, courts recognize three types of forums: the traditional public forum, the public forum created by government designation, and the non-public forum. *Id.* Traditional public forums include "[s]treets, sidewalks, and parks, and the quintessential soap box in the public square." *Id.* Designated public forums are "public property that the state has opened for members of the public to use as a place of expressive activity." *Id.* Courts look to "the policy and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum." *Id.* at 565–66 (cleaned up). In either of these forums, restrictions on speech must not be based on the content of the speech or the viewpoint of the speaker, and content-neutral regulations must be "narrowly tailored to serve a significant governmental interest and [leave] ample alternative channels of communication." *Id.*

But even in non-public forums, "public property which is . . . open only for selective access," *id.*, the government may not engage in viewpoint discrimination: "regulating speech when the specific motivating ideology or the opinion or the perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829. This is because viewpoint discrimination is "an egregious form of content discrimination," *id.* and is "poison to a free society," *Iancu v. Brunetti*, 139 S. Ct. 2294, 2302 (Alito, J., concurring).

Here, Defendants created at least a designated public forum through their right-of-way art policy by allowing citizens to express themselves on public property, including other public rights-of-way. *See* Facts Sec. A, *supra.*

9

But regardless of forum, Defendants violated the First Amendment because they engaged in viewpoint discrimination. Most notably, Defendants treated the BLM mural and Plaintiffs' ALM mural with clear inconsistency. The statements, "Black Lives Matter" and "All Lives Matter" represent different viewpoints on the realities and harms of racism. Defendants approved one viewpoint and denied the other even though both sets of speakers were students, sought access to similar city streets running through the University campus, sought to paint murals of similar size and design, and sought to express their viewpoints on racism. The First Amendment does not tolerate this. As *Rosenberger* explained, "[i]f the topic of debate is, for example, racism, then exclusion of several views on that problem is just as offensive to the First Amendment as exclusion of only one." 515 U.S. at 832. Defendants directly defied these words from the Supreme Court by excluding Plaintiffs' views on racism through their "All Lives Matter" mural.

## B. Defendants' right-of-way art policy grants officials unbridled discretion to discriminate based on viewpoint

Defendants also violate the prohibition against viewpoint discrimination because their right-of-way art policy grants unbridled discretion to City officials. As the Seventh Circuit has explained, "the prohibition against unbridled discretion is a component of the viewpoint-neutrality requirement." *Southworth v. Bd. of Regents of Univ. of Wisc. Sys.*, 307 F.3d 566, 579 (7th Cir. 2002).

Under this standard, a policy must not leave the "determination of who may speak and who may not . . . to the unbridled discretion of a government official." *City of Lakewood v Plain Dealer Publ'g Co.*, 486 U.S. 750, 763–64 (1988). This is

10

required for viewpoint-neutrality because, "without standards governing the exercise of discretion, a government official may decide who may speak and who may not based on the content of the speech or viewpoint of the speaker." *Id.* This causes speakers to self-censor and makes it exceedingly difficult "to distinguish, as applied, between a licensor's legitimate denial of a permit and its illegitimate abuse of censorial power." *Id.* at 758.

If a permit scheme involves the "appraisal of facts, the exercise of judgment, and the formation of an opinion," then "the danger of censorship . . . is too great to be permitted." *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 131 (1992). (cleaned up). Rather, the restriction must have "narrow, objective, and definite standards." *Shuttlesworth*, 394 U.S. at 151. Regulations that fail to contain such restrictions "vest[ ] the government with virtually unlimited authority" *DeBoer v. Village of Oak Park*, 267 F.3d 558, 572 (7th Cir. 2001) and are "forbid[den]" by the First Amendment. *City of Lakewood*, 486 U.S. at 770.

Defendants' policy falls well short of this standard. Defendants' discriminatory treatment between the two groups of students and their contradictory assertions to Plaintiff Reynolds prove this. Again, Defendant Wason was so eager to grant approval he did not even obtain the necessary permission from the Board of Public Works beforehand. Ex. 2C at 29. Wason also delegated approval of the mural to the University. Ex. 1D. But when Reynolds asked permission for the "All Lives Matter" mural, Defendants ran him around for over a month with broad, conflicting, and confusing requirements, including that he obtain

11

permission from the Board of Public Works. During the game of bureaucratic hot

potato between Defendants and the University,

> (1) the University said that the City gives "ultimate approval," Ex. 1A;
>
> (2) Director Wason said that Reynolds "need[ed] to work with the IUB President's office, as did the other group, in order to get the concept for any murals approved for placement on any streets on campus," Ex. 1D;
>
> (3) Vice President Morrison said that the City "consult[s] with [IUB] as an adjacent property owner," Ex. 1B;
>
> (4) Director Wason told Reynolds that he needed "to speak to City Legal" about approval for the mural, Ex. 1D;
>
> (5) City Attorney Rouker told Reynolds that the "City's Board of Public Works approves the placement of art," Ex. 1E;
>
> (6) City Attorney Rouker told Reynolds that "the City does not take recommendations for art from individuals, *id.*; and
>
> (7) City Attorney Rouker told Reynolds "the City is not considering adding additional art within its right of way," *id.*

These fall short of the "narrow, objective, and definite standards" that the

First Amendment requires. *Shuttlesworth*, 394 U.S. at 151. Nor did the City impose

these obstacles on the students seeking the BLM mural. These ever-shifting and

contradictory requirements show that the City has "virtually unlimited authority"

to approve or deny murals. *DeBoer*, 267 F.3d at 572. This policy is even worse than

the regulation struck down in *City of Lakewood*, which allowed the mayor to impose

"other terms and conditions as deemed necessary and reasonable." 486 U.S. at 769.

Instead, the policy here "provides no standards or guidelines whatsoever," *Roach v.*

*Stouffer*, 560 F.3d 860, 869 (8th Cir. 2009), so the City can add, subtract, or modify any conditions it desires.

*DeBoer* also forecloses Defendants' contradictory requirements. There, the Seventh Circuit found that officials wielded unbridled discretion by invoking "confusing and conflicting" requirements to deny the plaintiff access to Village Hall, a government facility, for a prayer assembly. 267 F.3d at 574. The Court found that the policies governing access to Village Hall, particularly the requirement that an activity "benefits the public as a whole," "provide[d] no concrete standards or guideposts by which Village officials c[ould] gauge" compliance with the policy. *Id.* at 573. Nor did the policies contain "further definition[s]" to "give assistance to the officials who must interpret its meaning." *Id.* And when asked by the Court to explain the requirements in the policies, the Court determined that the Village officials offered five different "confusing and conflicting answers." *Id.* at 574. As a result, the Court found that the Village "engage[d] in unconstitutional viewpoint discrimination." *Id.*

In the same way, Defendants offered Plaintiffs seven different "confusing and conflicting" requirements to obtain permission for the ALM mural. Defendants sent Reynolds in circles, passing him to different officials who had different requirements while they simultaneously approved the BLM mural.

## C.   Defendants' right-of-way art policy violates Indiana's Equal Privileges and Immunities Clause

Article 1, Section 23 of the Indiana Constitution promises that the Indiana government "shall not grant to any citizen, or class of citizens, privileges or

immunities, which, upon the same terms, shall not equally belong to all citizens." To comply with Section 23, the government action must satisfy two requirements: "First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated class. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated." *Collins*, 644 N.E.2d at 80. This promise applies not only to "state statutes, but also the enactments and actions of county, municipal, and other governmental agencies and their equivalents." *Paul Stieler Enters., Inc. v. City of Evansville*, 2 N.E.3d 1269 (Ind. 2014) (citation omitted).

Section 23 also applies "fully, equally, and without diminution" to all types of privileges and immunities and "does not require an analytical framework applying varying degrees of scrutiny for different protected interests." *id.* at 80. Thus, this Clause protects a broad range of classes and interests. To illustrate, it has invalidated diverse government actions, including an "ordinance expanding the city's smoking ban to bars and restaurants but exempting its only riverboat casino," *Stieler*, 2 N.E.3d at 1271, a statute of limitations for products liability that applied only to a subset of employees injured by asbestos, *Myers v. Crouse-Hinds Div. of Cooper Indus., Inc.*, 53 N.E.3d 1160, 1165–66 (Ind. 2016), and a prohibitory licensing fee that applied only to selling stamps, *Sperry v. Hutchinson Co. v. State*, 122 N.E. 584 (Ind. 1919). *See also Collins*, 644 N.E.2d at 78 (collecting cases). Section 23 also applies even where the government "singles out one person." *Id.* at 78.

Defendants' right-of-way art policy gives preferential treatment to students who express the City's preferred viewpoints, so it fails both prongs of the Section 23 analysis. First, allowing some students to express certain viewpoints but not others through murals is not "reasonably related to inherent characteristics which distinguish the unequally treated class." *Collins*, 644 N.E.2d at 80. There is no rational basis to engage in viewpoint discrimination because a "law that discriminates on the basis of viewpoint collides with the First Amendment." *McGuire v. State*, 132 N.E.3d 438, 442 (Ind. Ct. App. 2019) (quoting *Iancu*, 139 S. Ct. at 2299). And "[v]iewpoint discrimination is poison to a free society." *Iancu*, 139 S. Ct. at 2302 (Alito, J., concurring).

Second, the City has not made access to creating murals "uniformly applicable and equally available to all persons similarly situated." *Collins*, 644 N.E.2d at 80. The City opened up at least some of its property for citizens to paint murals, but it is giving preferential treatment to some of those citizens. In particular, the University students who initiated, painted, and funded the BLM mural are "similarly situated," *Myers v. Crouse-Hinds Div. of Cooper Indus., Inc.*, 53 N.E.3d 1160, 1166 (Ind. 2016), in all relevant respects to Plaintiffs. Both speakers were students, both sought to paint a mural on a street running through the University's campus of similar size and design, and both sought to express viewpoints on the issue of racism in the summer of 2021. Yet the City fast-tracked the BLM mural and, after a lengthy game of political hot potato, denied the ALM mural. The City thus "create[d] a preference, and establishe[d] an inequality among

15

a class of citizens all of whom are equally meritorious, and therefore violate[d] the second *Collins* factor." *Id.*

## II.   Plaintiffs meet the remaining requirements for a preliminary injunction

Since Plaintiffs have shown a reasonable likelihood of success, they also satisfy the remaining factors to obtain a preliminary injunction. First, an "unlawful act constitutes *per se* 'irreparable harm,'" so a plaintiff "need not make a showing of irreparable harm or a balance of the hardship in his favor." *Carter*, 854 N.E.2d at 864 (citation omitted); *accord Joelner v. Vill. of Wash. Park, Ill.*, 378 F.3d 613, 620 (7th Cir. 2004) ("When a party seeks a preliminary injunction on the basis of a potential First Amendment violation, the likelihood of success on the merits will often be the determinative factor."). This rule applies here, since Plaintiffs have alleged that the City's policies violate both the Indiana and United States Constitutions.

Likewise, it is always in the public interest to uphold Indiana and United States law. Indiana Courts consistently recognize that "the public interest is not disserved by the issuance of an injunction that requires only that the [Defendants] comply with the clear dictates of the law." *Sadler v. State ex rel. Sanders*, 811 N.E.2d 936, 955–56 (Ind. Ct. App. 2004); *accord Joelner*, 378 F.3d at 620 ("Surely, upholding constitutional rights serves the public interest.") (citation omitted).

## CONCLUSION

For the reasons above, the Court should grant Plaintiffs' Motion for

Preliminary Injunction.

Dated: February 23, 2022

> Respectfully submitted,
>
> **KROGER, GARDIS & REGAS, LLP**
>
>
> /s/ William Bock, III
> William Bock, III, Atty. No. 14777-49
>
> ATTORNEY FOR PLAINTIFFS

STATE OF INDIANA        )
                    ) SS:
COUNTY OF MONROE    )

IN THE MONROE COUNTY SUPERIOR COURT
CIVIL DIVISION, ROOM NO.
CAUSE NO. 53C06-2202-PL-000361

INDIANA UNIVERSITY CHAPTER )
OF TURNING POINT USA, and )
                        )
KYLE REYNOLDS, )
                        )
        Plaintiffs, )
                        )
      vs. )
                        )
CITY OF BLOOMINGTON, INDIANA, et al., )
                        )
        Defendants. )

TO DEFENDANT:     **City of Bloomington, Indiana**
                      **c/o Mayor John Hamilton**
                      **201 N. Morton Street, Suite 210**
                      **Bloomington, IN 47404**

        You are hereby notified that you have been sued by the persons named as plaintiffs and in the Court indicated above.

        The nature of the suit against you is stated in the complaint which is attached to this Summons. It also states the relief sought or the demand made against you by the plaintiffs.

        An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be rendered against you for the relief demanded by plaintiffs.

        If you have a claim for relief against the plaintiffs arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: _____2/24/2022_____

                             _Yvette Lynn Brown_    (Seal)
                             Clerk, Monroe Superior Court

         **(The following manner of service of summons is hereby designated.)**
_____      **Registered or certified mail**
_____      **Service by Sheriff – Personal Service and/or Copy**
_____      **Service through private server**

**Attorneys for Plaintiffs**
  William Bock, III, Attorney No. 14777-49
  KROGER, GARDIS & REGAS, LLP
  111 Monument Circle, Suite 900
  Indianapolis, IN 46204-5125
  317-692-9000
  wbock@kgrlaw.com

Court Address:
Monroe County Justice Building
301 N. College Ave.
Bloomington, IN 47404
Pho: (812) 349-2600

### S H E R I F F ' S   R E T U R N   O N   S E R V I C E   O F   S U M M O N S

I hereby certify that I have served this summons on the _____ day of _____ _____, 2022:

    (1)    By delivering and mailing a copy of the Summons and a copy of the complaint to the defendant, _____.

    (2)    By leaving and mailing a copy of the Summons and a copy of the complaint at _____ _____.

    (3)    Other Service or Remarks: _____ _____.

_____        _____

Sheriff's Costs                         Sheriff

                                            By:_____
                                                Deputy

### C L E R K ' S   C E R T I F I C A T E   O F   M A I L I N G

I hereby certify that on the _____ day of _____, 2022, I mailed a copy of this Summons and a copy of the complaint to the defendant, _____ by _____ mail, requesting a return receipt at the address furnished by the plaintiff.

                                          _____
                                          Clerk, Monroe Superior Court

Dated:_____        By:_____
                                          Deputy

### R E T U R N   O N   S E R V I C E   O F   S U M M O N S   B Y   M A I L

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint mailed to the defendant, _____, was accepted by the defendant on the _____ day of _____, 2022.

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint were returned not accepted on the _____ day of _____ _____, 2022.

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint mailed to the defendant, _____, was accepted by _____ on behalf of said defendant on the _____ day of _____, 2022.

                                          _____
                                          Clerk, Monroe Superior Court

Dated:_____        By:_____
                                            Deputy

STATE OF INDIANA     )     IN THE MONROE COUNTY SUPERIOR COURT
                   )  SS:  CIVIL DIVISION, ROOM NO.
COUNTY OF MONROE     )     CAUSE NO. _____

CAUSE NO. 53C06-2202-PL-000361

INDIANA UNIVERSITY CHAPTER   )
OF TURNING POINT USA, and    )
                           )
KYLE REYNOLDS,          )
                           )
         Plaintiffs,     )
                           )
     vs.             )
                           )
CITY OF BLOOMINGTON, INDIANA, et al.,   )
                           )
        Defendants.     )

TO DEFENDANT:    **KYLA COX DECKARD**, in her official capacity as member of the Board of Public Works of the City of Bloomington, Indiana
                **Board of Public Works of the City of Bloomington, Indiana**
                **401 North Morton Street, Suite 120**
                **Bloomington, IN 47404**

You are hereby notified that you have been sued by the persons named as plaintiffs and in the Court indicated above.

The nature of the suit against you is stated in the complaint which is attached to this Summons. It also states the relief sought or the demand made against you by the plaintiffs.

An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be rendered against you for the relief demanded by plaintiffs.

If you have a claim for relief against the plaintiffs arising from the same transaction or occurrence, you must assert it in your written answer.

Dated:_____2/24/2022_____                _____(Seal)
                               Clerk, Monroe Superior Court

**(The following manner of service of summons is hereby designated.)**
_____    **Registered or certified mail**
_____    **Service by Sheriff – Personal Service and/or Copy**
_____    **Service through private server**

**Attorneys for Plaintiffs**
William Bock, III, Attorney No. 14777-49     Court Address:
KROGER, GARDIS & REGAS, LLP       Monroe County Justice Building
111 Monument Circle, Suite 900         301 N. College Ave.
Indianapolis, IN 46204-5125          Bloomington, IN 47404
317-692-9000                      Pho: (812) 349-2600
wbock@kgrlaw.com

### SHERIFF'S RETURN ON SERVICE OF SUMMONS

I hereby certify that I have served this summons on the _____ day of _____ _____, 2022:

    (1)    By delivering and mailing a copy of the Summons and a copy of the complaint to the defendant, _____.

    (2)    By leaving and mailing a copy of the Summons and a copy of the complaint at _____ _____.

    (3)    Other Service or Remarks: _____ _____.

_____       _____

Sheriff's Costs                     Sheriff

                                 By:_____
                                      Deputy

### CLERK'S CERTIFICATE OF MAILING

I hereby certify that on the _____ day of _____, 2022, I mailed a copy of this Summons and a copy of the complaint to the defendant,_____ by _____ mail, requesting a return receipt at the address furnished by the plaintiff.

                                    _____
                                    Clerk, Monroe Superior Court

Dated:_____       By:_____
                                      Deputy

### RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint mailed to the defendant, _____, was accepted by the defendant on the _____ day of _____, 2022.

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint were returned not accepted on the _____ day of _____ _____, 2022.

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint mailed to the defendant, _____, was accepted by _____ on behalf of said defendant on the _____ day of _____, 2022.

                                    _____
                                    Clerk, Monroe Superior Court

Dated:_____       By:_____
                                      Deputy

Filed: 2/28/2022 6:03 PM
Clerk
Monroe County, Indiana

Monroe Circuit Court 6

| STATE OF INDIANA | ) | | IN THE MONROE COUNTY SUPERIOR COURT |
|---|---|---|---|
| | ) | SS: | CIVIL DIVISION, ROOM NO. |
| COUNTY OF MONROE | ) | | CAUSE NO. ___53C06-2202-PL-000361___ |

| | |
|---|---|
| INDIANA UNIVERSITY CHAPTER | ) |
| OF TURNING POINT USA, and | ) |
| | ) |
| KYLE REYNOLDS, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| CITY OF BLOOMINGTON, INDIANA, et al., | ) |
| | ) |
| Defendants. | ) |

TO DEFENDANT:     **DANA HENKE**, in her official capacity as member of the
Board of Public Works of the City of Bloomington, Indiana
**Board of Public Works of the City of Bloomington, Indiana**
**401 North Morton Street, Suite 120**
**Bloomington, IN  47404**

You are hereby notified that you have been sued by the persons named as plaintiffs and in the Court indicated above.

The nature of the suit against you is stated in the complaint which is attached to this Summons.  It also states the relief sought or the demand made against you by the plaintiffs.

An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be rendered against you for the relief demanded by plaintiffs.

If you have a claim for relief against the plaintiffs arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: ___2/24/2022___                                         _(Seal)_

                                                        Clerk, Monroe Superior Court

**(The following manner of service of summons is hereby designated.)**
____     **Registered or certified mail**
____     **Service by Sheriff – Personal Service and/or Copy**
____     **Service through private server**

**Attorneys for Plaintiffs**
William Bock, III, Attorney No. 14777-49
KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN  46204-5125
317-692-9000
wbock@kgrlaw.com

Court Address:
Monroe  County Justice Building
301 N. College Ave.
Bloomington, IN  47404
Pho: (812) 349-2600

### S H E R I F F ' S   R E T U R N   O N   S E R V I C E   O F   S U M M O N S

I hereby certify that I have served this summons on the _____ day of _____

_____, 2022:

    (1)    By delivering and mailing a copy of the Summons and a copy of the complaint to the

           defendant, _____.

    (2)    By leaving and mailing a copy of the Summons and a copy of the complaint at _____

           _____.

    (3)    Other Service or Remarks: _____

           _____.

_____        _____

Sheriff's Costs                  Sheriff

                                   By:_____

                                       Deputy

### C L E R K ' S   C E R T I F I C A T E   O F   M A I L I N G

I hereby certify that on the _____ day of _____, 2022, I mailed a copy
of this Summons and a copy of the complaint to the defendant,_____
by _____ mail, requesting a return receipt at the address furnished by the plaintiff.

                                  _____

                                    Clerk, Monroe Superior Court

Dated:_____        By:_____

                                    Deputy

### R E T U R N   O N   S E R V I C E   O F   S U M M O N S   B Y   M A I L

I hereby certify that the attached return receipt was received by me showing that the
Summons and a copy of the complaint mailed to the defendant, _____, was
accepted by the defendant on the _____ day of _____, 2022.

I hereby certify that the attached return receipt was received by me showing that the
Summons and a copy of the complaint were returned not accepted on the _____ day of _____
_____, 2022.

I hereby certify that the attached return receipt was received by me showing that the
Summons and a copy of the complaint mailed to the defendant, _____, was accepted
by _____ on behalf of said defendant on the _____
day of _____, 2022.

                                  _____

                                    Clerk, Monroe Superior Court

Dated:_____        By:_____

                                    Deputy

Filed: 2/23/2022 6:03 PM
Clerk
Monroe County, Indiana

Monroe Circuit Court 6

STATE OF INDIANA       )       IN THE MONROE COUNTY SUPERIOR COURT
                      )  SS:   CIVIL DIVISION, ROOM NO.
COUNTY OF MONROE    )       CAUSE NO. 53C06-2202-PL-000361

INDIANA UNIVERSITY CHAPTER    )
OF TURNING POINT USA, and      )
                              )
KYLE REYNOLDS,            )
                              )
         Plaintiffs,        )
                              )
       vs.               )
                              )
CITY OF BLOOMINGTON, INDIANA, et al.,  )
                              )
       Defendants.      )

TO DEFENDANT:     **BETH H. HOLLINGSWORTH**, in her official capacity as member of the
Board of Public Works of the City of Bloomington, Indiana
**Board of Public Works of the City of Bloomington, Indiana**
**401 North Morton Street, Suite 120**
**Bloomington, IN  47404**

      You are hereby notified that you have been sued by the persons named as plaintiffs and in the Court indicated above.

      The nature of the suit against you is stated in the complaint which is attached to this Summons.  It also states the relief sought or the demand made against you by the plaintiffs.

      An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be rendered against you for the relief demanded by plaintiffs.

      If you have a claim for relief against the plaintiffs arising from the same transaction or occurrence, you must assert it in your written answer**.**

Dated: _2/24/2022_                                (Seal)
                                  Clerk, Monroe Superior Court

SEAL

      **(The following manner of service of summons is hereby designated:**
\_\_\_\_    **Registered or certified mail**
\_\_\_\_    **Service by Sheriff – Personal Service and/or Copy**
\_\_\_\_    **Service through private server**

**Attorneys for Plaintiffs**
William Bock, III, Attorney No. 14777-49
KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN  46204-5125
317-692-9000
wbock@kgrlaw.com

Court Address:
Monroe County Justice Building
301 N. College Ave.
Bloomington, IN  47404
Pho: (812) 349-2600

### SHERIFF'S RETURN ON SERVICE OF SUMMONS

I hereby certify that I have served this summons on the _____ day of _____

_____, 2022:

    (1)    By delivering and mailing a copy of the Summons and a copy of the complaint to the

            defendant, _____.

    (2)    By leaving and mailing a copy of the Summons and a copy of the complaint at _____

            _____.

    (3)    Other Service or Remarks: _____

            _____.

_____        _____

Sheriff's Costs                 Sheriff

                              By:_____

                                 Deputy

### CLERK'S CERTIFICATE OF MAILING

I hereby certify that on the _____ day of _____, 2022, I mailed a copy
of this Summons and a copy of the complaint to the defendant, _____
by _____ mail, requesting a return receipt at the address furnished by the plaintiff.

                                _____

                                  Clerk, Monroe Superior Court

Dated:_____         By:_____

                                 Deputy

### RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify that the attached return receipt was received by me showing that the
Summons and a copy of the complaint mailed to the defendant, _____, was
accepted by the defendant on the _____ day of _____, 2022.

I hereby certify that the attached return receipt was received by me showing that the
Summons and a copy of the complaint were returned not accepted on the _____ day of _____
_____, 2022.

I hereby certify that the attached return receipt was received by me showing that the
Summons and a copy of the complaint mailed to the defendant, _____, was accepted
by _____ on behalf of said defendant on the _____
day of _____, 2022.

                                _____

                                  Clerk, Monroe Superior Court

Dated:_____         By:_____

                                   Deputy

STATE OF INDIANA        )        IN THE MONROE COUNTY SUPERIOR COURT
                        )   SS:  CIVIL DIVISION, ROOM NO.
COUNTY OF MONROE        )        CAUSE NO. _____ 53C06-2202-PL-000361

INDIANA UNIVERSITY CHAPTER              )
OF TURNING POINT USA, and               )
                                        )
KYLE REYNOLDS,                          )
                                        )
            Plaintiffs,                 )
                                        )
    vs.                                 )
                                        )
CITY OF BLOOMINGTON, INDIANA, et al.,   )
                                        )
            Defendants.                 )

TO DEFENDANT:    **ADAM WASON**, in his official capacity as Director of Public Works for the
                 City of Bloomington **City of Bloomington, Indiana**
                 **401 North Morton Street, Suite 120**
                 **Bloomington, IN  47404**

        You are hereby notified that you have been sued by the persons named as plaintiffs and in the
Court indicated above.

        The nature of the suit against you is stated in the complaint which is attached to this
Summons.  It also states the relief sought or the demand made against you by the plaintiffs.

        An answer or other appropriate response in writing to the complaint must be filed either by
you or your attorney within twenty (20) days, commencing the day after you receive this Summons,
(or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be
rendered against you for the relief demanded by plaintiffs.

        If you have a claim for relief against the plaintiffs arising from the same transaction or
occurrence, you must assert it in your written answer.

Dated: 2/24/2022 _____                    _____ (Seal)
                                                Clerk, Monroe Superior Court

            **(The following manner of service of summons is hereby designated.)**
____    **Registered or certified mail**
____    **Service by Sheriff – Personal Service and/or Copy**
____    **Service through private server**

**Attorneys for Plaintiffs**
 William Bock, III, Attorney No. 14777-49        Court Address:
 KROGER, GARDIS & REGAS, LLP                     Monroe County Justice Building
 111 Monument Circle, Suite 900                  301 N. College Ave.
 Indianapolis, IN  46204-5125                    Bloomington, IN  47404
 317-692-9000                                    Pho: (812) 349-2600
 wbock@kgrlaw.com

## SHERIFF'S RETURN ON SERVICE OF SUMMONS

I hereby certify that I have served this summons on the _____ day of _____

_____, 2022:

    (1)    By delivering and mailing a copy of the Summons and a copy of the complaint to the

            defendant, _____.

    (2)    By leaving and mailing a copy of the Summons and a copy of the complaint at _____

            _____.

    (3)    Other Service or Remarks: _____

            _____.

_____        _____

Sheriff's Costs                    Sheriff

                          By:_____

                              Deputy

## CLERK'S CERTIFICATE OF MAILING

I hereby certify that on the _____ day of _____, 2022, I mailed a copy
of this Summons and a copy of the complaint to the defendant,_____
by _____mail, requesting a return receipt at the address furnished by the plaintiff.

                            _____

                            Clerk, Monroe Superior Court

Dated:_____      By:_____

                            Deputy

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify that the attached return receipt was received by me showing that the
Summons and a copy of the complaint mailed to the defendant, _____, was
accepted by the defendant on the _____ day of _____, 2022.

I hereby certify that the attached return receipt was received by me showing that the
Summons and a copy of the complaint were returned not accepted on the _____ day of _____
_____, 2022.

I hereby certify that the attached return receipt was received by me showing that the
Summons and a copy of the complaint mailed to the defendant, _____, was accepted
by _____ on behalf of said defendant on the _____
day of _____, 2022.

                            _____

                            Clerk, Monroe Superior Court

Dated:_____      By:_____

                            Deputy

STATE OF INDIANA                    IN THE MONROE CIRCUIT COURT

COUNTY OF MONROE                    CAUSE NO.  53C06-2202-PL-000361

KYLE REYNOLDS and
INDIANA UNIVERSITY CHAPTER OF TURNING POINT USA

V.

CITY OF BLOOMINGTON, INDIANA,
KYLA COX DECKARD, DANA HENKE,
ADAM WASON and BETH H. HOLLINGSWORTH

## ORDER OF DISQUALIFICATION

Holly M. Harvey hereby disqualifies herself from service as Presiding Judge in this case.

Pursuant to Trial Rule 79(D), the parties may agree in writing to an eligible special judge within seven (7) days of the notation in the Chronological Case Summary of this order. Alternatively, the parties may agree in writing to the selection of an eligible special judge in accordance with Trial Rule 79(H).

If the parties fail to agree to a special judge, a special judge shall be appointed pursuant to District 20 Rule DR-20-TR79-000 (Monroe County Local Rule LR 53-AR00-0109).

SO ORDERED THIS 24th DAY OF FEBRUARY, 2022.

Holly M. Harvey, Judge
Monroe Circuit Court VI

NOTICE:
Counsel for Plaintiffs
Each Defendant
File



**Trace Investigations** INC.

Accurate Facts. Favorable Results. SM

## AFFIDAVIT OF SERVICE

Date:  February 25, 2022

Re:  State of Indiana – County of Monroe
Cause No. 53C06-2202-PL-000361
In Re: Turning Point USA, et al. v. City of Bloomington, Indiana, et al.
**Service of Process on City of Bloomington**

On Friday, February 25, 2022 at 1:23p.m., the following documents were served upon City of Bloomington, c/o Mayor John Hamilton, by means of substitute service to April Rosenberger, Office Manager of Monroe County Government Center, at 401 N. Morton St., Ste. 210, Bloomington IN 47404:

1. Summons;
2. Appearance of Attorney for Plaintiffs;
3. Complaint for Declaratory and Injunctive Relief;
4. Plaintiffs' Appendix of Exhibits in Support of Plaintiffs' Complaint and Motion for Preliminary Injunction (with exhibits attached);
5. Plaintiffs' Motion for Preliminary Injunction;
6. Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction.

FURTHER AFFIANT SAYETH NAUGHT

Kaytlyn R. Black
Private Process Server

Sworn before me this 25th day of February, 2022.

Notary Signature: _____

TINA M. SKIRVIN
Residing in Monroe County
My Commission Expires
June 11, 2022
Commission Number 654498

Member National Association Professional Process Servers



Phone: (812) 334-8857 | Fax: (812) 334-2274 | P.O. Box 2603  Bloomington, IN 47402

www.traceinvestigations.com
Indiana Licenses: PI20700048, SG20700049



**Trace Investigations** INC.
Accurate Facts. Favorable Results.SM

## AFFIDAVIT OF SERVICE

Date:   February 25, 2022

Re:   State of Indiana – County of Monroe
Cause No. 53C06-2202-PL-000361
In Re: Turning Point USA, et al. v. City of Bloomington, Indiana, et al.
**Service of Process on Adam Wason**

On Friday, February 25, 2022 at 1:23p.m., the following documents were served upon Adam Wason by means of substitute service to April Rosenberger, Office Manager of Monroe County Government Center, at 401 N. Morton St., Ste. 120, Bloomington IN 47404:

1. Summons;
2. Appearance of Attorney for Plaintiffs;
3. Complaint for Declaratory and Injunctive Relief;
4. Plaintiffs' Appendix of Exhibits in Support of Plaintiffs' Complaint and Motion for Preliminary Injunction (with exhibits attached);
5. Plaintiffs' Motion for Preliminary Injunction;
6. Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction.

FURTHER AFFIANT SAYETH NAUGHT

Kaytlyn R. Black
Kaytlyn R. Black
Private Process Server

Sworn before me this 25th day of February, 2022.

Notary Signature: _____

TINA M. SKIRVIN
Residing in Monroe County
My Commission Expires
June 11, 2022
Commission Number 654498

Member National Association Professional Process Servers





**AFFIDAVIT OF SERVICE**

Date:   February 25, 2022

Re:     State of Indiana – County of Monroe
        Cause No. 53C06-2202-PL-000361
        In Re: Turning Point USA, et al. v. City of Bloomington, Indiana, et al.
        **Service of Process on Kyla Cox Deckard**

On Friday, February 25, 2022 at 1:23p.m., the following documents were served upon Kyla Cox Deckard, by means of substitute service to April Rosenberger, Office Manager of Monroe County Government Center, at 401 N. Morton St., Ste. 120, Bloomington IN 47404:

1. Summons;
2. Appearance of Attorney for Plaintiffs;
3. Complaint for Declaratory and Injunctive Relief;
4. Plaintiffs' Appendix of Exhibits in Support of Plaintiffs' Complaint and Motion for Preliminary Injunction (with exhibits attached);
5. Plaintiffs' Motion for Preliminary Injunction;
6. Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction.

FURTHER AFFIANT SAYETH NAUGHT

Kaytlyn R. Black
Private Process Server

Sworn before me this 25th day of February, 2022.

Notary Signature: _____



TINA M. SKIRVIN
Residing in Monroe County
My Commission Expires
June 11, 2022
Commission Number 654498

Member National Association Professional Process Servers





**Trace Investigations**INC.

Accurate Facts. Favorable Results.SM

### AFFIDAVIT OF SERVICE

Date: February 25, 2022

Re: State of Indiana – County of Monroe
Cause No. 53C06-2202-PL-000361
In Re: Turning Point USA, et al. v. City of Bloomington, Indiana, et al.
**Service of Process on Beth H. Hollingsworth**

On Friday, February 25, 2022 at 1:23p.m., the following documents were served upon Beth H. Hollingsworth, by means of substitute service to April Rosenberger, Office Manager of Monroe County Government Center, at 401 N. Morton St., Ste. 120, Bloomington IN 47404:

1. Summons;
2. Appearance of Attorney for Plaintiffs;
3. Complaint for Declaratory and Injunctive Relief;
4. Plaintiffs' Appendix of Exhibits in Support of Plaintiffs' Complaint and Motion for Preliminary Injunction (with exhibits attached);
5. Plaintiffs' Motion for Preliminary Injunction;
6. Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction.

FURTHER AFFIANT SAYETH NAUGHT

Kaytlyn R. Black
Private Process Server

Sworn before me this 25th day of February, 2022.

Notary Signature:

TINA M. SKIRVIN
Residing in Monroe County
My Commission Expires
June 11, 2022
Commission Number 654498

Member National Association Professional Process Servers





**Trace Investigations** INC.

**Accurate Facts. Favorable Results.** SM

## AFFIDAVIT OF SERVICE

Date: February 25, 2022

Re: State of Indiana – County of Monroe
Cause No. 53C06-2202-PL-000361
In Re: Turning Point USA, et al. v. City of Bloomington, Indiana, et al.
**Service of Process on Dana Henke**

On Friday, February 25, 2022 at 1:23p.m., the following documents were served upon Dana Henke, by means of substitute service to April Rosenberger, Office Manager of Monroe County Government Center, at 401 N. Morton St., Ste. 120, Bloomington IN 47404:

1. Summons;
2. Appearance of Attorney for Plaintiffs;
3. Complaint for Declaratory and Injunctive Relief;
4. Plaintiffs' Appendix of Exhibits in Support of Plaintiffs' Complaint and Motion for Preliminary Injunction (with exhibits attached);
5. Plaintiffs' Motion for Preliminary Injunction;
6. Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction.

FURTHER AFFIANT SAYETH NAUGHT

Kaytlyn R. Black
Private Process Server

Sworn before me this 25th day of February, 2022.

Notary Signature:

TINA M. SKIRVIN
Residing in Monroe County
My Commission Expires
June 11, 2022
Commission Number 654498

Member National Association Professional Process Servers



STATE OF INDIANA          )          IN MONROE CIRCUIT COURT VI
                              ) SS:
COUNTY OF MONROE      )          CASE NO 53C06-2202-PL-000361

KYLE REYNOLDS and INDIANA UNIVERSITY        )
CHAPTER OF TURNING POINT, USA                        )
                                                  )
vs.                                                                          )
CITY BLOOMINGTON, KYLA COX DECKARD,      )
DANA HENKE, BETH H. HOLLINGSWORTH,        )
ADAM WASON                                                        )

## ORDER TRANSFERRING CASE AND NOTICE TO CLERK

Pursuant to District 20 Rule DR-20-TR79-000 and Monroe County Local Rule LR 53-AR00-0108, this case is now **ORDERED TRANSFERRED** to Division I, the Honorable Geoffrey J. Bradley presiding, and the Clerk is directed to remove a count for Division I. The parties are advised the case number is amended to 53C01-2202-PL-000361 in the Monroe Circuit Court I.

DATED:_ March 8, 2022

                                                  Holly M. Harvey, Judge
                                                  Monroe Circuit Court VI

NOTICE:        Counsel of record
                 Defendants
                 File/RJO

STATE OF INDIANA )      IN THE MONROE CIRCUIT COURT
) SS:
COUNTY OF MONROE )      CAUSE NO: 53C01-2202-PL-000361

INDIANA UNIVERSITY CHAPTER )
OF TURNING POINT USA, and )
)
KYLE REYNOLDS, )
)
Plaintiffs, )
v. )
)
CITY OF BLOOMINGTON, INDIANA, )
ADAM WASON, in his official capacity as )
Director of Public Works for the City of )
Bloomington, and KYLA COX DECKARD, )
BETH H. HOLLINGSWORTH and DANA )
HENKE in their official capacities as members )
of the Board of Public Works of the City of )
the Bloomington, Indiana, )
)
Defendants. )

## E-FILING APPEARANCE BY ATTORNEY IN CIVIL CASE

1. The party on whose behalf this form is being filed is:

   Initiating _____      Responding __✓__      Intervening _____ ; and

   the undersigned attorney and all attorneys listed on this form now appear in this case for the following parties:

   Name of party: Defendants City of Bloomington, Indiana, Adam Wason, Kyla Cox Deckard, Beth H. Hollingsworth and Dana Henke

2. Attorney information for service as required by Trial Rule 5(B)(2)

   Name: Liberty L. Roberts                    Atty Number: 23107-49

   Address: CHURCH CHURCH HITTLE + ANTRIM

   Two North Ninth Street

   Noblesville, IN 46060

   Phone: 317-773-2190

   FAX: 317-773-5320

1

Email Address: LRoberts@cchalaw.com _____

**IMPORTANT**:  Each attorney specified on this appearance:

(a)    certifies that the contact information listed for her on the Indiana Supreme Court Roll of Attorneys is current and accurate as of the date of this Appearance;

(b)    **acknowledges that all orders, opinions, and notices from the court in this matter that are served under Trial Rule 86(G) will be sent to the attorney at the email address specified by the attorney on the Roll of Attorneys regardless of the contact information listed above for the attorney**; and

(c)    understands that she is solely responsible for keeping her Roll of Attorneys contact information current and accurate, see Ind. Admis. Disc. R. 2(A).

3. This is a PL case type as defined in administrative Rule 8(B)(3).

4. This case involves child support issues. Yes _____ No __✓__

5. This case involves a protection from abuse order, a workplace violence restraining order, or a no – contact order.  Yes _____ No __✓__

6. This case involves a petition for involuntary commitment.  Yes _____ No __✓__

7. There are related cases: Yes _____ No __✓__

8. Additional information required by local rule: N/A

9. This form has been served on all other parties and Certificate of Service is attached:

Yes__✓__ No_____

Respectfully submitted,

_/s/ Liberty L. Roberts_____
Liberty L. Roberts, Atty. No. 23107-49
Attorney for Defendants
CHURCH CHURCH HITTLE + ANTRIM
Two North Ninth Street
Noblesville, IN 46060

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of March 2022, I electronically filed the foregoing

with the Clerk of the Court using the Indiana E-Filing System ("IEFS"), and a copy of the

foregoing was served upon the following counsel of record via IEFS:

> William Bock, III
> wbock@kgrlaw.com
> KROGER, GARDIS & REGAS, LLP
> 111 Monument Circle, Suite 900
> Indianapolis, IN 46204

>> */s/ Liberty L. Roberts*
>> Liberty L. Roberts

CHURCH CHURCH HITTLE + ANTRIM
Two North Ninth Street
Noblesville, IN 46060
T:  (317)773-2190 / F:  (317)773-5320
Email:  LRoberts@cchalaw.com