UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDIANA UNIVERSITY CHAPTER OF TURNING POINT USA, and KYLE REYNOLDS, <br><br> Plaintiffs, <br> v. <br><br> CITY OF BLOOMINGTON, INDIANA, ADAM WASON, in his official capacity as Director of Public Works for the City of Bloomington, and KYLA COX DECKARD, BETH H. HOLLINGSWORTH and DANA HENKE in their official capacities as members of the Board of Public Works of the City of the Bloomington, Indiana, <br><br> Defendants. | Case No. 1:22-cv-00458-SEB-TAB |

### DEFENDANTS' SURREPLY BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### I. Introduction

In their Reply Brief in support of their Motion for a Preliminary Injunction, Plaintiffs reveal that they have searched several years of public records and uncovered three other instances in the last five years where the City approved a mural painted on a City street. Plaintiffs argue those three murals and the BLM Murals (at issue in the original briefing) are evidence that the City created a limited public forum on the surface of City Streets. That argument is based on inaccurate or incomplete information about those non-BLM murals.

### II. Additional Projects Newly Identified in Plaintiff's Reply Brief

A. *Near Westside Neighborhood Association and Economic and Sustainable Development Department Street Mural (7th Street Between Adams and Waldron Street)*

1

At the May 2, 2017, Board of Public Works Meeting, the Westside Neighborhood Association in collaboration with the Department of Economic and Sustainable Development sought approval of the BPW to host a Block Party and Mural Painting project on May 20, 2017, on 7th Street between Adams and Waldron Streets. [Dkt. 22-1, page 4 of 8]. The murals were to be painted on "traffic calming" devices – not on the surface of the streets. [Dkt. 22-11, page 5-8] The traffic calming devices are concrete circles surrounding planters on 7th Street. [Dkt. 22-11, p. 8 of 8]. The Department of Economic Sustainable Development Department worked with artist Emily Wilson to design the geometric designs for the three traffic calming devices. [Dkt. 22-1, p. 4 of 8; Dkt. 22-1 page 7 of 8] Emily Wilson designed the painting to consist of geometric shapes with no words, letters, numbers or universally understood symbols (i.e., a peace sign). [Dkt. 22-1 page 7 of 8]

The City of Bloomington hosted the event and was responsible for all things related to that painting project including the posting of signs, developing a traffic plan, placing, and paying for barricades, obtaining all permits and licenses, notifying the public, public transit, and public safety, and cleaning up the street before and after the event. [Dkt. 22-1, page 5 of 8] The City encourages and values activities for residents to get to know their neighbors, and this City sponsored painting project, done in collaboration with the Near Westside Neighborhood Association, was designed with that purpose in mind. [Dkt. 22-1, p. 5 of 8] In January 2015, the Bloomington Arts Commission adopted the City's Public Art Master Plan and its "Priorities for Public Art" which included "[e]ncourag[ing] community-based works of public art and performance that support neighborhood cohesion and vitality. Offer opportunities for citizens to work directly with providers to develop arts projects for their neighborhoods." [Exhibit 126]

*B. McDoel Neighborhood Association Street Mural (Dodds and Fairview Street)*

At the July 11, 2017, Board of Public Works Meeting, the Economic and Sustainable Development Department advised the BPW that the McDoel Neighborhood Association sought to close the intersection of Fairview and Dodds Street to paint that intersection. [Dkt. 22-3 p. 3 of 12] The design to be painted on the intersection was approved by the City's Traffic and Transportation Engineer (Andrew Cibor) and the Planning and Transportation Project Engineer (Neil Kopper). [Dkt. 22-3, p. 3 of 12]. The design consisted of colorful, spiraling sections that form a circle with a turtle in the middle of the circle. [Dkt. 22-3, p. 11 of 12 & p. 12 of 12]

Prior to submitting this project to the BPW, the City internally discussed the "General Design Rules" it would apply to a street mural at this intersection and suggested the following design guidelines: "(1) No speech. We do not want to regulate speech, so we don't allow speech. This means no words, letters, numbers, or universally recognized symbols like a peace sign. The painting can tell a story and be meaningful to the local neighbors. But the general passer-by should not recognize it as a symbol with a specific meaning; (2) No traffic control devices. Nothing that emulates a crosswalk, stop sign, stop bar, etc. Also, the geometry should be such that drivers do not alter their course to drive around the painting. This generally applies to round shaped paintings. We usually want something big enough that it doesn't read like an island. Most paintings go to the curb. Also, for this reason, we tend to be less comfortable with not painting in the parking lane. When cars aren't parked there, we don't want the parking lane to read as if it's a travel lane; and (3) No copyright material." [Exhibit 127] Sean Starowitz (the City's Assistant Director of the Arts and Economic & Sustainable Development Department), Beth Rosenbarger (the City's Assistant Director of Planning and Transportation), and Neil Kopper (the City's Project Engineer for Planning and Transportation Dept.) considered and revised the proposed design before finally

approving it. [Exhibit 127]. The painting was to serve to "enliven the intersection and slow traffic." [Dkt. 22-3, p. 7 of 12]

The project was discussed at the BPW meeting. *See* https://catstv.net/m.php?q=4320 (20:15-32:10). The BPW was advised that the project had been discussed for years and was being used as a public means of activating the community and generating a sense of community using art. [*Id*. at 21:45 – 25:17]. The street mural painting project was consistent with the City's goal of encouraging and valuing activities for residents to get to know their neighbors. [Dkt. 22-3, p. 4 of 12]

### C. *Prospect Hill Neighborhood Association Street Mural (Howe Street and Fairview Street)*

At the July 10, 2018, Board of Public Works Meeting, the Economic and Sustainable Development Department requested that the BPW agree to close the intersection of Fairview and Howe Street on August 4, 2018, for the installation of public art. [Dkt. 22-5 p. 4 of 14] The public art was being installed by the Prospect Hill Neighborhood Association. The public art project had been approved and was part of a Neighborhood Improvement Grant. [Dkt. 22-5, p. 4 of 14 and Exhibit 124].

By the time the Prospect Hill Neighborhood Association Street Mural project was presented to the BPW, it had already been through a detailed approval process with the City. [Exhibit 124]. In 2017, the Prospect Hill Neighborhood Association submitted a Grant Application [Exhibit 124 ¶ 28 and Exhibit A]. The Prospect Hill Neighborhood Association was approved for a Neighborhood Improvement Grant to be used to paint a mural on the intersection of Howe and Fairmont Streets, as public art subject to the design constraints of the City. [Exhibit 124 ¶ 29] The design that was selected and used was called "Common Pollen" and consisted of a shape of a

pollen from a sunflower. [Exhibit 124 ¶ 29 and Exhibit B]. The image consisted of a circular shape with points suggesting radiating pedals of a sunflower. [*Id.*]

The mural was a semi-permanent public art installation painted on the surface of the street that was intended to create an opportunity for neighbor interaction and community gathering and to create a "sense of place" for the neighborhood residents. [*Id.*] The City Redevelopment Commission approved the mural in Resolution 17-86 and awarded the Prospect Hill Neighborhood Association a grant of $2,854 for the project. [Exhibit 124 ¶ 32 & Exhibit C]

> D. *Near West Side Neighborhood Association Traffic Calming Devices (West 6th and West 7th Streets)*

In March 2021, the Near West Side Neighborhood Association applied for a Neighborhood Improvement Grant to obtain funding for a project that would include painting traffic calming devices along West 6th and West 7th Streets in the Near West Side neighborhood. [Exhibit 124 ¶ 33 & Exhibit D; Dkt. 22-11 p. 1 of 3] This project would not include painting on the surface of the street, but rather painting on the concrete circles surrounding planters. [Dkt. 22-11, p. 3 of 3]. The selection of the art and artist would be made by a committee that included City staff, Near West Side Neighborhood Association members, and Bloomington Arts Commission (BAC) members. [Dkt. 22-11, p. 2 of 3] The artist must show an understanding of the locale's sense of place and a willingness to work collaboratively with the City and to engage with the community. [Dkt. 22-11, p. 2 of 3]. That project remains underway.

### III.   Argument

1. **The newly identified projects in Plaintiffs' Reply Brief do not show that the City create a designated forum on the pavement of City streets.**

In their heir Reply Brief, Plaintiffs assert, without any legal citation, that the City created a designated forum in its rights-of-way by permitting the installation of temporary art in its right

of way. [Dkt 23, p. 13-14] Plaintiffs' Reply Brief claims that by allowing the painting of the Near West Side Neighborhood traffic calming devices in 2017, the McDoel Street mural in 2017, and the Prospect Hill Street Mural in 2018, the City opened the surface of all its streets for any private person or group to paint any message they wish. That is not legally or factually accurate.

First and foremost, the non-BLM paintings referenced by Plaintiffs are not speech or acts of expression protected by the First Amendment. Each painting is a geometric design of shapes. None of them contain words, letters, or universally recognized symbols to convey an idea or message. "The First Amendment protects conduct, symbols, and non-verbal speech that express ideas or convey a particularized message reasonably understood by viewers." *Congine v. Vill. of Crivitz*, 947 F. Supp. 2d 963, 969 (E.D. Wis. 2013) (*citing Texas v. Johnson*, 491 U.S. 397, 404–06, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989); *Spence v. State of Washington*, 418 U.S. 405, 409–11, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) (per curiam)). "Once a public forum is opened up to expression by some groups, the government may not prohibit the expression of others on the basis of what they intend to say." *Entertainment. Software Ass'n v. Chicago Transit Auth.*, 696 F. Supp. 2d 934, 942 (N.D. Ill. 2010) (*citing Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92, 96, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972)).

The painting of colorful scallops, swirls, a turtle, and a sunflower pollen do not convey a particularized message that is reasonably understood by viewers. Those paintings do not open the pavement of public streets to expression by private groups. The non-BLM art referenced in Plaintiffs' Reply Brief is of no relevance to the issue before this Court as they are not speech or expression protected by the First Amendment. By allowing the designs to be painted on the City streets, the City has not opened the pavement of its City Streets to create a designated public forum.

Second, two of the projects raised by Plaintiffs are projects that are not on the pavement of City streets. The 2017 and 2021 Near West Side Neighborhood projects involve painting concrete curbs that form the base of traffic calming devices – not on the pavement of the street itself. The forum at issue here is the pavement of the City streets. *See Penkoski v. Bowser*, 548 F. Supp. 3d 12, 22–23 (D.D.C. 2021) (determining the forum or medium was too broadly defined as "an artistic display," too narrowly defined as "colorful paint on the asphalt of 16th Street to convey political messages," and appropriately defined as "painted messages on city streets."). Only painted messages on City streets are relevant to the analysis here.

Third, the 2017 Near West Side Neighborhood Association project, the 2017 McDoel Neighborhood Association project, and the 2018 Prospect Hill Neighborhood Association project were not private groups painting messages on the pavement of City streets. The 2017 Near West Side Neighborhood project was a City event – with the City responsible for all logistical items for the painting. The McDoel and Prospect Hill projects were City projects that incorporated the neighborhood associations in furtherance of the City's stated goal (in the Public Arts Master Plan) of prioritizing public art and using it to "[e]ncourage community-based works of public art and performance that support neighborhood cohesion and vitality." The City used those opportunities to activate and generate a sense of community among the residents using art. The City worked with the residents of that neighborhood to develop art for the neighborhood and, in the case of the 2018 Prospect Hill project, paid for the art that the neighborhood associations were to install for the benefit of the community. Those projects were specific to neighborhood revitalization. The City's efforts to involve the residents in the painting and beautifying the neighborhood does not open the pavement of all City streets as a public forum for any painted message.

The discussion of the non-BLM murals in Plaintiff's Reply Brief adds nothing to the legal analysis of the issue before the Court on the Motion for Preliminary Injunction. Those non-BLM murals do not demonstrate that the City has created a designated public forum for speech that expresses ideas or conveys a particularized message reasonably understood by viewers. This case remains one in which the proper analysis is under the government speech doctrine, not the First Amendment designated forum analysis.

### IV.   Conclusion

Plaintiffs' Motion for a Preliminary Injunction should be denied.

Respectfully submitted,

*Liberty L. Roberts*
Liberty L. Roberts, Atty. No. 23107-49
Attorney for Defendants
CHURCH CHURCH HITTLE + ANTRIM
Two North Ninth Street
Noblesville, IN 46060

### CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of August 2022, a true and exact copy of the foregoing was filed electronically via the Court's Electronic filing system. Notice of this filing was sent to the following persons by operations of the Court's Electronic filing system.

William Bock, III
wbock@kgrlaw.com
KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204

*Liberty L. Roberts*
Liberty L. Roberts

CHURCH CHURCH HITTLE + ANTRIM
Two North Ninth Street
Noblesville, IN 46060
T:  (317)773-2190 / F:  (317)773-5320

Email:  LRoberts@cchalaw.com