UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDIANA UNIVERSITY CHAPTER<br>OF TURNING POINT USA,<br>KYLE REYNOLDS, and<br>TIM WHEELER,<br><br>      Plaintiffs,<br>  v.<br><br>CITY OF BLOOMINGTON, INDIANA,<br>DIRECTOR OF THE BLOOMINGTON<br>DEPARTMENT OF PUBLIC WORKS<br>ADAM WASON, in his individual capacity,<br>and CITY ATTORNEY MIKE ROUKER, in<br>his individual capacity,<br><br>      Defendants. | Case No. 1:22-cv-00458-SEB-TAB |

**DEFENDANTS' OBJECTIONS TO PLAINTIFFS' DESIGNATED DEPOSITION TESTIMONY AND PLAINTIFF'S FINAL WITNESS LIST**

Pursuant to the Case Management Order [Dkt. 44], Defendants, by counsel, object to the Plaintiffs' Designation of Depositions for Use at Trial [Dkt, 101] and Plaintiffs' Final Witness List [Dkt. 99].

## I.    *Pending Claims*

Plaintiff has three remaining claims in this case, limited to the following:

(1) A *Monell* claim against the City of Bloomington for an alleged express policy or widespread custom of denying private art in public rights-of-way based on the viewpoint expressed, which allegedly caused the denial of Plaintiff Kyle Reynolds's 2021 request to paint an All Lives Matter mural on a City street;

1

(2) A First Amendment viewpoint discrimination claim against Public Works Director Adam Wason for Wason's handling of Plaintiff Kyle Reynolds's 2021 request to paint an All Lives Matter mural on a City street; and

(3) A First Amendment viewpoint discrimination claim against former City Attorney Mike Rouker for denying Plaintiff Kyle Reynolds's 2021 request to paint an All Lives Matter mural on a City street.

## II. Discussion

**A. Designated Deposition Testimony to which Defendants object.**

1. Adam Wason

Plaintiffs have designated deposition testimony for Adam Wason. Mr. Wason is a named Defendant. Plaintiffs and Defendants have identified Mr. Wason as a witness for trial. Mr. Wason will be present at trial to provide live testimony. The designation of Mr. Wason's deposition testimony is inappropriate as he is not a witness who is not available to provide testimony at trial.

2. Elizabeth Karon

Plaintiffs have designated sections from the deposition testimony of Elizabeth Karon. The designated testimony shows Karon became a member of the Board of Public Works in January 2021. The remainder of the designated testimony relates to the Board of Public discussion and approval of the December 2022 policy and procedure for private art in the public right of way, and how she believes a board of public works would apply that policy to future requests. Any

3. Holly Warren

Plaintiffs have designated excerpts of the deposition testimony of Holly Warren. Ms. Warren was hired by the City in September 2021. [5:25-6:1] Mr. Reynolds' request at issue was

from July – August 2021. Ms. Warren was not employed by the City at the time of the event at issue. She can provide no relevant testimony. As shown by the designated pages, Plaintiffs offer Ms. Warren's testimony as it relates to the December 2022 policy and procedure for private art in the public right of way, and how she believes a board of public works would apply that policy to future requests. Ms. Warren's designated testimony is not relevant to any claim presented at trial.

The designated testimony is inadmissible under Federal Rule of Evidence 401. Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. *See* FED. R. EVID. 401. Evidence of a policy adopted after Plaintiffs' 2021 request (or how that policy would apply to future requests) is not relevant to any issue presented for trial. The policy was adopted on December 20, 2022. That policy cannot be used as evidence to support a *Monell* claim based on a request submitted in July-August 2021. The after-adopted policy and procedure is not relevant to the existence of a policy or widespread custom in 2021. Additionally, it is not relevant to actions taken by Mike Rouker or Adam Wason in July and August 2021.

Since the evidence related to the policy and procedure adopted in December 2022 does not tend to make a fact more or less probable than it would be without the evidence; and (b) is not a fact of consequence in determining the First Amendment claims at issue. All the testimony designated for Ms. Warren is irrelevant and not admissible under Evidence Rule 401.

4. Kyla Cox Deckard

Plaintiffs have designated deposition testimony of Kyla Cox Deckard. Plaintiffs have identified Ms. Deckard as a witness for trial and have issued a subpoena for her to appear at trial. Pursuant to that subpoena, Ms. Deckard will be present at trial to provide live testimony. The

designation of Ms. Deckard's deposition testimony is inappropriate because she is not a witness who is not available to provide testimony at trial. If Plaintiffs withdraw the Subpoena issued to Ms. Deckard, some of Ms. Deckard's deposition testimony may be appropriate to offer at trial. But even then, the designated testimony related to the policy approved in December 2022 would be inadmissible for the same reasons noted above.

### B. Designated Testimony identified on Plaintiffs' Final Witness List to which Defendants object.

Plaintiffs' Final Witness List [Dkt. 99] has identified several topics that are beyond the scope of the issues presented for trial. While these objections are not required to be made at this time, for purposes of providing efficient testimony at trial, and potentially addressing the scope of the relevant evidence at the final pre-trial conference, Defendants advise of their objections to the topics designated on Plaintiffs' Final Witness List.

Defendants object to the extent Plaintiffs are seeking testimony from the witnesses related to "the BLM murals painted on city streets"; "efforts by . . . the Black Collegians to paint street murals"; "amendments to [the Board of Public Works' application and approval process and policies for art in the public right-of-way]" that took place after August 2021; "the applications submitted by Plaintiffs," other than Plaintiff Kyle Reynolds's 2021 email request; and "the claims against" Kyla Cox Deckard. For the reasons set forth herein, this testimony is not relevant.

### 1. Testimony related to "the Black Lives Matter murals painted on City streets" and "efforts by . . . the Black Collegians to paint street murals" is not relevant because those murals were government speech and subject to different procedures.

Testimony and evidence that relates to the Black Lives Matter murals is not relevant to Plaintiffs' remaining claims. First, with regard to Plaintiffs' *Monell* claim, Plaintiffs must show that the denial of their 2021 request to paint an All Lives Matter mural resulted from a municipal custom or policy, which they can do in one of three ways: "(1) an express policy causing the loss

when enforced; (2) a widespread practice constituting a 'custom or usage' causing the loss; or (3) a person with final policymaking authority causing the loss." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (citing *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004)). Plaintiffs first base their *Monell* claim on the City's "policy" of disallowing private art on public streets when the art contains words, letters, or universally recognized symbols. [Dkt. 102 at 38] Secondarily, Plaintiffs claim the City had a "custom and practice" of "allow[ing] City employees to decide whether to bring forward requests to the Board [of Public Works] to place of [sic] such art," which Plaintiffs claim gave City employees "standardless and unbridled discretion over access to a public forum in violation of the First Amendment." [Dkt. 102 at 39] Both of these asserted bases relate to the City's pre-2022 procedures for handling requests from private groups or individuals to place art in the public right-of-way. Plaintiffs claim it was these "policies" or "customs" that caused the denial of Plaintiff Kyle Reynolds's 2021 request to paint an All Lives Matter mural.

Plaintiffs refer to how the Defendants handled a request by a different Indiana University Student Group, the Black Collegians, to paint a Black Lives Matter mural in an attempt to demonstrate that the City handled art requests differently based on the art's viewpoint. [Dkt. 102 at 40] However, the Black Lives Matter mural was government speech—speech the City itself wished to express through the mural's presence. [Dkt. 89 at 33-34] The process for the City to review and approve art that constitutes government speech is separate and different from the process for approving art by private groups and individuals. As the Court found in its Order on the parties' cross-motions for summary judgment, "any argument that Defendants engaged in viewpoint discrimination in violation of Plaintiffs' First Amendment rights by approving the installation of the BLM murals on City streets, while not permitting Plaintiffs to paint a similar

5

ALM mural, necessarily fails." [Dkt. 89 at 33] Given the Court's Order and the distinction between how public and private art proposals are initiated, reviewed, and executed, testimony and evidence related to the Black Lives Matter murals has no bearing on the existence and constitutionality of the City's 2021 handling of private requests to place art in the public right of way.

Similarly, evidence related to the Black Lives Matter murals is not relevant to the individual capacity claims against Wason and Rouker, because the way Wason and Rouker handled the Black Lives Matter mural requests was necessarily different due to those murals being planned and requested by the City. Wason and Rouker were both aware that the Black Lives Matter murals were government speech that the City itself wished to have installed. [Dkt. 77-6 at 3, ¶ 16; Dkt. 18-14] Again, "any argument that Defendants engaged in viewpoint discrimination in violation of Plaintiffs' First Amendment rights by approving the installation of the BLM murals on City streets, while not permitting Plaintiffs to paint a similar ALM mural, necessarily fails." [Dkt. 89 at 33] Because the Court has already foreclosed the ability of Plaintiffs to rely on a comparison to the Black Lives Matter murals to show viewpoint discrimination, Wason and Rouker's actions related to those murals is not relevant to Plaintiffs' 2021 request to paint an All Lives Matter mural.

   2. **Testimony related to "amendments to [the Board of Public Works' application and approval process and policies for art in the public right-of-way]" that took place after August 2021 is not relevant, because those amendments would not have applied to Plaintiffs' 2021 request to paint an All Lives Matter mural.**

Defendants infer that Plaintiffs intend to use the City's December 20, 2022, adoption of an official, written policy on private art installations within the public right of way as evidence of a policy or custom that would have applied to Plaintiffs' ALM mural request in 2021. The City's adoption of an official policy in 2022 is not relevant to the issue of whether, in 2021, the City had a policy or custom that caused the denial of Plaintiffs' request to paint an All Lives Matter mural.

6

Plaintiffs will have to show that, in 2021, there was a policy or custom in place that caused the alleged deprivation. A later-enacted policy, which was enacted as a result of Plaintiffs' lawsuit, does not make it any more or less likely that a custom or policy existed in 2021 that allowed for viewpoint discrimination or caused an injury to Plaintiffs.

Plaintiffs also seemingly intend to argue that the adopted policy, as it exists today, is unconstitutional. [E.g., Dkt. 102 at 32-37] However, there is no pending claim that relates to the City's official policy enacted in 2022. To the extent Plaintiffs intend to offer testimony related to the City's handling of private art requests after the adoption of the 2022 policy, that testimony is not relevant the claims pending before the Court.

### 3. Any "applications submitted by Plaintiffs" after Plaintiffs' 2021 request to paint an All Lives Matter mural is not relevant to Plaintiffs' remaining claims.

Plaintiff Kyle Reynolds submitted a Special Event Application on December 19, 2022, pursuant to the new policy on private art installations in the public right of way. [Dkt. 89 at 21-23] In his application, Reynolds requested authorization to paint an All Lives Matter mural. *Id.* The application was ultimately denied because the proposed mural contained words and was, therefore, not permissible under the new policy. *Id.* To the extent Plaintiffs wish to have any witnesses testify about this 2022 Special Event Application and any related communications, that testimony is not relevant. Again, Plaintiffs' only remaining claim against the Defendants relates to Plaintiffs' 2021 request, which was sent via email to Wason and then Rouker. The Court has already determined that the 2022 policy's prohibition on words in private art does not offend the First Amendment. [Dkt. 89 at 39-47] Only one "application" is relevant at trial: Plaintiffs' 2021 email request to paint an All Lives Matter mural. Any subsequent application and the handling of it is not relevant to the pending First Amendment claims.

**4. Testimony related to "the claims against" Kyla Cox Deckard is not relevant because there are no remaining claims against Kyla Cox Deckard.**

During summary judgment briefing, Plaintiffs conceded there is no liability for Cox Deckard under Count I of their Second Amended Complaint, which asserted viewpoint discrimination claims against all named Defendants. [Dkt. 83 at 6; Dkt. 89 at 25] No other claims against Cox Deckard survived summary judgment. The Court's summary judgment Order permitted only Plaintiffs' viewpoint discrimination claims related to their 2021 All Lives Matter mural request to proceed, and only against the City, Wason, and Rouker. [Dkt. 89 at 54] Therefore, Defendants object to any testimony related to their former claims against Cox Deckard as irrelevant to any of the pending claims.

Respectfully submitted,

*/s/ Liberty L. Roberts*
Liberty L. Roberts, Atty. No. 23107-49
Cassie N. Heeke, Atty. No. 36497-49
CHURCH CHURCH HITTLE + ANTRIM
Two North Ninth Street
Noblesville, IN 46060
*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of October 2025, a true and exact copy of the foregoing was filed electronically via the Court's Electronic filing system. Notice of this filing was sent to the following persons by operations of the Court's Electronic filing system.

William Bock, III
wbock@kgrlaw.com
Keith A. Butler
kbutler@kgrlaw.com
Justin R. Olson
jolson@kgrlaw.com
KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204

/s/ Liberty L. Roberts
Liberty L. Roberts

CHURCH CHURCH HITTLE + ANTRIM
Two North Ninth Street
Noblesville, IN 46060
T: (317)773-2190
Email:  LRoberts@cchalaw.com
         CHeeke@cchalaw.com